# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                        No. CR 21-0670 JB

KYLE AGUILAR,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion to Exclude the Proposed Expert Testimony of Dr. Veronique Valliere, filed December 19, 2023 (Doc. 153)("Motion"). The Court held a hearing on January 11, 2024. <u>See</u> Clerk's Minutes at 1, filed January 11, 2024 (Doc. 174). The primary issue is whether the Court should exclude Dr. Veronique Valliere's testimony concerning child sexual abuse victim behaviors and characteristics, because: (i) Dr. Valliere's opinions are not relevant to the issues presented in this case and are unhelpful to the fact-finder; (ii) Dr. Valliere's opinions improperly vouch for Jane Doe's credibility by demonstrating a consistency between the expert's opinions and Jane Doe's behaviors; and (iii) the probative value of Dr. Valliere's proposed testimony significantly outweighs the risk of unfair prejudice because the testimony bolsters the credibility of Jane Doe's allegations and unduly influences the jury given Dr. Valliere's expertise and credentials. The Court concludes that Dr. Valliere's testimony will not be excluded, because: (i) Dr. Valliere's proposed testimony and generalized opinions about the characteristics and behaviors of child sexual abuse victims are helpful to the fact-finder and relevant to the issues in this case; (ii) Dr. Valliere's generalized opinions do not vouch improperly for Jane Doe's credibility; and (iii) the

risk of unfair prejudice does not outweigh the probative value of Dr. Valliere's proposed testimony. Dr. Valliere, however, is not permitted to comment on the facts of this case, opine whether Jane Doe's behaviors are consistent with known sexual abuse victim behaviors, or discuss grooming. Furthermore, Dr. Valliere is not permitted to discuss hypothesized behaviors or characteristics that sexual abuse victims may exhibit in the future. Accordingly, the Court will grant the Motion in part and deny the Motion in part.

## FACTUAL BACKGROUND

The United States alleges that Defendant Kyle Aguilar "unlawfully and knowingly engaged in and attempted to engage in sexual contact against Jane Doe" between on or about August 13, 2016, and on or about February 13, 2017. See Superseding Indictment at 1-2, filed October 4, 2023 (Doc. 126)("Superseding Indictment"). The Court previously made findings of fact for the United States' Sealed Objections to the PSR, filed February 9, 2023 (Doc. 79). See Memorandum Opinion and Order at 3-8, filed March 29, 2023 (Doc. 99)("Objections MOO"). The Court incorporates those findings of fact by reference herein to describe the general nature of this case before evaluating the qualifications and background of the United States' expert witness, Dr. Valliere.

### 1.    **Background Facts.**

Aguilar is Jane Doe's uncle. See Objections MOO at 4. In February, 2017, Aguilar and Doe lived together at Doe's grandmother's home on the San Felipe Pueblo Indian Reservation. See Objections MOO at 4. Doe's grandmother, two sisters, and two other uncles also resided in the home. See Objections MOO at 4. At the time that the incidents occurred, Doe was twelve years old; Aguilar was thirty-four years old. See Objections MOO at 4. On February 13, 2017,

Doe reported the sexual abuse incidents to a medical professional at San Felipe Health Care Services.  See Objections MOO at 8.

    2.    **Dr. Valliere's Background and Expertise.**

Dr. Valliere is a Licensed Psychologist in the Commonwealth of Pennsylvania.  See Notice of Intent to Offer Expert Witness Testimony, filed December 4, 2023 (Doc. 136-1)("Valliere CV"). Dr. Valliere received a Doctorate in Clinical Psychology from the Graduate School of Applied and Professional Psychology at Rutgers University in Piscataway, New Jersey, in 1993.  See Valliere CV at 1.  Dr. Valliere's areas of expertise include "[s]exual offenders"; "[v]ictims of interpersonal violence (sexual assault and physical abuse), both child and adult"; and "[d]omestic violence." Valliere CV at 1.  Dr. Valliere's expertise with victims of interpersonal violence includes "victim response to assault, factors impacting victim behavior, disclosure, 'counterintuitive' behavior, offender influence over victim, treatment, and impact of assault."  Valliere CV at 1 (source of quoted material not cited).  Dr. Valliere has "[w]orked with hundreds of victims."  Valliere CV at 1.  Dr. Valliere is the President and Owner of Valliere & Counseling Associates.  See Valliere CV at 3.  Valliere & Counseling Associates operates two outpatient treatment facilities.  See Valliere CV at 3.  One outpatient treatment facility serves children, adolescents, and adults "for victimization and other mental health issues."  Valliere CV at 3.  The other center "is an outpatient violent offender program, treating perpetrators of sexual and intimate abuse."  Valliere CV at 3. Dr. Valliere also works as a Clinical Assistant Professor at the Philadelphia College of Osteopathic Medicine in Philadelphia, Pennsylvania.  See Valliere CV at 3.  Dr. Valliere has authored or co-authored over twenty publications, posters, and papers.  See Valliere CV at 4.  Dr. Valliere's CV provides an extensive testimonial experience history in criminal trials, civil lawsuits, sexual violent

predator hearings, and civil commitment hearings between January 2019 and September 2023.
See Valliere CV at 6-8.

## PROCEDURAL BACKGROUND

On December 4, 2023, the United States filed a Notice of Intent to Offer Expert Witness
Testimony (Doc. 136)("Notice").  On December 19, 2023, Aguilar filed the Motion.  On January
8, 2024, the United States filed the United States' Response to Defendant's Motion to Exclude the
Propsed [sic] Expert Testimony of Dr. Veronique Valliere (Doc. 167)("Response").  The Motion
comes before the Court as the parties prepare for trial.

### 1.    United States' Notice of Intent to Offer Expert Witness Testimony.

The United States, pursuant to rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure,
provides notice to the Court of its intent to call Dr. Valliere to testify in general about sexual
offenders and child sexual abuse victims.   See Notice at 1.   The United States outlines Dr.
Valliere's testimony to include "behavioral analysis, risk assessment, rehabilitative potential,
treatment, and management" of sexual offenders, in addition to "victim response to assault, factors
impacting victim behavior, disclosure, 'counterintuitive' behavior, offender influence over victim,
treatment, and impact of assault" for child sexual abuse victims.  Notice at 1 (source of quoted
material not cited).  The United States further provides the following as opinions it intends to elicit
from Dr. Valliere:

> a.    Various victim behaviors, particularly those involving child victims
> of sexual assault or sexual abuse, that may be counterintuitive to the average juror;
>
> b.    Common victim reactions, including physical, emotional and mental
> responses to incidents of sexual abuse such as shame, fear, hyper-vigilance, guilt,
> disbelief, and a fear of not being believed and/or stigmatized by members of their
> family and/or community;
>
> c.    Why victims, particularly victims of sexual abuse and child victims
> of sexual abuse, often refuse to disclose their abuse or wait long periods of time
> before disclosing their abuse, disclose abuse over time and/or, disclose their abuse

in pieces. Additionally, the reasons why victims choose to disclose their abuse; including various types of triggering events and/or life changes a victim may encounter which may affect their willingness to disclose abuse;

     d.     Common victim characteristics and/or reactions during incidents of sexual abuse, which may include both active resistance as well as passive compliance;

     e.     The methods used by offenders to select specific victims and ways used to "groom," influence, persuade, coerce, force, threaten or induce victims into engaging in sexual acts, and the influence these factors have on victim behavior/response to acts of abuse; and

     f.     The importance of the relationship between the victim and the offender in nature, severity, and type of behavioral responses and reactions exhibited by victims of sexual abuse.

