**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                     No. CR 21-0670 JB

KYLE AGUILAR,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Directed Verdict of Acquittal, filed January 23, 2024 (Doc. 198)("Trial Acquittal Motion"); and (ii) the Defendant Kyle Aguilar's Motion for Acquittal, filed February 16, 2024 (Doc. 210)("Acquittal Motion"). The Court heard argument on the Trial Acquittal Motion at the close of the Plaintiff United States of America's case-in-chief at trial on January 23, 2024, see Draft Transcript of Jury Trial, Day 3, January 23, 2024 at 78:11-81:22 (taken January 23, 2024)(Court, Hart, Marshall)("Jan. 23 Tr."),[1] and the Court heard argument on the Acquittal Motion on March 20, 2024, see Clerk's Minutes (dated March 20, 2024), filed March 20, 2024 (Doc. 222). The primary issues are: (i) whether the evidence in the United States' case-in-chief provides the jury with a reasonable basis to conclude that Defendant Kyle Aguilar intended to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" when he touched Jane Doe as Counts 2 and 3 of the Superseding Indictment allege, see Superseding Indictment at 1-2, filed October 4, 2023 (Doc. 126)("Superseding Indictment"); and (ii) whether the evidence in the trial record as a

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

whole provides the jury with a reasonable basis to conclude that Aguilar intended to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" when he touched Doe as Counts 2 and 3 of the Superseding Indictment allege, see Superseding Indictment at 1-2. After reviewing carefully the parties' legal arguments, the record, and the applicable case law, the Court concludes: (i) the evidence in the United States' case-in-chief -- namely, Doe's testimony -- is sufficient to support convictions of Counts 2 and 3 of the Superseding Indictment; and (ii) the evidence in the trial record as a whole -- namely, Doe's testimony and Aguilar's statement that he would "sometimes . . . massage [Doe]," Jan. 23 Tr. at 105:25 (Harrison) -- also is sufficient to support convictions of Counts 2 and 3 of the Superseding Indictment. Accordingly, the Court denies the Trial Acquittal Motion and the Acquittal Motion.

## FACTUAL BACKGROUND

The Court draws the elements of the crime from the statutes in the Superseding Indictment, and the facts from Jane Doe's testimony during trial, see Draft Transcript of Jury Trial, Day 2, January 22, 2024 at 39:2-112:19 (held January 22, 2024)(Court, Clerk, Law Clerk, Doe, Harrison, Marshall)("Jan. 22 Tr."). This matter involves allegations that Aguilar engaged in sexual contact with Jane Doe, a child who had attained the age of twelve years, but had not achieved the age of sixteen years, contrary to 18 U.S.C. §§ 1153, 2244(a)(5), 2244(a)(3), 2246(3). See Superseding Indictment at 1-2. Doe is Aguilar's niece. See Jan. 22 Tr. at 41:21-25 (Doe, Marshall); Acquittal Motion at 1.

At issue in the Trial Acquittal Motion is whether there is sufficient evidence in the United States' case-in-chief to support convictions of Counts 2 and 3 of the Superseding Indictment, and in the Acquittal Motion, the issue is whether there is sufficient evidence in the trial record as a

whole to support convictions of Counts 2 and 3 of the Superseding Indictment.[2]  Counts 2 and 3 refer to Aguilar's alleged conduct during a day in which, Doe testified, a Dallas Cowboys game was on the television.  See Jury Instruction No. 14, at 20, filed with Court's Final Jury Instructions, filed January 24, 2024 (Doc. 205)("Instr.")("Count 2 refers to one of the alleged incidents on the day of the Dallas Cowboys game."); Instr. No. 15, at 21 ("Count 3 refers to the other alleged incident on the day of the Dallas Cowboys game.").[3]  The Grand Jury charges Counts 2 and 3 under 18 U.S.C. § 2244(a)(3), which reads:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in or causes sexual contact with or by another person, if so to do would violate --
>
> . . . .
>
> subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both[.]

18 U.S.C. § 2244(a)(3).  The cross-referenced statute in this provision, 18 U.S.C. § 2243(a), reads:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in a sexual act with another person who --
>
> **(1)**    has attained the age of 12 years but has not attained the age of 16 years; and

---

[2]The Court is mindful of this analytical difference, which the Court discusses in greater detail below.  See Law Regarding Motions for Judgment of Acquittal, infra, at 12-13.  In this case, all arguments related to evidentiary sufficiency -- both during and after trial, and both by the United States and by Aguilar -- are focused on Doe's testimony during the United States case-in-chief. See Procedural Background Section, infra, at 5-9.  Nevertheless, for the purposes of procedural clarity and exactitude, the Court will provide separate analyses for the Trial Acquittal Motion and the Acquittal Motion.  See Analysis Section, infra.  Moreover, the Court concludes that evidence in Aguilar's case-in-chief provides further evidentiary support on which the jury could base its conclusions.  See Analysis Section II, infra.

[3]In the Trial Acquittal Motion, Aguilar also argues that there is insufficient evidence to support a conviction on Count 1 of the Superseding indictment.  See Trial Acquittal Motion at 8-15.  The jury acquitted Aguilar on Count 1, however, see Verdict, filed January 23, 2024 (Doc. 204), and thus the Court does not address his arguments as to the sufficiency of the United States' evidence as to Count 1.

**(2)**      is at least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2243(a).  Section § 2246(3) of Title 18 defines the term "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]"  18 U.S.C. 2246(3).