Notice at 2.  The United States also discloses the following "as to the bases and reasoning behind each opinion":

     a.     Victim behavior is often confounding to the lay person who is not educated in the dynamics of sexual abuse and expert opinion serves to educate jurors, so they do not rely on misinformation for their findings;

     b.     Victims face many barriers to reporting both internally and externally in the social environment. This is well documented in the literature and is consistent with Dr. Valliere's experience;

     c.     It is well documented in the research and the literature that the reasons and process for disclosure of sexual abuse vary amongst victims. Reasons for delaying disclosure may include the relationship with offender, protection of others, age of the victim, age the abuse started, and cognitive and psychological effects on memory including trauma;

     d.     A victim's response to sexual assault relies on various factors including authority, size and strength of the offender, the victim's socialization to aggression, their fear, pre-existing personality traits and other factors that may explain individual reactions;

     e.     Offenders are highly effective at manipulating and controlling victim response, and this opinion has been borne out by Dr. Valliere's research and clinical research with thousands of offenders;

     f.     Sexual abuse is a source of trauma which can have varying and lasting effects on the victims. The relationship between the victim and offender, as well as the nature, type, and severity of the abuse can affect the behavioral responses of the victim.

Notice at 2-3.   The United States provides Dr. Valliere's CV detailing her academic and professional history, as well as her testimonial history as an expert witness in trial or deposition. See Valliere CV at 1-8.

       **2.**        **Aguilar's Motion to Exclude Dr. Valliere's Proposed Expert Testimony.**

Aguilar objects to Dr. Valliere's testimony.   See Motion at 1.   Specifically, he objects to on two grounds: (i) that the "opinions in the disclosure are not helpful to the jury because they are not relevant and improperly vouch for the alleged victim's credibility," Motion at 3; and (ii) that the "probative value of Dr. Valliere's proposed testimony is significantly outweighed by the risk of unfair prejudice," Motion at 5.   As to the first, Aguilar contends that "the proposed expert testimony is not relevant because it does not relate to any issue that will be placed before the jury." Motion at 4.   Aguilar argues that the United States fails "to connect any of Dr. Valliere's general opinions to the facts of this case."   Motion at 4.   Aguilar contends that "the government is offering generalized statements of an expert's experiences with other alleged victims and sex offenders," and that "such information is not relevant to this case."   Motion at 4.   Aguilar further argues that "the vague and generalized testimony noticed by the Government can only serve one purpose . . . [,] to argue that the jury should believe the alleged victim's allegations of sexual abuse because they are consistent with the generalized behavior of child victims of sexual abuse." Motion at 4.   Aguilar posits that such testimony "does not assist the jury . . . because [it] 'merely informs the jury that it should reach a particular conclusion.'"   Motion at 4 (citing United States v. Shay, 57 F.3d 126, 131 (1st Cir. 1995)).   Aguilar concludes that the Court should exclude the noticed testimony, "because it is neither relevant nor helpful to the jury."   Motion at 5.

Second, Aguilar contends that "the proposed expert testimony . . . is nothing more than an attempt to bolster the alleged victim's credibility" and that the Court there should exclude the

testimony under rule 403 of the Federal Rules of Evidence.  Motion at 5.  Aguilar concludes that the testimony "would be highly prejudicial" and "does nothing more than ask the jury to believe the alleged victim."  Motion at 6.

      **3.**      **United States' Response.**

The United States responds to the Motion.  See Response at 1.  The United States describes Dr. Valliere as "a highly qualified expert based on her extensive education, teaching, and writing on the topic of sexual abuse."  Response at 7.  The United States asserts that Dr. Valliere's proposed opinions, in addition to the bases and reasoning behind each opinion, are "permissible topics" as the cited precedent demonstrates.  Response at 7.  See id. at 5-7 (listing supporting precedent).  The United States puts forward two arguments in response to Aguilar's Motion: (i) the educational purpose of Dr. Valliere's testimony is not intended "to vouch for the victim," and is therefore both relevant and highly probative, Response at 7; and (ii) the proposed testimony's probative value outweighs any unfair prejudice, see Response at 13.

First, the United States asserts that the purpose of Dr. Valliere's testimony is to "inform the jury about characteristics in sexually abused children."  Response at 9.  The United States reasons that such testimony "highlights one of the most important functions of Rule 702 -- the practice of using expert testimony to educate the factfinder on general principles."  Response at 9 (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments).  The United States divides the "general principles" of Dr. Valliere's proposed testimony into two categories: victim and offender behavior.  Response at 10.  The United States defines victim behavior principles as

> common victim reactions, including physical reactions during abuse (e.g. active resistance as well as passive compliance) and emotional reactions after abuse (e.g. shame, fear, hyper-vigilance, guilt, disbelief, and a fear of not being believed and/or stigmatized by members of their family and/or community), and why disclosure of sexual abuse is a process often occurring in stages instead of a onetime event and that is the rule, not the exception, that disclosures are delayed.

Response at 11.  The United States asserts that "[v]ictim behavior is often counterintuitive to the average juror," therefore Dr. Valliere's testimony will provide "the fact finder with a foundation of knowledge with which to evaluate the evidence presented by the government."  Response at 11.  For the category of offender behavior, the United States refers to the "many different 'types' and characteristics of offenders."  Response at 11 (source of quoted material not cited).  The United States reasons that the range of offender behaviors also makes the area "counterintuitive to the average juror" and "commonly misunderstood by the average person."  Response at 11.

The United States further argues that Dr. Valliere's generalized testimony does not vouch improperly for Jane Doe and usurp the jury's role in assessing the alleged victim's credibility.  See Response at 11.  The United States highlights that Dr. Valliere will not be providing testimony that attempts to credit Jane Doe based on the victim's statements.  See Response at 12.  Instead, the United States asserts that "Dr. Valliere will testify about how disclosures are made, reasons for delay, and characteristics of victim behavior," including "the permissible areas described above and in her expert notice."  Response at 12.  The United States maintains that the risk that Dr. Valliere's testimony will vouch for the victim "is reduced by the simple fact that she has not interviewed or worked with the victim."  Response at 12.  The United States concludes that Dr. Valliere's proposed expert testimony is helpful to the jury and does not improperly vouch for the victim.  See Response at 13.