Doe testified on the second day of the jury trial in this matter.  See Jan. 22 Tr. at 39:2-112:19 (Court, Clerk, Law Clerk, Doe, Harrison, Marshall).  During her direct testimony, Doe described the conduct that occurred on the day of the Dallas Cowboys game.  See Jan. 22 Tr. at 51:13-54:16 (Doe, Marshall).  She stated that, on that day, she had gone into her uncle Anthony's room, locked the door, put on a movie, and laid down.  See Jan. 22 Tr. at 51:13-54:16 (Doe, Marshall).  She then testified:

| | |
|---|---|
| Doe: | And after a while, I just remember the door being unlocked from Kyle.  And I can't remember what happened before, or as he walked in, or if there was a conversation.  But I just remember him laying down behind me and just giving me a back massage.  And then just touching me. |
| Marshall: | You said he was just touching you.  Where was he touching you? |
| Doe: | On my butt, and then my breasts over my bra, and then my private part over my clothes. |
| Marshall: | Just so we're clear, you said your "private part" over your clothes? |
| Doe: | Yes. |
| Marshall: | Is there another name for that part of your body? |
| Doe: | My vagina. |
| Marshall: | While this was going on, did he say anything to you? |

Doe:        I can't remember.  I froze up.

Marshall:   How were your clothes?  Did he stay on your body?

Doe:        Yes, because I said that my sister was calling me, or I was just going to go check on them.  So I got up and went outside.

Marshall:   Let me get that straight.  You said you told him you heard your sisters calling, so you got up and went outside?

Doe:        Yes.

Marshall:   How did he react when you did that?

Doe:        I don't know.  I got up quick, and I just walked out.

. . . .

Marshall:   When Kyle came into the room, into Anthony's room, how was he acting?

Doe:        Just normal. It's hard to say, because everything just happened fast.

Marshall:   Okay.  You mentioned it happened fast.  How did you react at the very beginning when it first started?

Doe:        I was just relaxing.  I was just watching a movie.  And then I just remember him coming in saying something I can't remember, and then just -- it just jumped to what happened to me.

Marshall:   When he started to touch you, did you say anything or do anything?

Doe:        No.  I just laid there and I froze.

Jan. 22 Tr. at 51:24-54:13 (Doe, Marshall).  Doe also testified that she previously had told a doctor that "her uncle Kyle" had "touched" her in the home and that Doe felt that she "wasn't safe at home."  Jan. 22 Tr. at 49:22-50:5 (Doe).

        After the United States rested its case, Aguilar presented his case-in-chief, which consisted of two witnesses.  See Jan. 23 Tr. at 86:13-116:6 (Court, Aguilar, Clerk, Harrison, Hart, Marshall,

Sanchez, Ulibarri-Rubin).   Aguilar's first witness, his brother Anthony Sanchez, denied ever having seen Aguilar touch Doe in any "inappropriate" manner, or having seen Aguilar "having sexual contact [with] or abusing" Doe.  Jan. 23 Tr. at 89:18-90:6 (Sanchez).  Next, Aguilar testified in his defense.  See Jan. 23 Tr. at 98:7-116:2 (Court, Aguilar, Clerk, Harrison, Marshall).  During Aguilar's direct examination, Aguilar and his counsel had the following exchange:

> Harrison:    So I want to obviously transition over into the allegation here.  Before I get a transitional question so the Government played a little portion of your statement to Special Agent Chavez where -- I don't want to misstate what it said -- but where they asked you have you ever touched Princella and you said sometimes you massage her.  Would you a explain what that means?
>
> Aguilar:    I think at the time it was taken out of context or misconstrued.  I was referring to as like any family member, you would do like positive gesture of you know, patting the back, or like maybe they did a good job or they're doing better as they've been struggling, that's what I was referring to, and. [sic]
>
> Harrison:    All right so a seated arms on the yoke and shoulders type of quote/unquote massage?
>
> Aguilar:    I guess you could say that.  But I guess what I was referring to was like how you acknowledge someone or you know you did good or it's just -- you know -- it's a positive gesture.
>
> Harrison:    Okay that's [what] I'm trying to clarify some people think massage the first thing they think someone disrobes lying on a table or bed that wasn't what you were referring to it's no. [sic] . . . .

Jan. 23 Tr. at 105:19-106:18 (Aguilar, Harrison).  Aguilar denied any "sexual contact" with Doe. Jan. 23 Tr. at 106:19-106:21 (Aguilar).  He also denied ever having touched Doe's vagina or breasts, either directly or through clothing.  Jan. 23 Tr. at 115:15-20 (Aguilar).

## PROCEDURAL BACKGROUND

At the close of the United States' case-in-chief, Aguilar moved for a directed verdict on Counts 2 and 3 of the Superseding Indictment.  See Jan. 23 Tr. at 78:11-81:22 (Court, Hart, Marshall).  Aguilar argued that Doe's testimony regarding Counts 2 and 3 is "vague and very

difficult to follow and full of all types of gaps," and concluded that her "testimony was just not sufficient in a light most favorable to the government to allow a jury to find beyond a reasonable doubt on counts 2 and 3." Jan. 23 Tr. at 79:10-16 (Hart). Aguilar reiterated this point in the Trial Acquittal Motion, in which he states that Doe's "generic testimony about touching is simply not enough for a reasonable jury to conclude that Mr. Aguilar touched her, let alone in conformity with the statute." Trial Acquittal Motion at 15. In response to Aguilar's directed verdict arguments at the close of the United States' evidence, the United States notes that Doe testified that, when Aguilar came into the locked room, he "started massaging her and touching her body par[t]s . . . he touched her butt[,] her breasts[,] and her genital area," and that this testimony, when viewed in the light most favorable to the United States, provides a basis on which the jury reasonably could conclude that Aguilar is guilty of the crimes charged in Counts 2 and 3. Jan. 23 Tr. at 80:16-18 (Marshall). The Court denied Aguilar's Trial Acquittal Motion, stating that Doe's "testimony is sufficient." Jan. 23 Tr. at 81:10-12 (Court). Aguilar renewed the Trial Acquittal Motion again following the presentation of his case -- "for preservation purposes" -- and the Court again denied Aguilar's request. Jan. 23 Tr. at 120:4-24 (Court, Hart).