The United States' second argument is that the probative value of Dr. Valliere's proposed testimony outweighs any risk of unfair prejudice.  See Response at 13.  The United States acknowledges that "most probative evidence presented by the prosecution will have some prejudice."  Response at 13.  The United States argues, however, that the proposed testimony "is highly probative . . . [,] 'because the average juror often lacks expertise on the characteristics of

victims of child sex abuse.'"  Response at 13 (citing United States v. Parson, 84 F.4th 930, 938 (10th Cir. 2023)).  The United States points to the acceptance of Dr. Valliere's testimony in another case -- United States v. Sloan, 845 F. App'x 750, 752 (10th Cir. 2021)(unpublished), cert denied, 142 S. Ct. 43 (Oct. 4, 2021) -- to illustrate the proposed testimony's "probative nature."  Response at 13.  The United States contends that "Dr. Valliere's testimony would provide the jury with background information regarding general characteristics of child sex abuse victims, victim-offender dynamics, and offender characteristics, and therefore, 'the prejudicial effect of the proposed testimony is low and is outweighed by its probative value.'"  Response at 13 (citing United States v. Maurizio, No. CR 14-0023, 2015 WL 5228031, at *5 (W.D. Pa. September 8, 2015)(Gibson, J.)).  The United States concludes that "[l]earning about victim behavior and the process of disclosure will be highly probative to a jury that will likely not be well versed in child sexual abuse."  Response at 14.  The United States further requests that the Court deny Aguilar's request for a Daubert hearing.[1]  See Response at 1.

### 4.    **The Hearing.**

The Court held a hearing on January 11, 2024.  See Clerk's Minutes at 1, filed January 11, 2024 (Doc. 174).  The hearing covered multiple motions that both parties submitted before turning to Dr. Valliere's proposed testimony.  See Draft Transcript of Hearing at 59:5-6 (taken January 11, 2024)(Court)("Tr").[2]  The Court remarked that, in the past, it has precluded similar experts from commenting directly on the facts of the pertinent case.  See Tr. at 59:9-15 (Court).  The Court

---

[1]The United States does not cite to any portion of the record in which Aguilar requests a Daubert hearing.

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcripts may contain slightly different page and/or line numbers.

then stated that, "as long as [Dr. Valliere is] not talking about and commenting upon this case," and through her testimony "vouching for the alleged victim," but instead only discusses "her experiences as to why there [are] late disclosures of the incidents," then the testimony would be permissible.  Tr. at 60:1-5 (Court).

Aguilar spoke first in support of his Motion.  See Tr. at 60:12 (Hart).  He accepted the Court's ruling that the expert cannot comment on the case's facts.  See Tr. at 61:21-23 (Court, Hart).  Aguilar argued, however, that the proposed testimony "has no bearing on this proceeding," because it lacks "a connection between the opinions and the facts themselves" that would render the testimony helpful to the jury.  Tr. at 61:14-19 (Hart).  Aguilar highlighted lines e. and f. from the proposed testimony, see Tr. at 62:20 (Hart), which state:

> e.      Offenders are highly effective at manipulating and controlling victim response, and this opinion has been borne out by Dr. Valliere's research and clinical research with thousands of offenders;
>
> f.      Sexual abuse is a source of trauma which can have varying and lasting effects on the victims. The relationship between the victim and offender, as well as the nature, type, and severity of the abuse can affect the behavioral responses of the victim.

Motion at 3.  Aguilar contended that such testimony is "outside of the actual reporting behavior," has "no connection to this case," and, therefore, is not helpful to the jury.  Tr. at 62:25-63:3 (Hart). Aguilar conceded that the expert could comment on sexual abuse victims' behaviors surrounding disclosure, despite having objected to such testimony in the Motion.  See Tr. at 64:3-5 (Hart). Aguilar still argued, however, that expert testimony concerning victim behavior consistent with the victim's behavior in this case would be vouching, see Tr. at 72:8-12 (Hart), and that testimony concerning "the behaviors of what happens after an alleged abuse" would be inappropriate, Tr. at 73:23-25 (Hart).

The Court then turned to the United States to ask what other elements of the proposed testimony, aside from late disclosures, that it wants to elicit from Dr. Valliere.  See Tr. at 64:8-9 (Court).  The United States indicated that it would elicit testimony concerning "[s]exual abuse victims' behaviors and characteristics," Tr. at 64:10-11 (Marshall), specifically, "changes in behavior post abuse" and how the abuse "could lead to isolation [or] withdrawal," Tr. at 64:18-21 (Marshall).  The Court then asked: "Is there going to be evidence of that occurring in this case?" Tr. at 64:22-23 (Court).  The United States replied:

> I believe that there are some behaviors that would be similar to that. There would also be discussions of either acting out or behavioral issues. There could be substance abuse. It could be becoming more sexually active. There is a litany of different factors that she could explain that a victim might exhibit.

Tr. at 64:24-65:6 (Marshall).  The United States justified the testimony's scope, explaining that the "the behaviors of the victim and the characteristics of victim behavior" are relevant because "victims behave in ways that . . . someone who is not well versed in the behaviors of sexual abuse victims" would view as "atypical."  Tr. at 65:13-16 (Marshall).  For this reason, the United States argued, Dr. Valliere's explanation of victim behavior will help to educate and inform the jury.  See Tr. at 65:16-19 (Marshall).  The United States also asserted that there "was a third potential part that the expert might get into" which is the "grooming issues, that sometimes take place."  Tr. at 66:8-16 (Marshall).  The United States recognized that, because Aguilar "was an in-home person" and "family member," the situation necessarily is different from other sexual abuse situations.  Tr. at 66:17-19 (Marshall).

The United States indicated that it had nothing further, and the Court began to discuss the proposed testimony's scope.  See Tr. at 67:17 (Court).  The Court suggested that Dr. Valliere "gets pretty free rein to talk about the late disclosure, [and] that [the Court will] not put any pretrial limitations on her testimony about why there are late disclosures of a sexual assault or sexual

abuse." Tr. at 67:19-23 (Court).  The Court qualified the proposal by clarifying that Dr. Valliere should not relate her opinions and testimony to the facts of this case, but solely discuss "the reasons why [late disclosures] occur."  Tr. at 67:24-25 (Court).