In the Acquittal Motion, Aguilar refines and adds nuance to this argument. He contends that "[a] touching alone is insufficient to prove an intent to abuse, humiliate, harass degrade, or arouse or gratify the sexual desire of any person." Acquittal Motion at 3. Citing a case from the United States Court of Appeals for the First Circuit, Aguilar asserts that a touching "'on its own [] is not sufficient to demonstrate by a preponderance of the evidence that [a defendant's] intent was to commit sexual abuse.'" Acquittal Motion at 3 (quoting United States v. Castillo, 981 F.3d 94, 106-07 (1st Cir. 2020))(brackets in Acquittal Motion, but not in United States v. Castillo). Aguilar argues that, "for there to be an intent to abuse, humiliate, harass, degrade, arouse or gratify the

sexual desire of a person, there must be some evidence, in addition to a touching, to allow a jury to infer that the contact was intended to be of a sexual nature."  Acquittal Motion at 4.  According to Aguilar, there can be "actual evidence of intent" -- such as sexual statements -- or intent can be inferred "'where the contact alleged is so clearly sexual that the jury may infer the defendant's intent.'"  Acquittal Motion at 4 (quoting United States v. Lee, 232 F.3d 653, 655 (8th Cir. 2000)). Aguilar argues that there is no evidence in this case on which on jury can infer that the touching is of a sexual nature.  See Acquittal Motion at 4-5.  He states that "a touching can be accidental, by mistake, or even legitimate based on the facts and circumstances of the touching," and that, in this case, Doe's testimony indicates only that the touching occurred after Aguilar gave Doe a back massage, that he was "acting normal," and that Doe could not remember any conversation between them.   Acquittal Motion at 5.  In Aguilar's view, "[n]one of this evidence, which can only be characterized as testimony about nothing (*i.e.*, acting normal and no conversation) cannot allow a jury, without speculation, [to conclude] that there was an intent to abuse, humiliate, harass, degrade, arouse or gratify the sexual desire of a person."  Acquittal Motion at 5.

The United States begins its response by attempting to distinguish United States v. Castillo, 981 F.3d at 106-07, which the United States contends does not impose a "an overly broad limitation on a touching in every case."  United States' Response to Motion for Judgment of Acquittal, filed March 8, 2024 (Doc. 215)("Acquittal Motion Response").  The United States asserts that United States v. Castillo instead "analyzed whether the touching of the inner thigh was enough to establish an attempt to commit a sexual act."  Acquittal Motion Response at 4.  Moreover, the United States distinguishes United States v. Castillo factually, stating that, whereas that case involved "the touching of the inner thigh," Aguilar's case involves a very different touching, namely: "a touching of the breasts and genitalia."  Acquittal Motion Response at 4.  The United States agrees with

Aguilar's assertion that there are some contacts which are "by their own nature sexual acts," but concludes -- contra Aguilar -- that Aguilar's touching falls into this category of de facto sexual touching. Acquittal Motion Response at 4. See id. at 5 (arguing that Aguilar's "touching is, by its nature, a sexual act and does not require anything additional to show it was intended to humiliate, harass, degrade, arouse, or gratify the sexual desire of the defendant"). The United States asserts that there was no mistake or legitimate reason for Aguilar's touching, and that "there is no legitimate reason for the defendant, a man in his 30's at the time, to touch and rub the breasts and vagina of a 14-year-old child." Acquittal Motion Response at 5.

The United States also offers an analysis of a case from the United States Court of Appeals for the Eighth Circuit: United States v. Plenty Chief, 561 F.3d 846 (8th Cir. 2009). As the United States describes it, in United States v. Plenty Chief, the Eighth Circuit

> held that there was sufficient evidence that a reasonable jury could find the defendant guilty of Abusive Sexual Contact of a Minor under 18 U.S.C. § 2244(a)(3) and 18 U.S.C. § 2246(3), where the child had testified that the defendant entered her bedroom, sat on her bed, and began rubbing her thighs and chest.

Acquittal Motion Response at 6 (citing United States v. Plenty Chief, 561 F.3d at 855). The United States contends that this factual scenario is "very analogous to the current case" and concludes by stating that, in Aguilar's case, the "facts alone are sufficient to sustain the guilty verdict for Counts 2 and 3." Acquittal Motion Response at 6.

The United States and Aguilar presented these arguments to the Court on March 20, 2024. See Clerk's Minutes (dated March 20, 2024), filed March 20, 2024 (Doc. 222). The Court noted that "I guess just don't know why a man touches the genitalia or a girl -- or breasts -- if it's not to arouse himself sexually," and so "I'm looking for what else could be the explanation, and if that's the only one . . . then it seems to me I'll just leave it to the jury to make a reasonable inference."