Turning to "victim reactions," the Court identified two potential topics: (i) "the alleged victim's reactions . . . in this case"; and (ii) "the impact on the victim."  Tr. at 68:1-15 (Court). Regarding the former, the Court concluded that, "if there is going to be testimony that her emotion[s] or her mind or her actions changed as a result" of the alleged sexual abuse, then the United States may provide expert testimony "that buttresses the possibility that, in fact, that may be what's occurring here."  Tr. at 68:3-10 (Court).  Concerning the latter, the Court reasoned:

> If we get into the fact that they became alcoholics, and they are traumatized the rest of their life . . . [that] seems to me that's beginning to get into the impact on the victim, and it curries favor or prejudice against the defendant, and sympathy for the alleged victim that goes beyond proving the elements here.

Tr. at 68:11-18 (Court).  The Court then suggested that the United States "figure out what the victim's reactions are that are going to be testified in this case" and instruct Dr. Valliere to limit her testimony to explaining such behaviors, because "[a]nything beyond this case, seems to . . . be currying sympathy and perhaps prejudice."  Tr. at 68:20-25 (Court).  The Court further instructed the United States to inform Dr. Valliere not to discuss any hypothesized potential future behaviors that Jane Doe may or may not experience.  See Tr. at 69:1 (Court).

The United States then sought clarification on the testimony limitations concerning the alleged sexual abuse's impact on the victim.  See Tr. at 70:5 (Marshall).  The Court further explained:

> [T]he line that we're trying to draw is if we're going to talk about later in life she developed alcoholism or she has sexual problems with her husband because she was abused, that sort of stuff, it's just out. Because that has [the jury] focusing on the victim rather than the elements of the crime. So she needs to think about that sort of, quote, "common victim reaction" is out. But if you're going to have people

come in and say, look, she began to lock herself in her room after these incidents, she began to not participate in sports, there was fairly immediate changes to her actions, I think she gets to talk about . . . often times, these victims do become more isolated, they drop out of sports, their grades go down -- the things that are tied to this case.

Tr. at 70:18-71:8 (Court).  Aguilar disputed the Court's conclusion, arguing that it is still vouching if Dr. Valliere says that Jane Doe's behavior is consistent with general victim behaviors.  See Tr. at 72:8-12 (Hart).  The Court reiterated that it would not permit questions towards Dr. Valliere that seek to confirm that the victim's behavior in this case is consistent with known sexual abuse victim behaviors.  See Tr. at 72:13-16 (Court).  The Court emphasized that Dr. Valliere "still has to just talk in generalities" about victim behavior.  Tr. at 72:15-16 (Court).  The Court noted, however, that speaking in generalities does not mean that Dr. Valliere may discuss "everything that can happen to a victim."  Tr. at 72:17-18 (Court).  Aguilar responded that if the alleged victim testifies to a certain behavior, and the expert later testifies that such a behavior is consistent with sexual abuse victims, then it amounts to vouching.  See Tr. at 72:19-73:2 (Hart).  Aguilar argued that the expert's discussion of sexual abuse victim behaviors should be strictly limited to behaviors pertaining to the reporting process, and not include any other behaviors that victims may exhibit. See Tr. at 73:10-17 (Hart).  Disagreeing with Aguilar's arguments, the Court concluded that testimony concerning general victim behaviors relevant to the case would be "useful information for the jury."  Tr. at 74:8 (Court).

Addressing the topic of grooming, the Court expressed hesitation over discussing the issue in this case, because the alleged sexual abuse acts do not appear to be consensual or involve grooming.  See Tr. at 69:2 (Court).  The Court qualified its reservation by stating that, if the victim testifies first and "there is something in the way of grooming," then as a result Dr. Valliere would be permitted to testify about grooming.  Tr. at 69:14-15 (Court).  Aguilar later argued that the

opinion that "offenders are highly effective at manipulation" falls into the grooming category.  Tr. at 76:17-19 (Hart).  The Court confirmed that such an opinion will be excluded.  See Tr. at 76:20 (Court).

The Court and the parties discussed whether there were any qualification challenges and the possibility of voir dire for the expert witness.  See Tr. at 75:1-16 (Court, Hart, Marshall). Aguilar confirmed that he did not raise a qualification challenge but stated that he may ask to voir dire the witness in the future, see Tr. at 75:10-16 (Hart), and the Court stated that it would allow him to do so if requested.  See Tr. at 75:18-20 (Court).  The Court further stated that it had reviewed Dr. Valliere's literature, concluded that she was qualified as an expert witness, and was "inclined to let her testimony on these areas."  Tr. at 75:16-23 (Court).

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072, 2011 WL 3503321, at *3 (D.N.M. August 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact

of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).  The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it likely would provoke an emotional response from the jury or otherwise would tend to affect adversely the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

## LAW REGARDING EXPERT TESTIMONY

"Since the Supreme Court of the United States decided Daubert v. Merrell Dow Pharmaceuticals, Inc., trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide."  United States v. Gutierrez-Castro, 805 F. Supp. 2d 1218, 1224 (D.N.M. 2011)(Browning, J.).  "The Court now must not only decide whether the expert is qualified to testify, but, under Daubert, whether the opinion testimony is the product of a reliable methodology."  United States v. Gutierrez-Castro, 805 F. Supp. 2d at 1224.  "Daubert v. Merrell Dow Pharmaceuticals, Inc. requires a court to

scrutinize the proffered expert's reasoning to determine if that reasoning is sound." United States v. Gutierrez-Castro, 805 F. Supp. 2d at 1224.

> 1.      **Rule 702**.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> > **(a)**      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> > **(b)**      the testimony is based on sufficient facts or data;

> > **(c)**      the testimony is the product of reliable principles and methods; and

> > **(d)**      the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 thus requires the trial court to "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." United States v. Muldrow, 19 F.3d 1332, 1337 (10th Cir. 1994)(quoting United States v. Markum, 4 F.3d 891, 895-96 (10th Cir. 1993)).  Proposed testimony satisfies the requirement to assist the trier of fact in understanding a fact in issue when it "is sufficiently 'relevant to the task at hand.'" Norris v. Baxter Healthcare Corp., 397 F.3d 878, 884 (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 580 (1993)).  This requirement ensures "that the proposed expert testimony logically advances a material aspect of the case" and that it has "a valid scientific connection to the disputed facts in the case." Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2.