Draft Transcript of March 20, 2024, Hearing at 3:13-4:7 (held March 20, 2024)(Court)("March 20 Tr."). Aguilar argued that, without something like "penetration, protracted touching, touching oneself, indications of arousal," there is not enough evidence in this case that Aguilar's touching is of a sexual nature. March 20 Tr. at 5:4-7 (Harrison). The United States responded that, in line with the Court's observation, "there really can't be another intention of a 30-something-year-old male with the touching of the breasts and genitalia of a 12-year-old minor child," and the United States again sought to distinguish the facts of Aguilar's case with United States v. Castillo, 981 F.3d at 106-07, which involves "an inner thigh touching," March 20 Tr. at 5:24-6:3 (Ulibarri-Rubin). The United States also suggested that "I don't think that that's a typical massage for an adult family member to give to a child to rub their breasts and genitalia." March 20 Tr. at 6:7-10 (Ulibarri-Rubin). Substantively, the United States took issue with Aguilar's contention that to secure a conviction the government must show "a touching plus." March 20 Tr. at 6:18 (Ulibarri-Rubin). Instead, the United States again asserted that "there are some types of touching that just are sexual in nature which is what this would be." March 20 Tr. at 8:1-3 (Ulibarri-Rubin).

The United States also indicated that other testimonial evidence -- aside from Doe's recounting of the alleged incident -- supports the conclusion that Aguilar's touching was undertaken with "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). See March 20 Tr. at 8:3-13 (Ulibarri-Rubin). Specifically, the United States pointed to the evidence that Doe felt "feelings of fear" when she encountered Aguilar following the incident, and that Doe had told a doctor that Aguilar "had inappropriately touched her and she felt unsafe in the home." March 20 Tr. at 8:3-13 (Ulibarri-Rubin). Aguilar countered that this evidence has nothing to do with whether the alleged touching was performed with "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual

desire of any person," 18 U.S.C. § 2246(3), because "we look at obviously the defendant's perspective in doing this," March 20 Tr. at 9:20-21 (Harrison).  The Court concluded that "a reasonable jury could conclude that . . . he did it to sexually gratify himself," and thus the Court denied the Acquittal Motion.  March 20 Tr. at 10:6-8 (Court).

## LAW REGARDING MOTIONS FOR JUDGMENT OF ACQUITTAL

Rule 29 of the Federal Rules of Criminal Procedure provides:

**(a)     Before Submission to the Jury.**  After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  The court may on its own consider whether the evidence is insufficient to sustain a conviction.  If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

**(b)     Reserving Decision.**  The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

**(c)     After Jury Verdict or Discharge.**

**(1)     Time for a Motion**. A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.

**(2)     Ruling on the Motion**. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.  If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

**(3)     No Prior Motion Required**. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

**(d)     Conditional Ruling on a Motion for a New Trial.**

**(1)** **Motion for a New Trial.** If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination.

**(2)** **Finality**. The court's order conditionally granting a motion for a new trial does not affect the finality of the judgment of acquittal.

**(3)** **Appeal.**

**(A)** **Grant of a Motion for a New Trial.** If the court conditionally grants a motion for a new trial and an appellate court later reverses the judgment of acquittal, the trial court must proceed with the new trial unless the appellate court orders otherwise.

**(B)** **Denial of a Motion for a New Trial.** If the court conditionally denies a motion for a new trial, an appellee may assert that the denial was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as the appellate court directs.

Fed. R. Crim. P. 29 (bold in original).  As the rule's text suggests, a defendant may move for a judgment of acquittal at various junctures, and this choice impacts which evidence a district court may consider in assessing the motion.  "Rule 29(a), as it concerns a motion for acquittal at the close of the prosecution's case, implements the 'requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.'"  United States v. Hinderman, 625 F.2d 994, 996 (10th Cir. 1980)(per curiam)(quoting Cephus v. United States, 324 F.2d 893, 895 (D.C. Cir. 1963)).  Rule 29(a) also allows, however, a motion for judgment of acquittal to be made "[a]fter the close of all the evidence."  Fed. R. Crim. P. 29.  In that scenario, a district court evaluates the sufficiency based on all the evidence in the case, and not on only the evidence that the United States presented in its case-in-chief.  See McGautha v.

California, 402 U.S. 183, 215 (1971), reh'g granted, judgment vacated on other grounds sub nom.

Crampton v. Ohio, 408 U.S. 941 (1972); United States v. Funaro, 222 F.R.D. 41, 43 (D. Conn.

2004)(Droney, J.)(stating that, after the presentation of the defendant's evidence, "the [c]ourt at

this stage evaluates the renewed motion for judgment of acquittal based on all the evidence in

the case, not just that which was presented in the Government's case-in-chief" (citing United

States v. Velasquez, 271 F.3d 364, 371-72 (2d Cir. 2001))).  Further, rule 29(c) allows a judgment

of acquittal after a guilty verdict or after the jury is discharged.  See Fed. R. Crim. P. 29(c).

Although the motion of acquittal's timing affects the evidence that the district court considers in

assessing the motion and also affects appellate review,[4] the analytical standard -- discussed below

-- remains the same.  See 2A Charles Alan Wright & Arthur Miller, Federal Practice and

Procedure § 465 (4th ed. 2023)("Wright & Miller")("The standard on a motion after discharge

of the jury is the same as on a motion at the close of the government's case or of all the

evidence.").

---

[4]As the United States Court of Appeals for the Tenth Circuit has noted:

> Pursuant to Fed. R. Crim. P. 29(a), a defendant may move for judgment of acquittal at the end of the Government's case-in-chief.  Generally, if the defendant's motion is denied, he has two options: (1) he may rest his case, or (2) he may proceed and present his case.  See Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, Criminal Procedure § 24.6(b) (2d ed.1999).  If a defendant chooses to rest his case, our review of the record is necessarily limited to evidence produced during the Government's case-in-chief alone.  See [United States v.] Vallo, 238 F.3d [1242,] 1248 [[10th Cir. 2001]].  If a defendant chooses to present additional evidence, however, the "defendant waives the right to have the sufficiency of the evidence tested by the government's case alone" and we review the entire record on appeal.  United States v. Bowie, 892 F.2d 1494, 1496 (10th Cir.1990)(emphasis added); United States v. Lazcano-Villalobos, 175 F.3d 838, 844 n. 3 (10th Cir.1999); Vallo, 238 F.3d at 1248.