Rule 702 uses a liberal definition of "expert."  Fed. R. Evid. 702, Advisory Comm. Notes to 1972 Proposed Rules ("[W]ithin the scope of this rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values.").  An expert is "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004)(quoting Graham v. Wyeth Labs., 906 F.2d 1399, 1408 (10th Cir. 1990)).  See United States v. Harry, 20 F. Supp. 3d 1196, 1243 (D.N.M. 2014)(Browning, J.)(deeming inadmissible testimony on a sex crime's victim's demeanor during an examination, because "demeanor is not always a reliable indicator whether someone is telling the truth, especially about sex -- then no expert testimony is needed. That knowledge is well within the knowledge of jurors and most people."); United States v. Rodella, No. CR 14-2783, 2014 WL 6634310, at *25 (D.N.M. November 19, 2014)(Browning, J.)(stating that "testimony regarding nationally accepted police standards is irrelevant" to issues of "excessive force and" reasonableness).  The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the pertinent admissibility requirements are met.  See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005)(Browning, J.)(citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).  Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by 'knowledge, skill, experience, training, or education' and . . . the 'expert' . . . should not be required to satisfy an overly narrow test of his own qualifications."  Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974).  See United States v. Rodella, 2014 WL 6634310, at *20 ("Because of [the proposed expert's] lack of practical

experience, lack of nationwide experience, and lack of an advanced degree in criminology or law enforcement, [the proposed expert's] is not qualified to testify about nationally accepted police procedures and practices."); United States v. Goxcon-Chagal, 886 F. Supp. 2d 1222, 1245 (D.N.M. 2012)(Browning, J.)(determining an expert qualified to testify to drug trafficking when he had personal knowledge of the subject from working in the Drug Enforcement Agency for almost fifteen years).

Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and the trial court has broad discretion in deciding whether to admit or exclude expert testimony, see Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion"). See United States v. Edwards, No. CR 16-3068, 2017 WL 4857441, at *13 (D.N.M. 2017)(Browning, J.).

## 2.    Testimony That Improperly Vouches for Credibility of Another Witness.

"The credibility of witnesses is generally not an appropriate subject for expert testimony." United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993)(citing United States v. Samara, 643 F.2d 701, 705 (10th Cir. 1981)). See United States v. Ganadonegro, 805 F. Supp. 2d at 1213 (D.N.M. 2011)(Browning, J.)(excluding expert testimony on whether defendant's confession was credible).

> There are several reasons for the prohibition against expert testimony on other witness' credibility. Such testimony: (1) "usurps a critical function of the jury"; (2) "is not helpful to the jury, which can make its own determination of credibility"; and (3) when provided by "impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury."

United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014)(quoting United States v. Toledo, 985 F.2d at 1470).  The bar on credibility bolstering expert testimony is grounded in a number of evidentiary rules.  See United States v. Charley, 189 F.3d 1251, 1267 n.21 (10th Cir. 1999).  Expert testimony that vouches for the credibility of other witnesses lacks "relevance [under rule 401] and would not 'assist the trier of fact as required by Rule 702.'"  United States v. Adams, 271 F.3d 1236, 1246 (10th Cir. 2001)(quoting United States v. Charley, 189 F.3d at 1267).  See United States v. Harry, 20 F.Supp.3d 1196, 1242-43 (D.N.M. 2014)(Browning, J.)(concluding that expert's testimony was not relevant if expert testified that witness' demeanor suggested that witness was not subjected to a sexual assault, because testimony impermissibly went to witness' credibility).

> Courts have also held that testimony which vouches for the credibility of a witness violates other evidentiary rules, such as Rule 608(a)(1) or Rule 403. Some courts have held that, although Rule 608(a)(1) "permits testimony concerning a witness's general character or reputation for truthfulness," it "prohibits any testimony as to a witness's truthfulness on a particular occasion." State v. Rimmasch, 775 P.2d 388, 391 (Utah 1989)(construing Utah R. Evid. 608); see also United States v. Azure, 801 F.2d 336, 341 (8th Cir. 1986); State v. Wood, 194 W. Va. 525, 460 S.E. 2d 771, 778 (W. Va. 1995)(construing W. Va. R. Evid. 608); People v. Koon, 713 P.2d 410, 412 (Colo. Ct. App. 1985)(construing Colo. R. Evid. 608). And at least one court has held, in a sexual abuse case, that testimony that bolsters the credibility of the complaining witness violates Rule 403's balancing test. United States v. Funds Held in the Name or for the Benefit of John Hugh Wetterer, 991 F. Supp. 112, 120-21 (E.D.N.Y. 1998).

United States v. Charley, 189 F.3d at 1267 n.21.  See United States v. Benally, 541 F.3d 990, 995 (10th Cir. 2008)(affirming district court's exclusion of vouching testimony under rule 403's balancing test).

The bar on vouching for a witness' testimony, however, extends only to expert testimony concerning the witness' credibility and not to an expert's "general and conditional opinions" that are consistent with another witness' testimony.  United States v. Charley, 189 F.3d at 1264 ("[T]he

court did not abuse its discretion by allowing [the expert] . . . 'to inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits.'" (quoting United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993)(brackets added))); see United States v. Chapman, 59 F. Supp. 3d 1194, 1221 (D.N.M. 2014)(Browning, J.)(concluding that expert's testimony in sexual assault case concerning self-injury for victims of traumatic experiences was permissible and not vouching, despite being consistent with victim's behavior), aff'd 839 F.3d 1232 (10th Cir. 2016). "[T]estimony regarding the characteristics of sexually abused children does not, invariably, amount to vouching for the credibility of an alleged victim." United States v. Parson, 84 F.4th at 938 (citing United States v. Charley, 189 F.3d at 1264-65).

### 3.    Generalized Expert Testimony Regarding Child Sex Abuse Victims.

General expert testimony concerning child sex abuse victims' behaviors and characteristics in the disclosure process, without regard to the specific victim in the pertinent case, is admissible under rule 702.  See United States v. Parson, 84 F.4th at 938 (finding that admission of expert's general testimony on disclosure process without regard to victim was not per se violation of rule 702)(citing United States v. Charley, 189 F.3d at 1264)).  Courts further have permitted expert testimony on child sex abuse victims' general characteristics, irrespective of the disclosure process, "provided such testimony is limited to 'a discussion of a class of victims generally.'" United States v. Parson, 84 F.4th at 938 (quoting United States v. Antone, 981 F.2d 1059, 1062 (9th Cir. 1992); United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993)).  An expert witness' general testimony may serve "to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case."  Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amendments.  See United States v. DeLeon, 423 F. Supp. 3d 1210, 1245 (D.N.M. 2019)(Browning, J.)(concluding that United States' expert may testify about gang

operations generally, but not specifically about pertinent gang in prosecution for racketeering activity, murder, robbery and related offenses); United States v. Begay, 310 F. Supp. 3d 1318, 1352 (D.N.M. 2018)(Browning, J.)(concluding that expert may testify about police interrogation tactics generally, because such testimony is relevant and helpful to the fact-finder, but that the expert may not discuss the application of such tactics in the case).

> For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amendments.

> [I]t is . . . within the district court's discretion to determine whether expert testimony will be helpful to the trier of fact. In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence."