United States v. Delgado-Uribe, 363 F.3d 1077, 1082 (10th Cir. 2004)(Baldock, J.)(footnotes omitted).

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court of the United States noted that the long-settled practice of allowing federal courts to enter judgments of acquittal when evidence is insufficient to sustain a conviction "only . . . highlight[s] the traditional understanding in our system that the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion."  443 U.S. at 317 n.10.  A judgment of acquittal thus enables a federal district court to protect a defendant's due process rights by removing from jury consideration a charge with respect to which no rational trier of fact could find guilt beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. at 317-19.

In deciding a motion for judgment of acquittal, the court must ask "only whether taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000).  The court relies on the jury, "as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented."  United States v. McKissick, 204 F.3d at 1289.   See United States v. Brooks, 438 F.3d 1231, 1236 (10th Cir. 2006)("Furthermore, it is not our duty to weigh conflicting evidence nor to consider the credibility of witnesses.").  The court must refrain from "examining the evidence in 'bits and pieces,'" and must instead "evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'"  United States v. Brooks, 438 F.3d at 1236 (quoting United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997))(alteration in United States v. Wilson and in United States v. Brooks).  Wright and Miller note that, in making this determination:

> It is not for the court to assess the credibility of witnesses, weigh the evidence, or draw inferences of fact from the evidence. These are functions of the jury. The court must look to all of the evidence, but must take the view of the evidence and the

inferences therefrom in the light most favorable to the government. That the testimony is in conflict is not in itself enough to require judgment of acquittal.

Wright & Miller, supra, § 467.

The court's role is to determine whether the evidence, if believed, would establish each of the crime's elements. See United States v. Delgado-Uribe, 363 F.3d at 1081 (citing United States v. Vallo, 238 F.3d 1242, 1247 (10th Cir. 2001)). "[T]he evidence necessary to support a verdict 'need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'" United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(quoting United States v. Wilson, 182 F.3d at 742). The court should enter a judgment of acquittal only if no reasonable juror could have found the defendant guilty. See United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)("We will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict." (citing United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994); United States v. Hoenscheidt, 7 F.3d 1528, 1530 (10th Cir. 1993))). The court should not conclude that there is enough evidence to support a conviction, however, if a conviction can only be "obtained by piling inference upon inference. 'An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning.'" United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(quoting United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997); and citing United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995)). The United States Court of Appeals for the Tenth Circuit stated in United States v. Summers, 414 F.3d 1287 (10th Cir. 2005):

> The rule prohibiting the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, "the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." United States v. Shahane, 517 F.2d 1173, 1178 (8th Cir. 1975).

United States v. Summers, 414 F.3d at 1294-95.  See United States v. Baca, 333 F.R.D. 211, 219 (D.N.M. 2019)(Browning, J.)("The Tenth Circuit's standard for motions for judgments of acquittal is deferential, requiring that the court consider, in the light most favorable to the United States, the direct and circumstantial evidence as well as any reasonable inferences a jury could draw from that evidence."); United States v. Sandoval, No. CR 22-1010, 2024 WL 278786, at *26 (D.N.M. January 25, 2024)(Browning, J.)("[T]o make this sufficiency determination, the Court considers 'only the legal question whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting Musacchio v. United States, 577 U.S. 237, 243 (2016))(emphasis in Musacchio v. United States and in United States v. Sandoval)).

## **ANALYSIS**

The Court denies the Trial Acquittal Motion and the Acquittal Motion.  First, in assessing the Trial Acquittal Motion, the Court concludes that Doe's testimony from the United States' case-in-chief provides a sufficient evidentiary foundation for convictions on the Superseding Indictment's Counts 2 and 3, because, given the nature of the touching that Doe alleges, a jury reasonably can infer that Aguilar touched Jane Doe with "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3).  Second, in assessing the Acquittal Motion, the Court reiterates this conclusion and further concludes that evidence from Aguilar's case-in-chief -- which indicates that Aguilar previously had stated that he sometimes "massage[d]" Doe, Jan. 23 Tr. at 105:19-106:18 (Aguilar, Harrison) -- adds further evidence on which a jury could rely to find Aguilar guilty on the Superseding Indictment's Counts 2 and 3.

I.   **DOE'S TESTIMONY PROVIDES SUFFICIENT EVIDENTIARY SUPPORT ON WHICH THE JURY REASONABLY CAN INFER THAT AGUILAR'S MENS REA DURING THE ALLEGED TOUCHING MEETS 18 U.S.C. § 2244(a)(3)'S SCIENTER REQUIREMENT.**

As the Procedural Background Section of this Memorandum Opinion and Order indicates, the main dispute as to the evidentiary sufficiency on Counts 2 and 3 focuses on the mens rea requirement of 18 U.S.C. § 2244(a)(3) and of 18 U.S.C. § 2246(3).  Specifically, Aguilar contends that, to prove that an instance of "sexual contact" occurred as 18 U.S.C. § 2244(a)(3) requires, there must be "some evidence, in addition to a touching, to allow a jury to infer that the contact was intended to be of a sexual nature."  Acquittal Motion at 4.  See 18 U.S.C. § 2246(3) ("[T]he term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.").  The United States argues that 18 U.S.C. § 2246(3)'s definition of "sexual touching" does not impose a "touching plus" requirement, March 20 Tr. at 6:18 (Ulibarri-Rubin), and that the testimony regarding Aguilar's alleged touching in this case "is,  by its nature, a sexual act and does not require anything additional to show it was intended to humiliate, harass, degrade, arouse, or gratify the sexual desire of the defendant," Acquittal Motion Response at 5.