Ram v. N.M. Dep't of Env't, No. CIV 05-1083, 2006 WL 4079623, at *10 (December 15, 2006)(Browning, J.)(citing United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)). Courts need not set a high standard for determining whether testimony is helpful to the trier of fact. See Fed. R. Evid. 702, Advisory Comm. Notes to 2023 Amendments ("Applying a higher standard than helpfulness to otherwise reliable expert testimony is unnecessarily strict."). General expert testimony on child sex abuse victims is helpful, "because the average juror often lacks expertise on the characteristics of child sex abuse, particularly in the process of disclosing such abuse." United States v. Parson, 84 F.4th at 938. Ultimately, "[t]he 'help the trier of fact'

language of Rule 702 is a relevance test for expert testimony." United States v. Parson, 84 F.4th

at 937 (quoting Etherton v. Owners Ins. Co., 829 F.3d 1209, 1217 (10th Cir. 2016)).

## ANALYSIS

The Court concludes that Dr. Valliere may testify about child sex abuse victims'

characteristics and behaviors generally, but not about the alleged victim in this case.  The Court

explains its rulings in three Sections.  In Section I of its analysis, the Court concludes that Dr.

Valliere's proposed testimony and opinions are relevant to the issues in this case, and helpful to

the fact finder.  Dr. Valliere's testimony is not limited to the disclosure process context, but also

may include child victims' behaviors and characteristics resulting from sexual abuse.  The Court

concludes, however, that opinions about grooming are not relevant to this case and therefore

excludes such testimony.[3]  In Section II of its analysis, the Court concludes that Dr. Valliere's

generalized testimony is not improper vouching for Jane Doe, because such testimony does not

address directly Jane Doe's credibility, even if Dr. Valliere's opinions buttress Doe's testimony or

allegations.  The Court reaches this conclusion, because the Tenth Circuit has indicated such

testimony is admissible under rule 702.  The Court also concludes, however, that to ensure that

Dr. Valliere does not improperly vouch for Jane Doe, the expert witness is not permitted to: (i)

comment on this case's facts, (ii) opine whether Jane Doe's behaviors are consistent with known

sexual abuse victim behaviors, or (iii) comment on Jane Doe's credibility.  Last, in Section III, the

Court concludes that, because Dr. Valliere's testimony is intended to educate the factfinder -- and

not to bolster Jane Doe's credibility -- the risk of unfair prejudice does not outweigh the proposed

---

[3]The United States conceded to the exclusion of testimony concerning the grooming process, with the qualification that, if Jane Doe's testimony contains any factual details that demonstrate grooming, then Dr. Valliere could discuss the topic.  See Tr. at 70:6-8 (Marshall).

testimony's probative value. Dr. Valliere is not permitted to discuss, however, any hypothesized, future behaviors of Jane Doe or other minor sexual abuse victims, because such testimony primarily would be designed to elicit sympathy and would thus unfairly prejudice the jury. Accordingly, the Court grants the Motion in part and denies the Motion in part.

## I. DR. VALLIERE'S GENERALIZED OPINIONS CONCERNING CHILD SEXUAL ABUSE VICTIM BEHAVIORS ARE HELPFUL TO THE TRIER OF FACT AND ARE RELEVANT.

Rule 702 states that an expert witness may testify, if, among other things, "the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). Testimony satisfies this requirement when it "is sufficiently 'relevant to the task at hand.'" Norris v. Baxter Healthcare Corp., 397 F.3d 878, 884 (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 580). This requirement ensures "that the proposed expert testimony logically advances a material aspect of the case" and that it has "a valid scientific connection to the disputed facts in the case." Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2. Here, Dr. Valliere's proposed testimony fulfills this requirement, because it has a connection to the facts in the case.

Dr. Valliere's proposed testimony includes information regarding "various victim behaviors . . . involving child victims of sexual assault or sexual abuse," "common victim reactions, including physical, emotional, and mental responses to incidence of sexual abuse," and victim reactions during the abuse, "which may include both active resistance as well as passive compliance." Notice at 2. Aguilar argues that "the proposed expert testimony . . . does not relate to any issue that will be placed before the jury," Motion at 4, and lacks "a connection between the opinions and the facts themselves" that would render the testimony helpful to the jury, Tr. at 61:14-

19 (Hart).[4]  Aguilar further argues that "[t]he government makes no attempt to connect any of Dr. Valliere's general opinions to the facts of this case" and that "[t]he notice does not identify what supposed victim behaviors are at issue in this case."  Motion at 4.  The Court disagrees with Aguilar's position.

First, Dr. Valliere's proposed testimony "is sufficiently 'relevant to the task at hand'" and helpful to the factfinder.  Norris v. Baxter Healthcare Corp., 397 F.3d at 884 (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 580).  The Superseding Indictment alleges that Aguilar unlawfully engaged in sexual contact with a minor victim.  See Superseding Indictment at 1-2.  Understanding child sexual abuse victims' behaviors and characteristics generally, both during and following the abuse, assists the factfinder in comprehending the case's facts and Jane Doe's testimony.  Expert testimony that explains such behavior is particularly helpful, "because the average juror often lacks expertise on the characteristics of child sex abuse."  United States v. Parson, 84 F.4th at 938.  Both the Tenth Circuit and the Court have concluded previously that similar testimony is relevant and appropriate in sexual abuse cases and sexual assault cases.  See United States v. Parson, 84 F.4th at 938 (concluding that generalized expert testimony concerning child sexual abuse victims' behaviors and characteristics in the disclosure process was relevant); United States v. Charley, 189 F.3d at 1269 (approving testimony of expert witness opining that victim's symptoms were consistent with symptoms of sexual abuse victims); United States v. Harry, 20 F. Supp. 3d at 1238-39 (D.N.M. 2014)(Browning, J.)(allowing nurse to testify that sexual assault victim's injuries were consistent with victim's version of events); United States v.

_____

[4]At the hearing, Aguilar conceded the admissibility of Dr. Valliere's testimony concerning the disclosure process.  See Tr. at 64:3-5 (Hart).  Furthermore, Aguilar has not raised any Daubert challenge concerning Dr. Valliere's qualification as an expert or the reliability of her testimony.  See Tr. at 75:10-11 (Hart).

Chapman, 59 F.Supp.3d at 1220 (D.N.M. 2014)(Browning, J.)(concluding that an expert's testimony in a sexual assault case concerning self-injury for victims of traumatic experiences was relevant), aff'd 839 F.3d 1232 (10th Cir. 2016).