After considering carefully the parties' arguments on this point, and reviewing the relevant case law, the Court concludes that 18 U.S.C. § 2246(3)'s definition of "sexual contact" does not impose a categorical requirement that United States show "some evidence, in addition to a touching, to allow a jury to infer that the contact was intended to be of a sexual nature."  Acquittal Motion at 4.  Although the Tenth Circuit has not spoken directly to this question, the Tenth Circuit's general guidance -- and other Courts of Appeals' cases -- indicates that 18 U.S.C. § 2246(3)'s "sexual contact" definition does not impose a categorical "touching plus" requirement

to prove intent. Such an evidentiary requirement may be necessary under certain fact patterns, but, in many cases, the nature of the alleged touching may be a sufficient basis on which a factfinder can infer that the touching is undertaken "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). Applying these principles to Aguilar's case, the Court concludes that Doe's testimony is a sufficient basis on which the jury could conclude reasonably that Aguilar sought to "arouse or gratify" his "sexual desire." 18 U.S.C. § 2246(3). The Court explains these conclusions below.

As the Court notes above, the Tenth Circuit is yet to rule on the question whether a touching alone is sufficient to support a conviction involving "sexual contact" as 18 U.S.C. § 2246(3) defines that term. The Tenth Circuit has offered, however, some analysis of analogous issues in closely related statutes. In <u>United States v. Norman T.</u>, 129 F.3d 1099 (10th Cir. 1997)("<u>Norman T.</u>"), the Tenth Circuit reviewed the evidentiary sufficiency of a defendant's bench-trial conviction of Aggravated Sexual Abuse under 18 U.S.C. §§ 2241(c) and 2246(2)(C). 129 F.3d at 1101. The allegations in <u>Norman T.</u> were that the fourteen-year-old defendant sexually had abused his five-year old cousin when, "[o]ne afternoon, while Norman T. and the victim were watching television, he made her get on his lap and, through her clothing, briefly inserted his finger into her genital opening. He then told her not to tell anyone what he had done or he would hurt her." 129 F.3d at 1101. The defendant's convictions were based, in part, on a conclusion that the Honorable James A. Parker, United States District Judge for the District of New Mexico, reached regarding the intent requirement for a "sexual act" as 18 U.S.C. § 2246(2)(C) defines that term. 129 F.3d at 1102. The statute defines "sexual act" as "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). Accordingly, 18

U.S.C. § 2246(2)(C)'s scienter requirement is identical to 18 U.S.C. § 2246(3)'s definition of "sexual contact." Compare 18 U.S.C. § 2246(2)(C), with 18 U.S.C. § 2246(3). In the district court bench trial, Judge Parker "found intent was 'implicit in the circumstances surrounding the defendant's conduct,' basing [his] finding specifically on the place of the touching, the depth of the touching, and the threat made by Norman T." Norman T., 129 F.3d at 1103 (source of quoted material not cited, but presumably district court record). The Tenth Circuit affirmed Judge Parker's conclusion on this issue, stating:

> A rational trier of fact could have found Norman T. acted with the required intent based on the circumstances surrounding the incident. Norman T. had the victim sit on his lap when the two were alone and penetrated her genitalia so forcefully the area remained painful for at least a day. He then demonstrated he knew what he had done was wrong by threatening the victim with retaliation if she told anyone about it. One would be hard pressed to think of a reason he might have done this except to abuse, humiliate, harass, or degrade the victim, or to arouse or gratify his sexual desire.

Norman T., 129 F.3d at 1104.

Norman T. thus states that, as a general matter, to assess 18 U.S.C. § 2246(2)(C)'s scienter requirement, courts should look to "the circumstances surrounding the incident," and may infer an intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" from those circumstances. Norman T., 129 F.3d at 1104. This general principle accords with the familiar notion that "a jury may make reasonable inferences of knowledge and intent from circumstantial evidence." United States v. Rufai, 732 F.3d 1175, 1192 (10th Cir. 2013). See Shoppin' Bag of Pueblo, Inc. v. Dillon Companies, Inc., 783 F.2d 159, 163 (10th Cir. 1986)("Often no direct evidence of specific intent exists and inferences from conduct are necessary."); United States v. Isabella, 918 F.3d 816, 834 (10th Cir. 2019)("To the extent [that the defendant] argues that the evidence does not establish his specific intent, we note that his explicit requests for 'naughty' and 'naked' photos were more than sufficient to infer specific intent to persuade S.F. to

send him child pornography." (source of quoted material not cited, but presumably the district court record)).  Beyond this general principle, however, Norman T. does not illuminate whether an intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" may be based on the alleged touching alone.  Indeed, Norman T. involved more than just a touching alone, and, moreover, Norman T.'s analysis is focused on a separate provision of 18 U.S.C. § 2246: a definition for "sexual act" and not "sexual contact."  See Norman T., 129 F.3d at 1103-04.  Compare 18 U.S.C. § 2246(2)(C) with 18 U.S.C. § 2246(3).