Second, the United States is not required to explicitly connect every opinion outlined in Dr. Valliere's proposed testimony to a fact at issue.  See Law Regarding Expert Testimony, supra, at 22-23.  In the same way that the expert in United States v. Parson was permitted to testify generally about child sexual abuse victims' characteristics in the disclosure process, see 84 F.4th at 938, Dr. Valliere may testify generally about child sexual abuse victims' behaviors and characteristics. Accordingly, Dr. Valliere's opinions may serve "to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amendments.  The Court further reasons that Dr. Valliere's proposed testimony concerning child sexual abuse victims' behaviors beyond the disclosure process is appropriate, because it is "limited to 'a discussion of a class of victims generally.'"  United States v. Parson, 84 F.4th at 938 (quoting United States v. Antone, 981 F.2d at 1062; United States v. Whitted, 11 F.3d at 785).  In sum, the Court concludes that Dr. Valliere's generalized opinions about child sexual abuse victims' characteristics and behaviors are helpful to the factfinder, and relevant to the case at hand.

## II.    DR. VALLIERE'S GENERALIZED TESTIMONY CONCERNING CHILD SEX ABUSE VICTIM CHARACTERISTICS DOES NOT AMOUNT TO IMPROPER VOUCHING FOR JANE DOE'S CREDIBILITY.

Although "the credibility of witnesses is generally not an appropriate subject for expert testimony," United States v. Toledo, 985 F.2d at 1470 (citing United States v. Samara, 643 F.2d at 705), "testimony regarding the characteristics of sexually abused children does not, invariably, amount to vouching for the credibility of an alleged victim," United States v. Parson, 84 F.4th at

938.   The bar on vouching for a witness' testimony does not prohibit an expert's "general and conditional opinions" that are consistent with another witness' testimony.   United States v. Charley, 189 F.3d at 1264.   "Indeed, if expert witnesses were prohibited from testifying about facts that are consistent with or that support another witness' testimony, almost all expert testimony would be inadmissible."   United States v. Chapman, 59 F. Supp. 3d at 1221.

### A.   DR. VALLIERE'S PROPOSED TESTIMONY DOES NOT COMMENT ON JANE DOE'S CREDIBILITY.

Aguilar cites United States v. Charley, 189 F.3d at 1267, and United States v. Benally, 541 F.3d at 995, to support the argument that Dr. Valliere's proposed testimony would vouch improperly for Jane Doe.   See Motion at 4-5.   The Court concludes that neither case supports Aguilar's argument.   In United States v. Charley, the Tenth Circuit holds that the district court did not err in permitting an expert witness to provide "general and conditional opinions" regarding characteristics in sexually abused children.   189 F.3d at 1264.   The expert's testimony in that case was consistent with the two victims' testimony that they had been sexually assaulted.   See 189 F.3d at 1258.   The Tenth Circuit also held, however, that the district court erred in permitting a psychiatrist to testify that he believed the victims were sexually assaulted, based on statements that the victims made to the psychiatrist, because the testimony "was essentially vouching for [the victims'] truthfulness."   189 F.3d at 1267.

In United States v. Benally, the defendant was convicted of abusive sexual contact with a minor.   See 541 F.3d at 992.   The defendant appealed the district court's decision to exclude the testimony of an expert witness, Dr. Davis, "who would have provided support for his claim that his confession to FBI agents was untrue."   541 F.3d at 992.   The Tenth Circuit concluded that Dr. Davis' proposed testimony "inevitably would 'encroach upon the jury's vital and exclusive function to make credibility determinations.'"   541 F.3d at 995 (quoting United States v. Adams,

271 F.3d 1236, 1245 (10th Cir. 2001)). Despite the defendant's assertion that Dr. Davis would not have commented on the defendant's credibility, the Tenth Circuit reasoned that, "with or without the opinion, the import of her expert testimony would be the same: disregard the confession and credit the defendant's testimony that his confession was a lie." United States v. Benally, 541 F.3d at 995.

There is a key distinction between the improper testimony in these cases and the testimony in this case: Dr. Valliere's proposed testimony does not address Jane Doe's credibility. The expert in United States v. Benally sought "to opine that prior confessions should essentially be disregarded because they are just as likely to be true as untrue." 541 F.3d at 995. Similarly, the improper testimony in United States v. Charley was the expert's opinion regarding whether the victims had been assaulted. See 189 F.3d at 1267. Such testimony is impermissible because it seeks to comment on the witness' credibility. See United States v. Parson, 84 F.4th at 939 (discussing United States v. Charley). In contrast, Dr. Valliere's proposed testimony is solely meant to inform the jury about child sexual abuse victims' behaviors and characteristics, like the affirmed testimony in United States v. Charley. See 189 F.3d at 1264. The Court's ruling that Dr. Valliere may not comment on the case's facts, provide an opinion whether Jane Doe's behaviors are consistent with known sexual abuse victim behaviors, or comment on Jane Doe's credibility mitigates any risk that Dr. Valliere's testimony will encroach upon the jury's credibility determination. Dr. Valliere's testimony, therefore, is not vouching and is permissible.

**B.    CONSISTENCY BETWEEN TESTIMONIES DOES NOT CONSTITUTE VOUCHING.**

Aguilar argues that Dr. Valliere's testimony "is specifically designed to argue that the jury should believe the alleged victim's allegations of sexual abuse because they are consistent with the generalized behavior of child victims of sexual abuse." Motion at 4. Consistency between Dr.

Valliere's proposed testimony, and Jane Doe's actual behaviors or characteristics, does not render the testimony inadmissible.  See United States v. Charley, 189 F.3d at 1264-65 (upholding admission of testimony from expert witness that victims' symptoms and conduct were consistent with sexual assault victims); United States v. Chapman, 59 F. Supp. 3d at 1221 (concluding that "consistency does not constitute impermissible vouching" in case where expert's testimony concerning self-injury for victims of traumatic experiences was consistent with victim's behavior); United States v. Harry, 20 F. Supp. 3d 1196, 1238-39 (D.N.M. 2014)(Browning, J.)(allowing nurse to testify that sexual assault victim's injuries were consistent with the victim having been sexually assaulted); United States v. Chaco, 801 F. Supp. 2d 1200, 1216 (D.N.M. 2011)(Browning, J.)(allowing doctor to testify that sexual assault examination was consistent with the conclusion that the victim was sexually assaulted).  Consistency between Dr. Valliere's proposed testimony and Jane Doe's allegations does not constitute improper vouching.

### C.  GENERALIZED TESTIMONY CONCERNING CHILD SEXUAL ABUSE VICTIMS' BEHAVIORS AND CHARACTERISTICS IS PERMISSIBLE.

In its Response, the United States argues that the Tenth Circuit's decision in United States v. Parson supports admission of Dr. Valliere's testimony.  See Response at 10.  In United States v. Parson, the United States' expert testified "as to the process of child-sex-abuse disclosures and the characteristics of abused children."  84 F.4th at 937.  The defendant argued that the expert testimony admitted by the district court "was not relevant because its sole purpose was to vouch for [the victim]'s credibility."  84 F.4th at 937 (brackets added).  The defendant did not challenge, however, the expert's qualifications or her testimony's reliability.  See 84 F.4th at 937.  In affirming the district court, the Tenth Circuit highlights the fact that the expert in the case "testified generally . . . without regard to [the victim]" and "did not opine about [the victim's] credibility," and that her "testimony was limited" to describing the disclosure process.  84 F.4th at 938-39.  The

Tenth Circuit concludes that "[s]uch expert opinions in child sex-abuse cases are appropriate and commonly accepted," affirming the district court's decision to admit the expert testimony.  84 F.4th at 939.