Cases from other Courts of Appeals, however, have affirmed district court convictions under 18 U.S.C. § 2244(a) and 18 U.S.C. § 2246(3) on the basis of evidence similar to Doe's testimony.  For example, in United States v. Plenty Chief, 561 F.3d 846 (8th Cir. 2009), the Eighth Circuit held that evidence showing that the defendant "entered [the victim's] bedroom, sat on her bed, and began rubbing her thighs and chest," was sufficient to support a conviction under 18 U.S.C. § 2244(a)(3) and 18 U.S.C. § 2246(3).  United States v. Plenty Chief, 561 F.3d at 844-845.  Similarly, in an unpublished opinion, the United States Court of Appeals for the Ninth Circuit concluded that facts showing that a victim "awakened to find [d]efendant's hand, under the blanket that was covering her while she slept, first moving up her inner thigh and then touching her vagina underneath her gym shorts but over her underpants," was likewise sufficient under 18 U.S.C. § 2244(a)(3) and 18 U.S.C. § 2246(3).  United States v. DeCrane, 766 F. App'x 485, 486 (9th Cir. 2019)(unpublished).  In addition, another Eighth Circuit case, United States v. Lee, 232 F.3d 653 (8th Cir. 2000), which reviews the evidentiary sufficiency of a conviction under 18 U.S.C. § 2244(a)(1) -- a separate provision of the abusive sexual contact statute -- states that, even where there is "[n]o evidence of intent," there "is no defect in the government's case where the contact alleged is so clearly sexual that the jury may infer the defendant's intent."  United States v. Lee,

232 F.3d at 655 (citing United States v. Demarrias, 876 F.2d 674, 676 (8th Cir. 1989)).  The case

cited in support of this proposition is United States v. Demarrias, which instructs:

> Charter 109A[5] [sic] encompasses some types of contact which by their nature are
> sexual acts, and therefore require no showing of intent.  Other types of contact,
> especially with the hand or an object, may be made for purposes other than sex.
> For example, a doctor administering medication to a genital area is not acting for
> the purpose of sexual gratification, and his conduct should not fall within chapter
> 109A.  A distinction must therefore be made for contact that falls into this category.
> That distinction is the requirement that the actor's intent be to gratify, harass, abuse,
> or degrade.

876 F.2d at 676.  In United States v. Lee, the Eighth Circuit applies this principle to the facts of

the case before it, concluding:

> T.G. testified that Lee touched and rubbed her genital area at night while he
> believed she was asleep. Viewed in the light most favorable to the verdict, and in
> the absence of any suggestion that the touching occurred in furtherance of a non-
> sexual purpose, such as the administering of medication or other ameliorative care,
> such behavior implies its own intent.

United States v. Lee, 232 F.3d at 656.

The Court concludes that these are sensible principles in interpreting the intent requirement

in 18 U.S.C. § 2246(3)'s definition of "sexual contact."  Moreover, these principles accord with

the Tenth Circuit's guidance in Norman T., which instructs that courts should assess the "abuse,

humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" intent requirement

by looking to "the circumstances surrounding the incident," and may infer an intent from those

circumstances.  Norman T., 129 F.3d at 1104.  See United States v. Rufai, 732 F.3d at 1192 ("[A]

jury may make reasonable inferences of knowledge and intent from circumstantial evidence.").

When assessing these circumstances, however, the Court heeds the Eighth Circuit's observation

---

[5]Chapter 109A of Title 18 of the United States Code covers sexual abuse crimes and
includes all statutes codified at 18 U.S.C. §§ 2241-2248.

that some instances of contact with the 18 U.S.C. § 2246(3) body parts -- "the genitalia, anus, groin, breast, inner thigh, or buttocks," 18 U.S.C. § 2246(3) -- may have some "non-sexual purpose, such as the administering of medication or other ameliorative care," United States v. Lee, 232 F.3d at 656.  Nevertheless, outside of these circumstances, many contacts -- especially with a young person's genitalia, anus, or breasts -- "by their nature are sexual acts."  United States v. Demarrias, 876 F.2d at 676.  Accordingly, the Court disagrees with Aguilar's contention that, to prove the required intent for "sexual contact" under 18 U.S.C. § 2244(a)(3), there must be "some evidence, in addition to a touching, to allow a jury to infer that the contact was intended to be of a sexual nature."  Acquittal Motion at 4.

Applied to Aguilar's case, the Court concludes that Doe's testimony is sufficient to allow the jury to find that Aguilar touched Doe with the intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3).  First and foremost, there is no indication in the record of any non-sexual purpose that would lead Aguilar -- a man in his 30's -- to touch the genitalia, buttocks, and breasts of his twelve-year-old niece.  While Doe describes a "back massage" in her account of the incidents, which may provide some indication of a non-sexual purpose for the initial touching -- or, alternatively, may be further indication of a sexual purpose -- Doe's testimony nevertheless indicates that the later touching of her buttocks, breasts, and genitalia, was not part of the "back massage":

> Doe: And after a while, I just remember the door being unlocked from Kyle.  And I can't remember what happened before, or as he walked in, or if there was a conversation.  But I just remember him laying down behind me and just giving me a back massage.  And then just touching me.
>
> Marshall: You said he was just touching you.  Where was he touching you?
>
> Doe: On my butt, and then my breasts over my bra, and then my private part over my clothes.