Like the defendant in United States v. Parson, Aguilar argues that Dr. Valliere's proposed testimony amounts to vouching, see Motion at 4, without challenging Dr. Valliere's qualifications or the reliability of the proposed testimony, see Tr. at 75:10-11 (Hart).  For reasons stated previously in this analysis, the Court disagrees that Dr. Valliere's testimony improperly vouches for Jane Doe.  See Analysis Section II(B), supra, at 29.  Aguilar attempts to distinguish United States v. Parson from this case by arguing that the Tenth Circuit's decision is limited to "behaviors and characteristics when reporting."  Tr. at 73:22 (Hart).  While Aguilar is correct that the expert's generalized testimony in United States v. Parson concerns the disclosure process exclusively, Aguilar's argument is untenable given the Tenth Circuit's clear statement that "testimony regarding the characteristics of sexually abused children does not, invariably, amount to vouching for the credibility of the alleged victim."  84 F.4th at 938.  Furthermore, the Tenth Circuit previously has permitted generalized testimony regarding child sexual abuse victims' behaviors and characteristics that was unrelated to the disclosure process.  See United States v. Charley, 189 F.3d at 1264-65 (concluding that the district court did not abuse its discretion in permitting the expert "to 'inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits'" (quoting United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993))).  In sum, Dr. Valliere's testimony is permissible, because the testimony does not attempt to address the witness' credibility, expert testimony that is consistent with a witness' allegations does not constitute vouching, and the generalized testimony concerning child sexual

abuse victims' behaviors and characteristics is testimony that the Tench Circuit deemed permissible in United States v. Parson and United States v. Charley.

## III.   DR. VALLIERE'S PROPOSED TESTIMONY ABOUT VICTIM'S GENERAL CHARACTERISTICS IS NOT UNFAIRLY PREJUDICIAL.

Evidence may be unfairly prejudicial if it likely would provoke an emotional response from the jury or otherwise would tend to affect adversely the jury's attitude toward a particular matter. See, e.g., United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial, however, merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

As discussed, Aguilar's rule 403 argument rests on the notion that Dr. Valliere's proposed testimony improperly vouches for Jane Doe. See Motion at 5. Aguilar states that the proposed testimony "is nothing more than an attempt to bolster the alleged victim's credibility" and, therefore, "should be excluded under Rule 403." Motion at 5. Aguilar concludes that the testimony "would be highly prejudicial" and "does nothing more than ask the jury to believe the alleged victim." Motion at 5. The Court concludes that Aguilar's argument lacks a sound basis in the relevant facts and applicable law, because the Court has established that Dr. Valliere's proposed testimony does not constitute impermissible vouching. See Analysis Section II, supra, at 26-31. The Court recognizes, however, that the proposed testimony concerning victim behaviors falls into two categories: (i) "the alleged victim's reactions . . . in this case"; and (ii) "the impact on the victim." Tr. at 68:1-15 (Court). Testimony about the latter category -- hypothesized

future impacts on the alleged victim -- is unfairly prejudicial, because such testimony would cause the jury to focus "on the victim rather than the elements of the crime."  Tr. at 70:23-24 (Court). The Court does not want the United States to elicit sympathy for Jane Doe by having the expert talk about what the impact of the alleged abuse may have on her life.  Rather, the expert's testimony is limited to testifying about impacts on a victim's life shortly after an incident, that may show that the incident occurred.  But the Court does not want Dr. Valliere to talk about impacts on minors later in life, e.g., on their sex life and relationships.  Dr. Valliere's proposed testimony, therefore, is limited to discussing behaviors that are consistent with behaviors that Jane Doe exhibited.  See United States v. Harry, 20 F. Supp. 3d at 1240 (concluding that expert testimony consistent with victim's version of events was not unfairly prejudicial to defendant); United States v. Chapman, 59 F. Supp. 3d at 1223 (concluding that expert testimony consistent with victim's behavior was not unfairly prejudicial).  Dr. Valliere is not permitted to testify about potential future behaviors and common victim reactions that go beyond this case's facts and the testimony that other witnesses provide, because the prejudicial effect upon the defendant outweighs such testimony's limited probative value.  So constrained, Dr. Valliere's testimony is permissible, and the risk of unfair prejudice does not outweigh the testimony's probative value.

In sum, Dr. Valliere's proposed testimony and opinions are relevant to the issues in this case, and are helpful to the factfinder.  Dr. Valliere's generalized testimony is not improper vouching for Jane Doe, because the testimony does not address Jane Doe's credibility.  The risk of unfair prejudice does not outweigh the probative value of Dr. Valliere's testimony. Accordingly, the Court grants the Motion in part and denies the Motion in part.  Dr. Valliere is permitted to discuss sexual abuse victim behaviors, characteristics, and reactions that are roughly contemporaneous with a sexual abuse incident and afterwards up to trial; however, Dr. Valliere is

not permitted to discuss hypothesized behaviors or characteristics that sexual abuse victims may exhibit in the future after trial.  Furthermore, Dr. Valliere is not permitted to comment on the facts of this case, opine whether Jane Doe's behaviors are consistent with known sexual abuse victim behaviors, or discuss grooming.

**IT IS ORDERED** that: (i) the Defendant's Motion to Exclude the Proposed Expert Testimony of Dr. Veronique Valliere, filed December 19, 2023 (Doc. 153), is granted in part and denied in part; (ii) the Court will permit Dr. Veronique Valliere to provide a generalized, expert opinion regarding sexually abused children's behaviors and characteristics roughly contemporaneous with the alleged incident and afterwards up to trial; (iii) the Court will not permit Dr. Valliere to provide an opinion regarding grooming; (iv) the Court will not permit Dr. Valliere to comment on this case's facts, provide an opinion whether Jane Doe's behaviors are consistent with known sexual abuse victims, nor comment on Jane Doe's credibility; and (v) the Court will not permit Dr. Valliere to discuss any hypothesized, future behaviors of Jane Doe or of other alleged minor sexual abuse victims that go beyond this case's facts and into the future after trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
   United States Attorney
Nicholas James Marshall
Mia Ulibarri-Rubin
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Nicholas Thomas Hart
Carter B. Harrison IV
Harrison & Hart LLC
Albuquerque, New Mexico

*Attorneys for the Defendant*