- 22 -

Jan. 22 Tr. at 51:24-52:8 (Doe, Marshall).  Doe later clarified that "private part" refers to her

genitalia.  Jan. 22 Tr. at 52:12-14 (Doe, Marshall).  While a back massage is not always performed

with the intent to arouse or gratify sexual desire, given the circumstances that Doe describes, the

Court cannot imagine any other purpose to this touching if not "to abuse, humiliate, harass,

degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3).  Moreover,

like the circumstances at issue in United States v. Lee, 232 F.3d at 656, there is no indication that

Aguilar's alleged touching of Doe's buttocks, breasts, and genitalia was conducted in furtherance

of "the administering of medication or other ameliorative care."  United States v. Lee, 232 F.3d at

656.  The Court's duty in ruling on the Trial Acquittal Motion is to assess whether "the evidence

-- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom --

in the light most favorable to the government," provides sufficient basis on which "a reasonable

jury could find the defendant guilty beyond a reasonable doubt."  United States v. McKissick, 204

F.3d at 1289.  The Court concludes that, when viewed in this manner, and taking into account "the

circumstances surrounding the incident," Norman T., 129 F.3d at 1104, Doe's testimony provides

sufficient evidence on which the jury could infer that Aguilar touched Doe's buttocks, genitalia,

and breasts with the intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual

desire of any person."  18 U.S.C. § 2246(3).[6]  More specifically, he did these acts to arouse or

gratify himself sexually.  Accordingly, the Court denies the Trial Acquittal Motion.

---

[6]Although Aguilar does not challenge evidentiary sufficiency on the other elements of Counts 2 and 3 of the Superseding Indictment, the Court concludes that there is sufficient evidence in the United States' case-in-chief to conclude that: (i) the alleged sexual abuse occurred during the time period alleged in the Superseding Indictment, see Jan. 22 Tr. at 48:3-51:12 (Doe, Marshall); Draft Transcript of Jury Trial, Day 1, January 19, 2024 at 217:2-220:9 (held January 19, 2024)(Ulibarri-Rubin, Unzicker)("Jan. 19 Tr."); (ii) Doe was between the ages of twelve and sixteen during that time period, Jan. 22 Tr. at 48:11-12 (Doe, Marshall); (iii) Aguilar is an Indian, as federal law defines that term, see Jan. 19 Tr. at 266:8-269:24 (Court, Chavez, Marshall); Pueblo

II.   **DOE'S TESTIMONY, IN ADDITION TO EVIDENCE FROM AGUILAR'S CASE-IN-CHIEF, PROVIDES SUFFICIENT EVIDENTIARY SUPPORT ON WHICH THE JURY REASONABLY COULD INFER THAT AGUILAR'S MENS REA DURING THE ALLEGED TOUCHING MEETS THE SCIENTER <u>REQUIREMENT FOR 18 U.S.C. § 2244(a)(3)</u>.**

For similar reasons, the Court also concludes that evidence from the trial record as a whole provides sufficient evidence on which the jury could find that Aguilar touched Doe's buttocks, genitalia, and breasts with the intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). In addition to Doe's testimony above, during Aguilar's case-in-chief, the jury heard -- via a statement from Aguilar's counsel -- that Aguilar had stated previously to law enforcement that he would "sometimes . . . massage [Doe]." Jan. 23 Tr. at 105:25 (Harrison). The Court concludes that this evidence -- a reference to Aguilar's previous statement to law enforcement how sometimes he massages his twelve-year-old niece -- provides further circumstantial evidence regarding Aguilar's proclivity for physically touching his niece. This circumstantial evidence, in conjunction with Doe's testimony, leads to a reasonable inference that he obtains some sexual satisfaction from this contact. <u>See</u> <u>United States v. McBride</u>, 656 F. App'x 416, 422 (10th Cir. 2016)("'[I]t is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence.'" (quoting <u>United States v. Durham</u>,

---

of San Felipe, Tribal Enrollment Program (dated June 21, 2013), admitted into evidence on January 19, 2024, as United States' Trial Exhibit 5, Jan. 19 Tr. at 264:6-7 (Court)(admitting United States' Trial Exhibit 5 into evidence); and (iv) the offenses took place in Indian Country, as federal law defines that term, <u>see</u> Jan. 19 Tr. at 266:8-269:24 (Court, Chavez, Marshall); United States Department of the Interior, Land Status Certificate (dated May 19, 2017), admitted into evidence on January 19, 2024, as United States' Trial Exhibit 6, Jan. 19 Tr. at 266:24-267:1 (Court)(admitting United States' Trial Exhibit 6 into evidence).

211 F.3d 437, 441 (7th Cir. 2000))).[7]   Although this massage-related inferential evidence is insufficient, on its own, to support Counts 2 and 3 of the Superseding Indictment, see United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995), the Court concludes that the reasonable inferences that can be drawn from this statement, in conjunction with Doe's testimony regarding the abuse, provides sufficient evidence to supports convictions on Counts 2 and 3 of the Superseding Indictment.  See United States v. Smith, 133 F.3d 737, 742 (10th Cir. 1997)(stating that sufficiency review is "based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom").  Accordingly, the Court denies the Acquittal Motion.

   **IT IS ORDERED** that: (i) the Defendant's Motion for Directed Verdict of Acquittal, filed January 23, 2024 (Doc. 198), is denied; and (ii) the Defendant Kyle Aguilar's Motion for Acquittal, filed February 16, 2024 (Doc. 210), is denied.

_____
UNITED STATES DISTRICT JUDGE

---

   [7]United States v. McBride is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. [. . .] However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that United States v. McBride has persuasive value with respect to a material issue in this case, and will assist the Court in its preparation of this Memorandum Opinion and Order.

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Nicholas James Marshall
Mia Ulibarri-Rubin
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Nicholas Thomas Hart
Carter B. Harrison, IV
Harrison & Hart LLC
Albuquerque, New Mexico

       *Attorneys for the Defendant*