# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                No. CR 21-0670 JB

KYLE AGUILAR,

   Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the United States' Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 404(b) and 414, filed December 18, 2023 (Doc. 146)("Notice"). The Court held a hearing on January 11, 2024. <u>See</u> Clerk's Minutes at 1, filed January 11, 2024 (Doc. 174). The primary issues are: (i) whether Plaintiff United States of America may introduce evidence of Defendant Kyle Aguilar's alcohol use to show that he sexually abuses Jane Doe -- the alleged victim -- when he drinks alcohol; (ii) whether the United States may introduce evidence of Aguilar's prior bad acts, namely, an uncharged incident where Aguilar -- who was serving as a  Tribal official -- entered a bathroom and opened the shower curtain while a woman, who was in his custody, was showering; and (iii) whether the United States may introduce testimony from Doe regarding an uncharged incident where Aguilar attempted to sexually abuse Doe. The Court concludes: (i) related to Aguilar's alcohol use, (a) evidence of Aguilar's intoxication during the charged crimes is admissible, because his intoxication during those times is not prohibited by rule 404(b)(1)'s prohibitions and is "intrinsic" or res gestae evidence, but (b) Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on pre-trial supervision can be introduced only if Aguilar denies using alcohol; (ii) the United States cannot introduce evidence of Aguilar's alleged prior

abuse of power and sexual misconduct while serving as a Tribal official, because that uncharged misconduct evidence is propensity evidence which is not offered for a proper purpose under rule 404(b)(2); and (iii) Doe's testimony regarding an uncharged incident where Aguilar attempted to sexually abuse Jane Doe can be admitted into evidence consistent with rules 413 and 414.

## **FACTUAL BACKGROUND**

The Court takes its facts -- solely for background purposes of this opinion -- primarily from the Notice and the Superseding Indictment, filed October 4, 2023 (Doc. 126)("Superseding Indictment"). Because these facts largely come from the Notice, the Court acknowledges that this Factual Background reflects the United States' summarizations of the relevant events. In this section, the Court describes this case's general nature, before focusing on the conduct relevant to this Motion -- Aguilar's alleged conduct. The underlying case in this matter involves allegations that Aguilar engaged in sexual contact with a child ("Jane Doe") who had attained the age of twelve years, but had not achieved the age of sixteen years, contrary to 18 U.S.C. §§ 1153, 2244(a)(5), 2244(a)(3), 2246(3). See Superseding Indictment at 1-2.

Relevant to this Motion, Aguilar previously engaged in conduct that the United States seeks to admit into evidence. Generally, the United States seeks to introduce: (i) evidence of Aguilar's alcohol use, see Notice at 5, (ii) an incident of Aguilar's alleged abuse of power and sexual misconduct while serving as a Tribal official, see Notice at 7, and (iii) an uncharged incident where Aguilar attempted to physically contact Jane Doe sexually, see Notice at 8.

As to the first issue, Aguilar has used alcohol numerous times relevant to this case. See Notice at 5-6. Aguilar was intoxicated when he allegedly committed the charged crimes. See Notice at 5. The Notice recounts the incident: "The allegations include that Defendant was intoxicated when the abuse occurred. Defendant made assertions to [Bureau of Indian Affairs ("BIA")] Agent Frank Chavez that he did consume alcohol on a regular basis, and would drink

until he felt the effects, frequently with his girlfriend.  Witnesses will state Defendant appeared to

be intoxicated." Notice at 5.   Other instances of Aguilar's alcohol use involve records of

intoxication-related charges.   See Notice at 5.   These instances occurred before and after the

allegations in the Superseding Indictment.  See Notice at 7.   Aguilar's history of intoxication, as

the Notice recounts them, are:

1.   Driving While Intoxicated, arrested on 10/06/09, convicted on 2/24/12, in Bernalillo County Metropolitan Court T-4-DW-2009-05254

2.   Aggravated Driving While Intoxicated, Resisting Arrest, Violation of Tribal Ordinance, and Terroristic Threats, arrested on 12/31/17, convicted on 2/28/18 in San Felipe Tribal Court, CR 18-006

3.   Intoxication and Assault, arrested 4/3/18, convicted on 6/15/18 in San Felipe Tribal Courts CR 18-052

4.   Possession of Drug Paraphernalia, arrested on 7/12/19, convicted on 9/30/19 in Sandoval County Magistrate Court M-46-MR-2019-0255

5.   Intoxication, Liquor Violation, Possession of Drug Paraphernalia, arrested on 4/27/19, dismissed on 5/6/19, in San Felipe Tribal Court CR 19-075

Notice at 5-6.

The final instances of Aguilar's alcohol use occurred during his pre-trial period.  See Notice

at 6.  Aguilar's use of alcohol during the pre-trial period, as the Notice recounts them, are:

1.   On February 28, 2022, Defendant tested positive for alcohol.  (Doc. 34). Defendant initially denied the use of alcohol, then claimed he drank at Tomasita's restaurant.   However, his GPS showed he did not go to Tomasita's and Defendant then changed his account, stating instead that he drank in the morning.

2.   On March 18, 2022, pre-trial services received another report indicating a positive alcohol result on March 7.  Defendant admitted to drinking alcohol. Pre-trial amended his curfew and recommended that Defendant be placed on an alcohol-monitoring device, which was installed on March 28, 2022. (Doc. 35).

3.   Defendant violated his conditions of release with multiple curfew violations and tested positive for cannabinoids on July 7, and Defendant admitted to

eating THC gummies.   (Doc. 45).   The Court modified Defendant's conditions to home detention.  (Doc. 46).

4.        Defendant, who had the alcohol monitoring device removed as of July 18, 2022, tested positive for alcohol on October 2.  Defendant also had diluted results on October 12 and 18. (Doc. 57).  Defendant denied alcohol use, but a test confirmed the presence of alcohol in his blood.  Id. This report was filed on November 10, 2022.   Pre-trial services added a zero-tolerance policy.

Notice at 6 (citations to CM/ECF documents in Notice).

Next, the incident of Aguilar's alleged abuse of power and sexual misconduct while serving as a tribal official occurred on January 18, 2021.  See Notice at 7.  As the motion recounts the incident:

Defendant abused his power and committed sexual misconduct when working as a tribal official/police officer.  (Exhibit 1).  On January 18, 2021, Defendant responded to a call regarding two intoxicated females.  Defendant and other individuals took these women to detox.  However, hours later, after Defendant was not around, one of the women submitted a complaint out of concern that she did not feel safe around Defendant.  When Defendant and another individual sought to take her to the detox location, Defendant pounded on the bathroom door and yelled commands at her while the female showered.  Defendant then barged into the bathroom and opened the shower curtain while she still was naked in the shower.  Defendant then threw clothes and a towel at her.  Defendant clearly abused his power and committed sexual misconduct.

Notice at 7.

Finally, the United States seeks to introduce into evidence an uncharged incident where Aguilar attempted to sexually contact Jane Doe.  See Notice at 11.  The uncharged incident's facts, as the Notice recounts them, are: "Jane Doe discusses an uncharged incident where Defendant attempted to touch her by trying to pull off her shirt and going under the covers to try and touch her.  She prevented him from doing so."  Notice at 11.

## PROCEDURAL BACKGROUND

The United States filed the Notice on December 18, 2023.  See Notice at 1.  The Notice states that the United States intends to introduce evidence of Aguilar's past alcohol abuse if it

becomes relevant, Aguilar's history of abusing power, and an uncharged incident where Aguilar attempted sexual contact of Jane Doe.  <u>See</u> Notice at 1.  On January 8, 2024, Aguilar filed his Response in Opposition to Notice of Intent to Introduce Evidence Pursuant to Rules of Evidence 404(b) and 414, filed January 8, 2024 (Doc. 169)("Response").  The Court held a hearing on January 11, 2024.  <u>See</u> Clerk's Minutes at 1, filed January 11, 2024 (Doc. 174).  The Court discusses each category of proffered evidence in turn.

      **1.**    **<u>The Notice</u>.**

      In the Notice, the United States sets forth several incidents that it argues should be admitted pursuant to rule 404(b) of the Federal Rules of Evidence.  <u>See</u> Notice at 5-8.  First, the United States provides notice to the Court of its intent to introduce various instances of Aguilar's alcohol use.  <u>See</u> Notice at 5-6.  Second, the United States asserts that, while serving as a tribal official, Aguilar abused his power to commit sexual misconduct.  <u>See</u> Notice at 7.  Finally, the United States asserts that, during an uncharged incident, Aguilar attempted to sexually contact Jane Doe. <u>See</u>  Notice at 8.

      **a.**    **The United States' Intent to Introduce Evidence of Aguilar's Alcohol <u>Use</u>.**

      The United States provides notice to the Court of its intent to introduce the following instances of Aguilar's alcohol use: (i) Aguilar's intoxication while allegedly committing the charged crimes; (ii) Aguilar's alcohol-related convictions and other intoxication-related charges; and (iii) instances of Aguilar's alcohol use from his pre-trial supervision.  <u>See</u> Notice at 5-6.  For the first instance, Aguilar's intoxication while committing the charged crimes, the United States contends that this evidence is admissible, because it is part of the res gestae for the charged crimes. <u>See</u> Notice at 5 (citing <u>United States v. Ford</u>, 613 F.3d 1263 (10th Cir. 2010); <u>United States v. Kimball</u>, 73 F.3d 269, 272 (10th Cir. 1995)).  To support its contention, the United States notes

that the allegations of the charged crime indicate that Aguilar was intoxicated when the alleged abuse occurred and that witnesses will testify that Aguilar appeared intoxicated at the time of the crime.  See Notice at 5.  To support further its contention, the United States notes that Aguilar made assertions to Frank Chavez, a Bureau of Indian Affairs Special Agent, that he regularly consumed alcohol and would "drink until he felt the effects" of the alcohol.  Notice at 5. Alternatively, the United States proposes that the evidence is admissible under rule 404(b), because it would help explain Aguilar's plan, preparation, lack of accident, and intent to commit the charged crimes.  See Notice at 5.

For Aguilar's alcohol-related convictions and other intoxication-related charges and for the instances of Aguilar's alcohol use from his pre-trial supervision, the United States contends that this evidence would be introduced only if Aguilar were to deny using alcohol.  See Notice at 5-6. The United States finds support for its contention under the "specific contradiction doctrine" and under rule 404(b).  Notice at 7.  Again, the United States intends to use the alcohol-related convictions only should Aguilar deny his alcohol use.  See Notice at 7.

> **b.    The United States' Intent to Introduce Evidence of an Instance Where Aguilar Abused His Power to Commit Sexual Misconduct While Serving as a Tribal Official.**

The United States provides notice to the Court of its intent to introduce evidence where Aguilar, while serving as a Tribal official, abused his power to commit sexual misconduct.  See Notice at 7.  The United States asserts that this evidence should be admitted because it is related to Aguilar's abuse of power, and abuse of power is relevant for the case.  See Notice at 6-7 (citing United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)).  Specifically, the United States contends that Aguilar used his power when he accessed the woman in the shower and when he gained access to Jane Doe.  See Notice at 8.

      **c.**      **The United States' Intent to Introduce Evidence of an Uncharged Incident, Where Aguilar Attempted to Sexually Contact Jane Doe.**

Last, the United States provides notice to the Court of its intent to introduce evidence where Aguilar attempted sexually to abuse Jane Doe.  <u>See</u> Notice at 8.  The United States asserts that this evidence is admissible under rule 414 because Aguilar is charged with crimes of sexual assault. <u>See</u> Notice at 11. The United States contends that the testimony about the uncharged incident is being used only as evidence of Aguilar's commission of the charged crimes.  <u>See</u> Notice at 11.

    **2.**      **Aguilar's Response in Opposition to Notice of Intent to Introduce Evidence Pursuant to Rule 404(b) and Rule 414.**

Aguilar's Response in Opposition to the Notice was filed January 8, 2024.  <u>See</u> Response at 1.  In Aguilar's Response, he contends that the evidence sought to be introduced by the United States is inadmissible.  <u>See</u> Response at 1.

      **a.**      **Aguilar's Response in Opposition to the United States' Intent to Introduce Evidence of Aguilar's Alcohol Use.**

Regarding the United States' intent to introduce evidence of Aguilar's alcohol use when he allegedly committed the charged crime, Aguilar argues that evidence of his alcohol use is not res gestae of the charged conduct.  <u>See</u> Response at 3.  Aguilar contends that res gestae evidence "is essential to the context of the crime."  Response at 2-3 (quoting <u>United States v. Murry</u>, 31 F.4th 1274, 1290-91 (10th Cir. 2022)).  Aguilar contends that, because Jane Doe alleges that Aguilar was intoxicated during only one of the alleged incidents, his generalized statements related to intoxication are not integral to the charged conduct.  <u>See</u> Response at 3.  Hence, Aguilar concludes that this evidence is not res gestae and is, therefore, inadmissible.  <u>See</u> Response at 3.

Regarding the United States' intent to introduce evidence of Aguilar's alcohol-related convictions if he were to deny alcohol use, Aguilar asserts that the specific contradiction doctrine is not unlimited.  <u>See</u> Response at 3.  Aguilar argues that none of the instances of alcohol use, the

DWI conviction, or pretrial services violations would contradict directly a denial of Jane Doe's allegations.  See Response at 3-4.  Hence, Aguilar contends that the United States should not be able to introduce the alcohol-related convictions if he were to deny Jane Doe's allegations.  See Response at 4.  In response to the United States' contention that it can introduce evidence of Aguilar's alcohol-related convictions under rule 404(b) if he denies alcohol use, Aguilar argues that the United States' contention is insufficient, because the Unites States fails to identify the proper rule 404(b) purpose on which it relies.  See Response at 4.

Aguilar further argues that the alcohol-related convictions are inadmissible, because they are irrelevant, they do not have a sufficient purpose under rule 404(b), and the risk of unfair prejudice outweighs the evidence's probative value.  See Response at 4.  First, Aguilar asserts that his alcohol use is irrelevant, because whether he was intoxicated at the time of the alleged conduct has no connection to Jane Doe's allegation.  See Response at 4.  Aguilar argues that the United States has "transformed" his generalized statements of alcohol use into the reason for the alleged sexual abuse.  See Response at 4.  In short, Aguilar concludes that the United States' attack on his character has no connection to the case's facts, and, hence, is irrelevant.  See Response at 5.  Next, Aguilar argues that evidence of his alcohol use is improper character evidence, because the evidence does not have a proper purpose under rule 404(b), such as intent, knowledge, motive opportunity, lack of mistake, plan, or identity.  See Response at 6.  Aguilar, therefore, asserts that evidence of his alcohol use is inadmissible under rule 404(b).  See Response at 6.

Finally, Aguilar contends that, even if the evidence of his alcohol use satisfies rule 404(b), the Court must balance the evidence's probative value and prejudicial effects under rule 403.  Response at 6 (citing United State v. Hogue, 827 F.2d 660, 662-63 (10th Cir. 1987)).  Aguilar argues that the risk of unfair prejudice outweighs the probative value of his alcohol use, because

the evidence likely would inflame the jury, and because the evidence would lead to mini trials that would distract the jury.  Response at 7-8.

>            **b.**      **Aguilar's Response in Opposition to the United States' Intent to Introduce Evidence of Aguilar's Abuse of Power.**

Regarding the United States' intent to introduce evidence where Aguilar, while serving as a Tribal official, abused his power to commit sexual misconduct, Aguilar argues that the incident is inadmissible under rule 413 nor rule 404(b).  First, Aguilar contends that the incident where he allegedly abused his power to commit sexual misconduct is inadmissible, because it does not fit within the definitions of sexual misconduct under rule 413.  See Response at 11.  Aguilar contends that the alleged incident does not fit within the definition of misconduct, because: (i) there is no federal statute that prohibits an officer from telling an individual in their custody that they need to finish showering; (ii) the alleged misconduct does not include any allegations of touching; (iii) the alleged misconduct did not inflict death or bodily injury; and (iv) the allegations do not allege that Aguilar conspired or attempted to commit the alleged misconduct.  See Response at 10-11 (citing Fed. R. Evid. 413(d)(1)-(5)).

Second, Aguilar argues that the alleged incident is inadmissible under rule 404(b), because the alleged sexual misconduct is too dissimilar to be evidence for the charged conduct related to Jane Doe.  See Response at 11.  Overall, Aguilar contends that the incident is too dissimilar, because: (i) the alleged sexual misconduct occurred approximately four years after the charged conduct; (ii) the alleged misconduct involves an adult, but the charged conduct involves a child; (iii) the alleged sexual misconduct involves Aguilar telling someone to finish showering, but the charged conduct alleges child sexual abuse; and (iv) the alleged sexual misconduct is not sexual misconduct.  See Response at 12.

      c.        **Aguilar's Response in Opposition to the United States' Intent to Introduce Evidence of Aguilar's Attempted Sexual Misconduct.**

In response to the United States' intent to introduce testimony from Jane Doe regarding an uncharged incident where Aguilar attempted to sexually abuse Jane Doe, Aguilar argues that the testimony is inadmissible under rule 403.  Response at 9 (citing United Staes v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998)).  Aguilar contends that admitting the evidence would lead to unfair prejudice, because it is unclear that the alleged attempted sexual abuse can be proved.  Aguilar contends that Jane Doe's testimony would only distract the jury from the central issue whether Aguilar is guilty of the charged conduct.  See Response at 10.

**3.**      **The Hearing.**

The Court held a hearing on January 11, 2024.  See Clerk's Minutes at 1, filed January 11, 2024 (Doc. 174).  The hearing covered multiple motions that both parties submitted before the Court turned to the Notice.  See Draft Transcript of Hearing at 30:9-10 (taken January 11, 2024)(Court)("Jan. 11 Tr.").[1]  The Court began addressing the motion by providing both parties with the Court's initial thoughts on the various pieces of evidence sought to be admitted.  See Jan. 11 Tr. at 30:11-12 (Court).  Regarding evidence of Aguilar's alcohol use during the charged conduct, the Court provided that Aguilar's intoxication during the charged conduct is res gestae, and, therefore, the United Staes can provide proof of Aguilar's overall use of alcohol.  See Jan. 11 Tr. at 30:11-18 (Court).  The Court stated, however, that evidence of Aguilar's alcohol-related convictions is inadmissible unless Aguilar contests his alcohol use.  See Jan. 11 Tr. at 30:19-31:16 (Court).  In response to the Court's initial thoughts, the United States agreed with the Court and

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcripts may contain slightly different page and/or line numbers.

stated that it "had not intended to try to bring those convictions in in our case-in-chief. That would only be an issue, I think, if defense tries to raise an issue that he does not use alcohol in some capacity." Jan. 11 Tr. at 32:11-15 (Marshall). Aguilar responded by expressing his concern that the evidence of alcohol-related convictions could become cumulative. See Jan. 11 Tr. at 33:13-23 (Hart). The Court agreed with Aguilar that the convictions could become cumulative, but the Court stated that it thought that if "we're keeping out the convictions, and unless he takes the stand and says something different, I think by and large we know the ground rules on that." Jan. 11 Tr. at 34:9-13 (Court).

Next, the Court addressed the issue regarding Aguilar's alleged abuse of power while serving as a Tribal officer. See Jan. 11 Tr. at 35:2-3. The Court began by stating that it is "inclined to keep it out. It just seemed to me it was a bad act, sort of a boorish, ungentleman[ly] type act," but that "it didn't really tell us much [about] what he would do, if he's intoxicated, with a six-year-old girl." Jan. 11 Tr. at 35:3-7 (Court). The United States responded by stating that Aguilar was acting in a quasi-Tribal official and that "it goes to the abuse of power." Jan. 11 Tr. at 35:16-21 (Marshall). The United States then argued:

> Aguilar went in and took it upon himself to go into the bathroom where the woman was showering. And she was naked. And the allegations are that he and the other person kind of like were leering and staring at her, yelling at her, and eventually, like, threw her a towel and clothes and told her to get dressed.

Jan. 11 Tr. at 38:16-22 (Marshall). The Court then queried the United States about "how long was the leering?" Jan. 11 Tr. at 39:3 (Court). The United States responded to the Court by stating that "[i]t's an undetermined period of time. The woman felt it was enough that she filed a complaint." Jan. 11 Tr. at 39:5-7 (Marshall).

The Court then asked Aguilar for his response, and Aguilar responded by stating:

> So I agree, [y]our Honor, that this is -- with you -- that this is outside of both 404(b) and 414. One, I think there really should be no question, as the 414 is not an act of sexual assault as defined by 414, which leads us to 404(b). I think there is not enough similarity or connectiveness or even closeness in time to be able to give any probative value to any of the permissible purposes that we would have under 404(b).

Jan. 11 Tr. at 39:16-25 (Hart). Additionally, Aguilar asserted that the United States did not mention leering in its brief. See Jan. 11 Tr. at 40:8-13 (Hart). The United States clarified by stating that Aguilar invaded the woman's privacy. See Jan. 11 Tr. at 40:20-22 (Marshall). Aguilar continued by asserting that the shower incident was not an invasion of privacy, because he was "acting in his capacity as a tribal official." Jan. 11 Tr. at 41:3-5 (Hart). Following these presentations, the Court stated: "I don't think the incidents are very similar. And so I'm afraid the jury is not going to use it for any proper 404(b) purposes." Jan. 11 Tr. at 42:12-15 (Court). The Court therefore stated: "I'm going to deny the motion of the Government to introduce anything related to the incident about taking the women to the detox facility." Jan. 11 Tr. at 42:22-25 (Court).

Finally, the Court addressed the issue regarding Jane Doe's testimony of Aguilar attempting to sexually abuse her. See Jan. 11 Tr. at 44:1-7 (Marshall). The Court began by stating: "I think that comes in, don't you, Mr. Hart?" Jan. 11 Tr. at 44:8-9 (Court). Aguilar responded to the Court's inquiry by stating: "[Jane Doe's testimony] meets prima facie case of 413. But once we get into the 403 balancing test is where I raise my issue issues with it." Jan. 11 Tr. at 44:19-22 (Hart). Following Aguilar's rule 403 objection, the Court stated that the parties "can make that clear, [Jane Doe's testimony is] not charged conduct, this is a separate conduct, and it's only being used for evidence." Jan. 11 Tr. at 44:23-45:1 (Court). The Court therefore stated that Aguilar's rule 403 objections are overruled, and it will allow Jane Doe's testimony of Aguilar's attempt to sexually abuse her to be admitted. Jan. 11 Tr. at 45:3-4 (Court).

**LAW REGARDING RULE 401 OF THE FEDERAL RULES OF EVIDENCE**

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")). "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

**LAW REGARDING RULE 403 OF THE FEDERAL RULES OF EVIDENCE**

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir.

1991))(emphasis in <u>United States v. Pettigrew</u> and <u>United States v. Sides</u>).  "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  <u>Deters v. Equifax Credit Info. Servs., Inc.</u>, 202 F.3d 1262, 1274 (10th Cir. 2000).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  <u>United States v. Smalls</u>, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, <u>see</u> <u>United States v. Lugo</u>, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, <u>see</u> <u>United States v. Bice-Bey</u>, 701 F.2d 1086, 1089 (4th Cir. 1983); <u>United States v. Masters</u>, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

<u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 379, 384 (2008)(citing 1 S. Childress & M. Davis, <u>Federal Standards of Review</u> § 4.02, at 4-16 (3d ed. 1999)).  <u>See</u> <u>United States v. Abel</u>, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  <u>See</u> <u>United States v. Rodriguez</u>, 192 F.3d 946, 951 (10th Cir. 1999).  "Evidence is

not unfairly prejudicial merely because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).  See United States v. Valencia-Montoya, No. CR 11-2990, 2012 WL 8251407, at *11 (D.N.M. September 17, 2012)(Browning, J.)(applying rule 403).

## LAW REGARDING RULE 404(b) OF THE FEDERAL RULES OF EVIDENCE

Under rule 404(b) of the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  The reason for this rule is not that evidence of other crimes is not relevant or probative, but that it is too probative; it violates the Anglo-American principle that a defendant should be tried only for the crime with which he is charged.  See, e.g., People v. Zackowitz, 254 N.Y. 192, 172 N.E. 466, 468 (1930) (Cardozo, J.).  The Court can admit that sort of evidence, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. CIV 10-0797, 2011 WL 6739166, at *5 (D.N.M. November 1, 2011)(Browning, J.).

The Supreme Court has enunciated a four-part test to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The Tenth Circuit has consistently applied that test:

To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)("Zamora")(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. at 691-92).

When bad-act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Youts, 229 F.3d at 1317. Rules 401-403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the government must meet to successfully offer evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-91.

The Advisory Committee added notes to rule 404(b) when the Advisory Committee amended the rule in 2020:

**2020 Amendments**

Rule 404(b) has been amended principally to impose additional notice requirements on the prosecution in a criminal case. In addition, clarifications have been made to the text and headings.

The notice provision has been changed in a number of respects:

> The prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose. The earlier requirement that the prosecution provide notice of only the "general nature" of the evidence was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose.  This amendment makes clear what notice is required.

> The pretrial notice must be in writing -- which requirement is satisfied by notice in electronic form.  See Rule 101(b)(6).  Requiring the notice to be in writing provides certainty and reduces arguments about whether notice was actually provided.

> Notice must be provided before trial in such time as to allow the defendant a fair opportunity to meet the evidence . . . .

Fed. R. Evid. 404(b) Advisory Committee Notes 2020 Amendments.  See United States v. Ferguson, No. CR 19-3121, 2020 WL 5849683, at *1 (D. Neb. October 1, 2020)(Gerrad, J.)("The government must also articulate the permitted purpose for the evidence and the reasoning supporting the purpose, and do so in writing before trial.").

### LAW REGARDING RULE 414 OF THE FEDERAL RULES OF EVIDENCE

Rule 414(a) of the Federal Rules of Evidence provides: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."  Before a court may admit evidence under rule 414, however, it must conduct a three-part analysis and then perform a balancing test pursuant to rule 403.  See United States v. McHorse, 179 F.3d 889, 897-98 (10th Cir. 1999).  First, the court must find that the defendant "is accused of an offense of child molestation."  United States v. McHorse,

179 F.3d 889, 898 (10th Cir.1999)(quoting Fed. R. Evid. 414(a)).  Rule 414 provides that "an offense of child molestation" includes those offenses found in Chapter 109A of Title 18.  Next, the court must find "that the proffered evidence is 'evidence of the defendant's commission of another offense or offenses of child molestation.'"  United States v. McHorse, 179 F.3d at 898 (quoting Fed. R. Evid. 414(a)).  Finally, the court must find that the evidence sought to be introduced is relevant.  See United States v. McHorse, 179 F.3d at 898 (citing United States v. Guardia, 135 F.3d 1326, 1328, 1331 (10th Cir.1998)).  After a determination that the prior acts meet the requirements of rule 414, a balancing test under rule 403 is necessary.  United States v. McHorse, 179 F.3d at 898 (citing United States v. Meacham, 115 F.3d 1488, 1495 (10th Cir. 1997)).

Society places a heavy stigma upon those accused of sex crimes, and the Court must, therefore, "take into account the chance that 'a jury will convict for crimes other than those charged -- or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'" United States v. Castillo, 140 F.3d 874, 882 (10th Cir. 1998)(quoting Old Chief v. United States, 519 U.S. 172, 181 (1997)).  A court thus has a special duty to ensure that the evidence is probative and to weigh the evidence's probative value against its prejudicial effect to the defendant: "[A] court must perform the same 403 analysis that it does in any other context, but with careful attention to both the significant probative value and the strong prejudicial qualities inherent in all evidence submitted under [rule 414]." United States v. Guardia, 135 F.3d at 1330 (analyzing rule 413).  Even though courts are to apply the rule 403 balancing test, courts are to "liberally" admit evidence of prior offenses under rule 414.  See United States v. Meacham, 115 F.3d at 1492 ("Rule 403 balancing is still applicable, but clearly under Rule 414 the courts are to 'liberally' admit evidence of prior uncharged sex offenses." (citing Fed. R. Evid. 414)).

The Tenth Circuit has recognized that the court must consider the following when performing a rule 403 balancing in the rule 414 context: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence."  United States v. McHorse, 179 F.3d at 898 (quoting United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998)).  "No single factor is dispositive."  United States v. Velarde, 88 F. App'x 339, 343, 2004 WL 304342, at *3 (10th Cir. 2004)(citing United States v. Mann, 193 F.3d 1172, 1174-75 (10th Cir. 1999)).  The first factor requires the district court to "make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the prior similar sexual act occurred."  United States v. Mann, 193 F.3d at 1174 (citation omitted)(internal quotations omitted).  See United States v. McHorse, 179 F.3d at 899 (finding that court properly concluded that the government had established the defendant's prior acts with evidence sufficient to support a finding by a preponderance that the defendant had in fact committed those acts)(citing United States v. Enjady, 134 F.3d at 1433).  When analyzing the probative dangers, a court needs to consider: "1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct."  United States v. McHorse, 179 F.3d at 898 (citation omitted).  Finally, when admitting evidence under rule 414, the court must "make a reasoned, recorded" statement of its rule 403 decision.  See United States v. Castillo, 140 F.3d at 884.  "[T]hat the uncharged conduct was aimed at the same victim as the charged conduct does not significantly impact the 414 or relevance analyses."  United States v. Wilson, 83 Fed. R. Evid. Serv. 49, at *6 (D.N.M. 2010)(Browning, J.)(citing United States v. Tail, 459 F.3d 854, 858 (8th Cir.2006)("The [prior] conviction was probative because it involved

the same victim and an act that occurred close in time and under circumstances similar to the crime

charged in this case."); United States v. Castillo, 188 F.3d 519, at *3 (10th Cir.

1999)(table)("Evidence that the charged offense was part of a broader pattern of molestation may

be important to put the charge in perspective[, and thus] the uncharged acts were probative of

establishing Defendant's specific inclination or disposition to engage in acts of sexual abuse

against his daughters.")(internal alterations, quotations, and citations omitted); United States v.

Fred, No. CR 05-801 JB, 2006 WL 4079618, at *5-6 (D.N.M. December 1, 2006)(Browning, J.)).

## LAW REGARDING RES GESTAE AND "INTRINSIC" EVIDENCE

The Tenth Circuit has explained that, in the context of other acts evidence,[2] "[e]vidence of

other crimes should not be suppressed when those facts come in as *res gestae* -- 'as part and parcel

---

[2]The term res gestae has other distinct but related meanings when used in other contexts. For example, in the hearsay context, "res gestae" is sometimes used as a synonym for the "Excited Utterance" hearsay exception in Federal Rule of Evidence 803(2). United States v. Ledford, 443 F.3d 702, 710 (10th Cir. 2005)("We conclude that the more appropriate exception is *res gestae,* or the 'excited utterance' exception.")(italics in original)(source of quoted material not cited). See Res Gestae, Black's Law Dictionary (11th ed. 2019)("In evidence law, words and statements about the res gestae are usu. admissible under a hearsay exception (such as present sense impression or excited utterance)."). Commentators and jurists have long lamented the ambiguity and slipperiness of the term: many decades ago, Dean Wigmore stated:

> The phrase 'res gestae' has long been not only entirely useless, but even positively harmful. It is useless because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in terms of that principle. It is harmful, because by its ambiguity it invited the confusion of one rule with another and thus creates uncertainty as to the limitations of both.

6 Wigmore on Evidence § 1767, at 182 (3d ed. 1940). The Honorable Learned Hand, United States Circuit Judge for the United States Court of Appeals for the Second Circuit, once wrote -- rather saucily -- that "as for 'res gestae,' it is a phrase which has been accountable for so much confusion that it had best be denied any place whatever in legal terminology; if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms." United States v. Matot, 146 F.2d 197, 198 (2d Cir. 1944)(source of quoted material not cited). These criticisms, moreover, are not a uniquely historical relic: as the Court discusses below, the more common contemporary version of the res gestae doctrine -- something more akin to the "part and parcel" or

of the proof of the offense[] charged in the indictment.'" United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(quoting United States v. Gano, 560 F.2d 990, 994 (10th Cir. 1977))(alteration and emphasis in United States v. Kimball, but not in United States v. Gano). The Tenth Circuit, quoting case law from the United States Court of Appeals for the Fourth Circuit, has further explained that res gestae evidence -- Latin for "things done" -- is evidence that "provides the context for the crime, 'is necessary to a full presentation of the case,' or is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'" United States v. Kimball, 73 F.3d at 272 (quoting United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)). Although res gestae evidence is often evidence related to a person's uncharged crimes, wrongs, or other acts -- and therefore otherwise would be subject to rule 404(b)'s restrictions -- res gestae evidence is not subject to rule 404(b), see United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011), but it remains subject to Rule 403 balancing and "will be inadmissible . . . if it has no proper probative value," United States v. Piette, 45 F.4th 1142, 1155 (10th Cir. 2022)(quoting United States v. Irving, 665 F.3d at 1215 (Hartz, J., concurring)).

In the Tenth Circuit, in the context of other acts evidence, the concept of "res gestae" is associated closely with "intrinsic" evidence: "Intrinsic other acts evidence encompasses conduct 'inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.' . . . This is known as res gestae . . . ." United States v. Piette, 45 F.4th at 1155 (quoting United States v. Ford, 613 F.3d at 1267). See United States v. Ford, 613 F.3d at 1267 ("An uncharged act is admissible as res gestae -- intrinsic evidence not subject to Federal Rule of Evidence 404(b) -- if 'it was inextricably intertwined with

---

"inextricably intertwined" concept of res gestae that the Tenth Circuit applies -- has also been subject to significant criticism by commentators and courts. See footnote 4, infra, at 24.

the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.'" (quoting United States v. Johnson, 42 F.3d 1312, 1316 (10th Cir. 1994))(italics in United States v. Ford)).[3]   See 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:33 (4th ed. 2023 update)(calling "inextricably intertwined" the "modern de-Latinized expression" of res gestae).   Tenth Circuit case law provides various formulations of what is considered "intrinsic" evidence, all of which are -- in the Court's view -- slight variations on the "inextricably intertwined" concept.   In United States v. Kupfer, 797 F.3d 1233 (10th Cir. 2015)(Bacharach, J.), the Tenth Circuit provides a bullet-point list of six categories of "intrinsic" evidence:

> We regard evidence as intrinsic when it
>
> • was "inextricably intertwined" with the charged conduct, [United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993) (quoting United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990)),]

---

[3]One prominent evidence scholar, however, has argued that "inextricably intertwined" and "intrinsic" are distinct concepts:

> The courts sometimes mention the "intrinsic" and "inextricably intertwined" theories in the same breath, but in principle, the two theories are distinguishable.  The former theory is that the testimony is part and parcel of the charged offense; thus, the wording of the allegation in the pleadings is expansive enough to encompass the conduct.  In contrast, when the thrust of the prosecution's argument is that the testimony about the uncharged misconduct is "inextricably intertwined" with the charged offense, it is implicit that there are two separate offenses.  Nevertheless, the prosecution argues that testimony about the two offenses is so closely related that the court should admit the evidence of the technically uncharged crime.  At the most fundamental level, the inextricably intertwined doctrine must be differentiated from the contention that the proffered testimony is intrinsic to -- and thus describes part of -- the charged crime.

Edward J. Imwinkelried, The Second Coming of Res Gestae: A Procedural Approach to Untangling the "Inextricably Intertwined" Theory for Admitting Evidence of an Accused's Uncharged Misconduct, 59 Cath. U. L. Rev. 719, 725 (2010)(footnotes omitted).

- occurred within the same time frame as the activity in the conspiracy being charged, [see United States v. Parker, 553 F.3d 1309, 1315 (10th Cir. 2009)("The three transactions within the charged conspiracy time-frame are intrinsic to the crime and substantiate the criminal conspiracy.")],

- was a necessary preliminary to the charged conspiracy, [United States v. Lambert, 995 F.2d at 1007],

- provided direct proof of the defendant's involvement with the charged crimes, [United States v. Parker, 553 F.3d at 1314-15],

- was "entirely germane background information, . . . 'directly connected to the factual circumstances of the crime,'" [United States v. Irving, 665 F.3d 1184, 1212-13 (10th Cir. 2011)(quoting United States v. Parker, 553 F.3d at 1314),] or

- was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice[, United States v. Hall, 508 F. App'x 776, 779-80 (10th Cir.2013)(unpublished)].

United States v. Kupfer, 797 F.3d at 1238 (bracketed material added, and footnote citations omitted).  The Court understands these cases to instruct that, in determining whether a particular act is res gestae/intrinsic, the district court must assess whether that evidence fits into one of the recognized categories that the Tenth Circuit provides, and if it does fit into one of these categories, that evidence is "intrinsic" and is not subject to rule 404(b)'s prohibitions.  See 2 Steven A. Saltzburg, Michael M. Martin, Daniel J. Capra & Jessica Berch, Federal Rules of Evidence Manual § 404.02[12] (13th ed. 2023)("Saltzburg")(noting that, because "the Committee Note to the 1991 amendment to Rule 404(b) delineates between acts that are covered by Rule 404(b) because they are 'extrinsic' to the charged offense and those that are not governed by the Rule because they are 'intrinsic' to the charged offense," "there is an obvious need for line-drawing in applying Rule 404(b)," and "many federal courts simply label uncharged offenses offered against criminal

defendants as 'inextricably intertwined' with the charged offense whenever they are related in any

way to it" (source of quoted material not cited)).[4]

_____

[4]As indicated above, this understanding of res gestae as "inextricably intertwined" evidence -- untethered from a specifically hearsay-focused inquiry -- has also been subject to significant criticism. Saltzburg, for example, calls the "inextricably intertwined" test, in its various iterations, "confusing" and "complicated," and describes how the definition can lead to rulings that are "vague and conclusory." Saltzburg, supra, at § 404.02[12]. This confusion arises from a basic analytical challenge: rule 404(b)(1)'s default rule provides that evidence "of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The challenge is to identify and characterize what "other" means in this context. The committee notes to the rule provide some instruction: The Committee Note to the 1991 amendment to rule 404(b) states that 404(b)'s prohibition "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Ad. Comm. Notes to Fed. R. Evid. 404(b) (1991). Of course, this instruction is itself question-begging, because courts have been left to grapple with what "intrinsic" means. As Saltzburg notes, in determining what is "intrinsic," "many federal courts simply label uncharged offenses offered against criminal defendants as 'inextricably intertwined' with the charged offense whenever they are related in any way to it." Saltzburg, supra, at § 404.02[12] (source of quoted material not cited). This understanding, based on acts that are in any way related to the charged crime, presents a danger of abuse because it is too capacious. For example, as the Honorable Billy Roy Wilson, United States District Judge for the United States District Court for the Eastern District of Arkansas notes, the inextricably intertwined theory "appears to be close kin to the generic *res gestae* theory," and states that "[a] liberal view of the 'inextricably intertwined' exception to Rule 404(b) would essentially nullify the 404(b) restrictions on 'bad act' evidence." United States v. Ameri, 297 F. Supp. 2d 1168, 1169 (E.D. Ark. 2004)(Wilson, J.)(italics in original; source of quoted material not cited).

In Saltzburg's view, "[p]art of the problem is that courts often use different phrases to capture the concept" of what crimes, acts, or wrongs are "other" in the context of rule 404(b): aside from "inextricably intertwined," "[e]xamples include acts that are 'intrinsic' to the crime charged; acts that form part of a 'single criminal episode'; acts that are an 'integral part' of the crime; and acts that 'complete the story' or 'explain the context' of the crime." Saltzburg, supra, at § 404.02[12] (source of quoted material not cited). Saltzburg also quotes Professor Imwinkelried, stating:

> "Inextricably intertwined" is the "modern de-Latinized" version of *res gestae*, and it has been savaged by a similar critique. The standard has been described as "lack[ing] character" and "obscure," because it does not embody a clear substantive principle. . . . The vacuous nature of the test's wording gives courts license to employ sloppy analysis and allows them quickly to slip from a conclusory analysis to a desired conclusion. Simply stated, the indefinite phrasing of the doctrine is a virtual invitation for abuse.

Saltzburg, supra, at § 404.02[12] (quoting Imwinkelried, supra, at 729-30). See United States v. Green, 617 F.3d 233, 248 (3d Cir. 2010)(Smith, J.)("Like its predecessor res gestae, the inextricably intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the danger it poses to the vitality of Rule 404(b)."). The phrases used to capture the concept, in Saltzburg's view, run the risk of becoming mere "boilerplate jargon." Saltzburg, supra, at § 404.02[12]. In the Tenth Circuit, the Honorable Harris Hartz, United States Circuit Judge for the Tenth Circuit, has -- quoting Saltzburg -- voiced his own criticisms of the intrinsic/extrinsic dichotomy: "[T]he distinction between intrinsic and extrinsic evidence is unclear and confusing, and can lead to substituting conclusions for analysis." United States v. Irving, 665 F.3d at 1215 (Hartz, J., concurring). Judge Hartz, writing in concurrence, suggests that the Tenth Circuit should "abandon the use of the intrinsic/extrinsic dichotomy in analyzing whether evidence of uncharged misconduct is admissible." 665 F.3d at 1215.

In place of vague, unclear, and confusing tests, Saltzburg suggests the use of "a careful analysis" in which "Rule 404(b) should apply to all specific bad acts proffered by the prosecution, unless such acts occurred in the time period covered by the indictment and are substantively related to the charges," and to determine whether the bad acts are "substantively related to the charges," Saltzburg looks to the United States Court of Appeals for the Third Circuit's test, which

> reserve[s] the "intrinsic" label for two narrow categories of evidence. First, evidence is intrinsic if it "directly proves" the charged offense. . . . This gives effect to Rule 404(b)'s applicability only to evidence of "*other* crimes, wrongs, or acts." Fed.R.Evid. 404(b) (emphasis added). If uncharged misconduct directly proves the charged offense, it is not evidence of some "other" crime. . . . Second, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." [United States v.] *Bowie*, 232 F.3d [923,] 929 [(D.C. Cir. 2000)]. But all else must be analyzed under Rule 404(b).

United States v. Green, 617 F.3d at 248-49. The Court takes this commentary seriously, and agrees with Saltzburg, Judge Hartz, and Judge Wilson, that too liberal an understanding of "inextricably intertwined" poses a danger to the underlying policy of rule 404(b)'s prohibitions. The Court also shares Saltzburg's view that -- in many instances -- other acts that are purportedly "inextricably intertwined" with the charged crime just as easily could be admitted pursuant to a proper purpose under rule 404(b). See Saltzburg, supra, at § 404.02[12]; Imwinkelried, supra, at 726 ("In many of the cases in which the courts have invoked the [inextricably intertwined] doctrine, they could just as easily have relied on a recognized noncharacter theory, such as motive."). This reality is especially true in the Tenth Circuit, where "[o]ne proper purpose for admitting Rule 404(b) evidence is to show the context of a charged crime." United States v. Sarracino, 131 F.3d 943, 949 (10th Cir. 1997).

In any event, the Court, as a district court, is duty-bound to follow faithfully binding case law from the Tenth Circuit. The Court will continue to deploy the concept of res gestae, but with the academic and judicial criticisms firmly in mind. The Court understands that -- in the Tenth Circuit -- res gestae is a subcategory of "intrinsic evidence," and is defined by evidence that "provides the context for the crime, 'is necessary to a full presentation of the case,' . . . is 'appropriate in order to complete the story of the crime on trial by proving its immediate context

The Court has analyzed and discussed these concepts in various cases. In <u>Wilson v. Jara</u>, No. CIV 10-0797, 2011 WL 6739166 (D.N.M. November 1, 2011), the Court allowed evidence that, in the course of an allegedly unlawful arrest, a plaintiff spat on and touched the defendant police officers. <u>See</u> 2011 WL 6739166, at *8. The Court concluded that the spitting was "res gestae of the incident," because it placed the plaintiff's conduct "in context": "If Wilson's touching of a police officer, and other conduct and speech, contributed to [her son's] resisting arrest, her conduct could be viewed as disturbing the peace and disorderly conduct . . . . Wilson should not be able to suggest that everything was calm and her son did not resist arrest." 2011 WL 6739166, at *8.

In <u>United States v. Ganadonegro</u>, No. CR 09-0312, 2011 WL 3957549 (D.N.M. August 30, 2011), the Court allowed evidence that a defendant, accused of causing the death of an infant child, called a family member on three occasions to complain that he could not get the infant to stop

---

or the res gestae,'" <u>United States v. Kimball</u>, 73 F.3d at 272 (quoting <u>United States v. Masters</u>, 622 F.2d at 86), or is "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act," <u>United States v. Ford</u>, 613 F.3d at 1267. In applying this rule, however, the Court is cautious about running roughshod over the prohibitions of rule 404(b) by applying these parameters too loosely.

Going forward, when considering res gestae evidence, the Court intends to use the following procedure. For notice, the United States already does the right thing; it does not file a notice of res gestae evidence, but a notice of rule 404(b) evidence. <u>See</u> Notice at 1 ("Pursuant to Rules 404(b)(2) and 414 of the Federal Rules of Evidence, the United States hereby provides Sealed Notice of Its Intent to Introduce Evidence of other Crimes, wrongs or acts of the Defendant and Similar Crimes in Child-Molestation Cases."). The United States may argue that this evidence is res gestae, but it protects itself by filing, before the deadline, the 404(b) notice. When assessing the admissibility of the evidence, rather than the Court or the United States jumping immediately to res gestae, the Court will first ask the United States to assess whether the evidence fall under a proper rule 404(b) purpose, like "context." <u>See</u> <u>United States v. Sarracino</u>, 131 F.3d at 949; Saltzburg, <u>supra</u>, at § 404.02[12]. By taking this analytical approach, the Court will be careful to limit the admissible evidence to that which is absolutely necessary to explain the context of the crime, and avoid the possibility that improper character evidence is smuggled in via the res gestae doctrine.

crying and that the infant was crying when the family member arrived.  See 2011 WL 3957549, at *1.  The Court concluded that the evidence was res gestae and background information useful to "paint the picture that the baby cried a lot" and not that the defendant acted in conformity with his previous conduct.  2011 WL 3957549, at *5 ("[T]he evidence that the United States seeks to introduce is not 404(b) evidence . . . .   [I]t is closer to background evidence or res gestae evidence.").

## ANALYSIS

The Court grants in part and denies in part the United States' evidentiary requests in the Notice.  The Court conducts its analysis in three Sections.  First, the Court concludes that, related to Aguilar's alcohol use, (a) evidence of Aguilar's intoxication during the charged crimes is admissible, because his intoxication during those times is res gestae, and (b) Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on Pre-Trial Services can be introduced only if Aguilar denies using alcohol.  In the second section of its Analysis, the Court concludes that the United States cannot introduce Aguilar's alleged prior abuse of power and sexual misconduct while serving as a Tribal official, because, consistent with rule 404(b), that proposed evidence is propensity evidence and is not introduced pursuant to a proper purpose under the rule.  In the third and final section of its analysis, the Court concludes that Jane Doe's testimony regarding an uncharged incident where Aguilar attempted to abuse Jane Doe sexually can be admitted into evidence, because, consistent with rule 414 and case law from the Tenth Circuit: (a) Aguilar is charged with crimes of sexual assault, (b) the testimony of the uncharged incident is being used only as evidence of Aguilar's commission of the charged crimes, (c) the uncharged incident is relevant to the charged crimes, and (d) any unfair prejudice does not substantially outweigh the uncharged incident's probative value.

I.   **EVIDENCE OF AGUILAR'S INTOXICATION DURING THE CHARGED CRIMES IS ADMISSIBLE, BUT AGUILAR'S ALCOHOL-RELATED CONVICTIONS, ALCOHOL-RELATED ARRESTS, AND EVIDENCE OF AGUILAR'S ALCOHOL ADDICTION ISSUES WHILE ON PRE-TRIAL SERVICES MAY BE INTRODUCED ONLY IF AGUILAR DENIES USING ALCOHOL.**

In the Notice, the United States contends that various evidence of Aguilar's alcohol use is admissible under the Federal Rules of Evidence.  See Notice at 5-7.  The Court concludes that some of the United States' proffered alcohol-related evidence is admissible, while other alcohol-related evidence is inadmissible.  As to the admissible category, evidence of Aguilar's intoxication during the charged crimes is admissible under a non-character theory pursuant to rule 404(b)(2), and, alternatively, because it is a part of res gestae of the charged crimes.  As to the inadmissible category, Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction while on pre-trial services is inadmissible, unless he denies all alcohol use and the United States wishes to impeach Aguilar.

A.   **EVIDENCE OF AGUILAR'S INTOXICATION DURING THE CHARGED CRIMES IS ADMISSIBLE, BOTH UNDER RULE 404(b) AND AS "INTRINSIC" OR RES GESTAE EVIDENCE.**

As noted, the United States contends that evidence of Aguilar's intoxication during the alleged unlawful acts is admissible, because it is part of the res gestae for the charged crimes.  See Notice at 5 (citing United States v. Ford, 613 F.3d 1263, 1267 (10th Cir. 2010); United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)).  In the alternative, the United States contends that evidence of Aguilar's intoxication during the charged crimes is admissible under rule 404(b).  See Notice at 5.  As discussed above, see Law Regarding Res Gestae and "Intrinsic" Evidence, supra at 24 n.4, the Court will begin its analysis of these contentions with the rule 404(b) argument, before turning to an analysis whether the evidence can be admitted properly as res gestae or "intrinsic" evidence.  On these questions, the Court concludes that the evidence of Aguilar's

intoxication during the alleged unlawful acts is admissible consistent with rule 404(b), because evidence of Aguilar's intoxication during the alleged unlawful acts is not being used to show Aguilar's character or conformity therewith.  Rather, the evidence is probative of Aguilar's intent to commit the alleged crimes, and to provide the context for the alleged behavior, and the various dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" do not substantially outweigh this probative value. Fed. R. Evid. 403.  Moreover, the Court agrees with the United States' contention that the evidence is admissible as res gestae, because the evidence provides the charged crimes' context, i.e., it is "entirely germane background information, which is 'directly connected to the factual circumstances of the crime.'"  United States v. Irving, 665 F.3d at 1213 (quoting United States v. Parker, 553 F.3d at 1314).

    1.    **Rule 404(b) Does Not Prohibit Evidence of Aguilar's Intoxication at the Time of the Alleged Unlawful Acts, Because That Evidence Is Not Being Used to Prove His Character, But Rather to Provide Context and Explain Aguilar's Conduct During the Incidents In Question.**

As discussed, see Law Regarding Rule 404(b), supra at 15-17, evidence is admissible under rule 404(b) if it passes the four-part test that the Supreme Court enunciates:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).  See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. at 691-92).  In demonstrating the first part of this test, the United States argues that

evidence of Aguilar's intoxication during the alleged unlawful acts is admissible, because it "will help explain to the jury the irrationality of the plan, preparation, lack of accident and intent." Notice at 5.  At the hearing, the United States made clear that it does not intend to "portray him as some sort of . . . raging alcoholic or to besmirch him in that sort of way," Jan. 11 Tr. at 33:3-5 (Marshall), but rather to aid in telling why he acted the way that he did at the time of the alleged incident, see Jan. 11 Tr. at 32:11-33:5 (Marshall).

The Court concludes that these purposes are proper, and rule 404(b)(1)'s prohibition does not bar them.  Rule 404(b)(1) prohibits using evidence of other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  This rule does not prohibit evidence offered for "another purpose," and rule 404(b)(2) lists various permissible purposes for crime, wrong, or other act evidence: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404.  This list of permissible purposes, however, "is illustrative, not exhaustive, and Rule 404(b) is considered to be 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove _only_ criminal disposition.'"  United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001)(quoting United States v. Van Metre, 150 F.3d 339, 349 (4th Cir. 1998))(emphasis in United States v. Tan and United States v. Van Metre).

Here, the United States seeks to admit evidence that Aguilar was intoxicated during the alleged unlawful acts.  Notice at 5.  The Court is at pains to imagine how such one-time evidence would "prove _only_ criminal disposition."  United States v. Tan, 254 F.3d at 1208 (emphasis in United States v. Tan).  Rather, as the United States -- the evidence's proponent, see United States v. Birch, 39 F.3d 1089, 1093 (10th Cir. 1994) -- argues, this evidence is to be used to show why Aguilar was acting the way that he was during the alleged incidents of sexual contact with his

niece, see United States v. Tony, 948 F.3d 1259, 1262 (10th Cir. 2020)("Mr. Tony stated in writing and in court that he was offering the methamphetamine evidence to show why Mr. Garcia was acting erratically and violently.  This purpose would have been permissible under Rule 404(b)."), and to provide the immediate context of the charged crime, see United States v. Sarracino, 131 F.3d at 949 ("One proper purpose for admitting Rule 404(b) evidence is to show the context of a charged crime.").  Drinking may make an individual more likely to do something that he or she normally would not do.  Such evidence does not bear on Aguilar's character in the manner that rule 404(b)(1) prohibits. The Court therefore concludes that the evidence regarding Aguilar's intoxication during the alleged unlawful acts is not offered "to prove [Aguilar's] character in order to show that on a particular occasion [Aguilar] acted in accordance with the character," Fed. R. Evid. 404(b)(1), and therefore is "offered for a proper purpose," United States v. Zamora, 222 F.3d at 762.

In addition to being offered for a proper purpose, the Court also concludes that evidence regarding Aguilar's intoxication during the alleged unlawful acts is relevant, and one or more of the dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" do not substantially outweigh the evidence's probative value.  Fed. R. Evid. 403.  The evidence meets the "very low" threshold for relevance, United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998), because it bears on the fact-finder's assessment of Aguilar's mental state at the time of the charged crime, and mens rea is a fact of consequence in proving the crime.  More generally, the fact of Aguilar's intoxication during the time when the alleged acts occurred provides the fact finder "with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict."  United States v. McVeigh, 153 F.3d at 1190.  Moreover, the Court concludes that rule 403 does not bar the evidence,

because the evidence's probative nature is not "substantially outweighed" by the dangers that the rule lists.  The evidence, while perhaps mildly prejudicial to Sandoval, is not prejudicial to an unfair degree.  United States v. Archuleta, 737 F.3d 1287, 1293 (10th Cir. 2013)("Virtually all relevant evidence is prejudicial to one side or the other.").  Accordingly, the Court concludes that -- when assessed according to the restrictions of rule 404(b) -- evidence of Aguilar's intoxication during the alleged unlawful acts is admissible.

      2.     **Evidence of Aguilar's Intoxication During the Charged Crimes Is Admissible as Res Gestae or "Intrinsic" Evidence.**

Having concluded that the evidence is admissible pursuant to rule 404(b), the Court now considers whether, in the alternative, the evidence is admissible as res gestae or "intrinsic" evidence.  As discussed, see Law Regarding Res Gestae and "Intrinsic Evidence," supra at 20-27, res gestae evidence "encompasses conduct 'inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act.'"  United States v. Piette, 45 F.4th at 1155 (quoting United States v. Ford, 613 F.3d at 1267).  Moreover, as discussed in United States v. Kupfer, 797 F.3d at 1238, evidence that is "entirely germane background information, which is 'directly connected to the factual circumstances of the crime'" is admissible as intrinsic evidence and thus bypasses rule 404(b)'s formal requirements.  United States v. Irving, 665 F.3d at 1213 (quoting United States v. Parker, 553 F.3d at 1314).

In the Notice, the United States argues that, under the res gestae doctrine, "[e]vidence of events leading up to the crimes . . . relevant as to why the crime occurred are intrinsic with the crime charged."  Notice at 5 (citing United States v. Ford, 613 F.3d at 1267; United States v. Kimball, 73 F.3d at 272).  The Court concludes that this characterization of the res gestae doctrine is too broad, and suffers from the analytical vagueness that has spawned so much academic and judicial commentary on the subject.  See Law Regarding Res Gestae and "Intrinsic" Evidence,

supra at 24 n.4.  The problem with a broad categorical rule like the United States', in the Court's view, is that a clever attorney always is going to be able to argue coherently that some event -- even in the far distant past, or with very tenuous factual links to the charged offense -- is relevant to telling the story of why the alleged criminal conduct occurred.  The ability to craft coherently such an argument does not mean, however, that all such events are intrinsic and therefore insulated from rule 404(b)'s prohibitions, and some such evidence might be propensity evidence clothed in the more innocuous garb of intrinsic evidence.  As Judge Wilson notes, such a broad reading "would essentially nullify the 404(b) restrictions on 'bad act' evidence."  United States v. Ameri, 297 F. Supp. 2d at 1169.  As the Court notes above, with the academic and judicial commentary on the subject firmly in mind, the Count intends to take a cautious, conservative approach to determining the proper bounds of res gestae or intrinsic evidence.  See Law Regarding Res Gestae and "Intrinsic" Evidence, supra at 24 n.4.  The Court will continue to apply faithfully, of course, the Tenth Circuit precedent on this subject, but will resist attempts to push the limits on this principle further than what the Tenth Circuit has sanctioned, and -- as discussed above -- will use the more analytically stringent tests that Saltzburg suggests as a first pass, before ensuring that those narrower tests do not reach a result that is inconsistent with Tenth Circuit case law.

While the United States' proffered rule on res gestae goes too far, the Court nevertheless concludes that evidence of Aguilar's alcohol use during the alleged unlawful acts is intrinsic to the charged crime under any analytical framework.  Under the more stringent frameworks that Saltzburg provides in his treatise, for example, the "intrinsic" label is reserved for two "narrow categories of evidence": (i) if that evidence "'directly proves' the charged offense"; or (ii) if the uncharged acts are "performed contemporaneously with the charged crime," and "facilitate the commission of the charged crime."  Saltzburg, supra, at § 404.02[12] (quoting United States v.

Green, 617 F.3d 233, 248-49 (3d. Cir. 2010).  Here, while Aguilar's intoxication does not provide direct proof of the charged offense, his intoxication allegedly occurred contemporaneously with the charged crime and arguably facilitated the commission thereof.  See Notice at 2 ("Defendant would get drunk and became her abuser.  Defendant would become intoxicated and inappropriately touch Jane Doe in the home.").  Accordingly, under the stringent "intrinsic" test that the Third Circuit provides and Saltzburg approves, the evidence of Aguilar's intoxication during the alleged incident is admissible.  See Saltzburg, supra, at § 404.02[12].

Moreover, even under the more analytically squishy analytical frameworks which the Tenth Circuit provides, evidence of Aguilar's intoxication during the alleged touching is "intrinsic" to the charged offense.  As the Tenth Circuit states in United States v. Kupfer, 797 F.3d at 1238, one category of intrinsic evidence is evidence that provides "entirely germane background information, . . . directly connected to the factual circumstances of the crime."  United States v. Kupfer, 797 F.3d at 1238 (quoting United States v. Irving, 665 F.3d 1184, 1212-13 (10th Cir. 2011).  Here, evidence of Aguilar's intoxication is so connected: it occurred at the same time as the alleged events, and also "provides the context for the crime, [and] . . . is 'appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.'"  United States v. Kimball, 73 F.3d at 272 (quoting United States v. Masters, 622 F.2d at 86).  Cf. Saltzburg, supra, at § 404.02[12] (noting that in Courts of Appeals which employ a res gestae or "inextricably intertwined" test, "evidence used to 'complete the story' is pretty much the same as evidence admitted for 'context' under Rule 404(b)" (source of quoted material not cited)).  In sum, the Court concludes that evidence of Aguilar's intoxication at the time of the alleged unlawful acts is "intrinsic" or res gestae evidence.  See United States v. Piette, 45 F.4th at 1155; United States v. Ford, 613 F.3d at 1267.

Concluding that evidence of Aguilar's intoxication during the charged crimes is admissible as res gestae or "intrinsic" evidence, the evidence is still subject to rule 403 balancing.  See United States v. Piette, 45 F.4th at 1155.  To exclude relevant evidence under rule 403 is "an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).  Rule 403 counsels that the court should exclude relevant evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."  Fed. R. Evid. 403.  As discussed, see Law Regarding Rule 403 of the Federal Rules of Evidence, supra, at 13-15, evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  Evidence of Aguilar's intoxication during the time of the alleged unlawful conduct is prejudicial in that it damages his case, but this evidence is probative as intrinsic evidence of the charged crimes by linking Aguilar's intoxication to the charged crimes.  Because this evidence's probative value in describing the events of the charged crime outweighs any possible prejudice, its admission does not violate rule 403.

> **B.**   **AGUILAR'S ALCOHOL-RELATED CONVICTIONS, ALCOHOL-RELATED ARRESTS, AND EVIDENCE OF AGUILAR'S ALCOHOL ADDICTION ISSUES WHILE ON PRE-TRIAL SERVICES ARE INADMISSIBLE UNDER RULE 404(b) IN THE UNITED STATES' CASE-IN-CHIEF, BUT MAY BE ADMITTED FOR THE PURPOSE OF A PROPER IMPEACHMENT IF HE TAKES THE STAND AND DENIES ALL ALCOHOL USE.**

As noted, the United States seeks to introduce evidence of Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on Pre-Trial Services if Aguilar denies using alcohol.  See Notice at 5-7.  The United States contends

that this evidence is admissible under rule 404(b) and under the "specific contradiction doctrine."[5]

Notice at 7. As to the evidence's admissibility under rule 404(b), the Court disagrees with the

United States' contention, because the United States is not offering this evidence for a proper

purpose under rule 404(b). The Court agrees, however, with the United States' contention that the

---

[5]The United States does not cite any cases or other authority to explain this doctrine. The Tenth Circuit has defined the specific contradiction doctrine as a "principle of cross-examination," under which, "when a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact," and that "[t]his is so even if the evidence elicited by the prosecution ordinarily might be collateral or otherwise inadmissible." United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)(citing Walder v. United States, 347 U.S. 62, 65, (1954); Mason v. Oklahoma Tpk. Auth., 115 F.3d 1442, 1456 (10th Cir. 1997), overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011)). This "doctrine" strikes the Court as simply an expression of the unremarkable proposition that a witness may be impeached when the witness says something on the stand that can be contradicted by conflicting prior acts or a conflicting prior statement, and that the means available to impeach in this manner sometimes has the effect of letting the jury hear things that would be otherwise inadmissible. See Saltzburg, supra, at § 608.02[1] (explaining that, "[o]ne of the ways of impeaching a witness is to introduce evidence that the witness has a bad character for truthfulness, i.e., a propensity to tell lies," and that "[s]uch impeachment is excepted from the limitations on character evidence in Rule 404, and is expressly permitted by Rule 608 (allowing impeachment with bad acts) and Rule 609 (allowing impeachment with prior convictions), subject to certain important limitations"); Saltzburg, supra, at § 613.02[1] ("One of the traditional ways of impeaching a witness is by introducing evidence of a prior inconsistent statement."). The Honorable Michael McConnell, then-United States Circuit Judge for the Tenth Circuit, suggests that the doctrine refers to the use of character evidence -- via reputation, opinion, or bad acts testimony -- to impeach a witness for truthfulness:

> The Rules of Evidence state that, to be admissible for impeachment, evidence must be "probative of truthfulness or untruthfulness," and must "concern[] the [defendant's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). If there is evidence that "specific[ally] contradict[s]" a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying. *United States v. Crockett,* 435 F.3d 1305, 1313 (10th Cir.2006).

United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008)(McConnell, J., concurring in part and dissenting in part)(all brackets in United States v. Cerno).

evidence is admissible under the specific contradiction doctrine, because the evidence could be presented for proper impeachment if Aguilar denies ever using alcohol.  The Court explains each conclusion in turn.

As discussed, <u>see</u> Law Regarding Rule 404(b), <u>supra</u> at 15-17, for evidence to be admissible under rule 404(b), the proponent must offer -- as a first step to admissibility -- the evidence for a proper purpose.  <u>See</u> <u>United States v. Zamora</u>, 222 F.3d at 762.  Rule 404(b)(1) prohibits using evidence of other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  As noted above, however, this rule does not prohibit evidence that the proponent offers for "another purpose," and rule 404(b)(2) lists various permissible purposes for crime, wrong, or other act evidence: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404.  These listed permissible purposes, however, are "illustrative, not exhaustive, and Rule 404(b) is considered to be 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition.'" <u>United States v. Tan</u>, 254 F.3d at 1208 (quoting <u>United States v. Van Metre</u>, 150 F.3d at 349 (emphasis in <u>United States v. Tan</u> and in <u>United States v. Van Metre</u>).

Here, the United States does not identify a proper purpose for which it is offering the evidence.  Instead, in the Notice, the United States contends that

> Rule 404(b) does not require a conviction, and prior charges can suffice.  *Dowling v. United States*, 493 U.S. 342 (1990).  Uncharged acts can be probative to show a proper use under Rule 404(b). *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000). *See also United States v. Cellicion*, 848 F. App'x 362, 365 (10th Cir. 2021)(unpub.).  Some of the events above occurred after the allegations in the federal indictment.  However, the bad acts need not pre-date the charged crimes. *United States v. Olivo*, 80 F.3d 1466, 1468-69 (10th Cir. 1996); *United States v. Sarracino*, 131 F.3d 943, 948 (10th Cir. 1997).

Notice at 7.  This explanation of principles, however, does not fulfill the United States' "threshold obligation" -- as the rule 404 evidence's proponent, United States v. Birch, 39 F.3d at 1093 -- to "tell the court what the purpose is."  United States v. Tony, 948 F.3d at 1261.  The United States argues only that it will use the evidence of his prior other acts and convictions for alcohol-related offenses "should he try to say that he does not drink alcohol or if there is a claim that he does not drink in excess."  Notice at 7.  This theory, however, supports only an impeachment theory for the evidence -- which the Court discusses below -- but does not explain why the United States is not using these prior acts for an impermissible character theory that rule 404(b)(1) prohibits.

Moreover, even beyond the United States' shortcomings in providing a proper theory of admissibility under rule 404(b), the Court concludes that no proper purpose for this evidence exists under rule 404(b).  Evidence that Aguilar has a drinking habit or evidence that he has broken the law on occasions in the past is not relevant for any purpose aside from character or propensity purposes, i.e., it is merely an attempt to impugn Agular's character.  All that can be inferred from this evidence is a propensity to drink, a propensity to drink and drive, or -- more broadly -- a propensity to use poor judgment.  While these might be unsavory propensities, rule 404(b)'s purpose is to avoid the danger that a jury will convict a defendant because of the type of person he or she is -- i.e., what kinds of unsavory propensities they might have -- as opposed to the evidence of his or her conduct as demonstrated in a given case.  As the Honorable Charles Clark, United States Circuit Judge for the United States Court of Appeals for the Fifth Circuit, wrote in the context of rule 404(b): "A concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is."  United States v. Myers, 550 F.2d 1036, 1044 (5th Cir. 1977).  In the Court's view, that danger is presented here: that the jury will hear about Aguilar's past instances of alcohol use that led to various run-ins with law enforcement and will infer

something about his character, which will lead to a second inference about how Aguilar might have acted during the incidences underlying the charged crimes.  As Saltzburg notes, courts typically should exclude prior bad acts evidence where the evidence's "probative value for the expressed [rule 404(b)] purpose proceeds through the propensity inference."  Saltzburg, supra, at § 404.02[10].  Here, there is no clear proper purpose, but only a propensity inference.  Although the Tenth Circuit has approved the use of proper purpose evidence admissible under rule 404(b) even if it has "'the potential impermissible side effect of allowing the jury to infer criminal propensity,'" United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(quoting United States v. Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)), here, the inference of criminal propensity is not a side effect but rather the main event.  Unlike the evidence of Agular's intoxication during time of the alleged unlawful acts, see Section I.A.1, supra, at 29-32, this evidence does not provide "context" to charged crimes, see United States v. Sarracino, 131 F.3d at 949, and nor does it shed light on Aguilar's motive, intent, plan, or any of the proper purposes in rule 404(b)(2).

Moreover, even if the United States could provide a proper non-propensity purpose under rule 404(b), the Court nevertheless would exclude the evidence of Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on Pre-Trial Services, under rule 403.  The Court concludes that the only probative value of this evidence is to support a general theory of Aguilar's propensity to use alcohol, or use alcohol and drive his car.  While there is some probative value to this evidence, the Court concludes that the danger of unfair prejudice substantially outweighs the evidence's probative value, which is based on an inference that rule 404(b) prohibits.  See Fed. R. Evid. 403; Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(noting that rule 404 "is necessary because of the high degree of prejudice that inheres in character evidence").

Finally, while this evidence cannot come in to the trial during the United States' case-in-chief because rule 404 prohibits the evidence, the Court concludes that evidence of Aguilar's alcohol-related convictions, alcohol-related arrests, and Aguilar's alcohol addiction issues while on Pre-Trial release, is admissible for the purpose of impeaching Aguilar in the event that he takes the stand and denies that he uses alcohol or has used alcohol in the past.  Whether through the "specific contradiction doctrine" or otherwise, Notice at 7, the Court concludes that the United States may bring up past instances of drinking to impeach Aguilar's claims to the contrary.  See United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008)("If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying."); id. at 944 (McConnell, J., concurring in part and dissenting in part)("If there is evidence that 'specific[ally] contradict[s]' a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying." (quoting United States v. Crockett, 435 F.3d at 1313)).

## II.   THE UNITED STATES CANNOT INTRODUCE AGUILAR'S ALLEGED PRIOR BAD ACTS -- INVOLVING "ABUSE OF POWER AND SEXUAL MISCONDUCT" -- WHILE SERVING AS A TRIBAL OFFICIAL BECAUSE RULE 404(b) PROHIBITS SUCH EVIDENCE.

Next, the United States seeks to introduce evidence, pursuant to rule 404(b)(2)'s "another purpose" exception to rule 404(b)(1)'s prohibition, of prior acts in which Aguilar allegedly "abused his power and committed sexual misconduct."  Notice at 7.  More specifically, the United States alleges:

> On January 18, 2021, Defendant responded to a call regarding two intoxicated females.  Defendant and other individuals took these women to detox.  However, hours later, after Defendant was not around, one of the women submitted a complaint out of concern that she did not feel safe around Defendant.  When Defendant and another individual sought to take her to the detox location, Defendant pounded on the bathroom door and yelled commands at her while the female showered.  Defendant then barged into the bathroom and opened the shower

curtain while she still was naked in the shower.  Defendant then threw clothes and a towel at her.

Notice at 7.  The United States contends that this evidence is admissible, because "[i]t shows an absence of mistake and a common scheme."  Notice at 8.  The United States elaborates that these prior acts show that Aguilar "was in a position of power" and that, "[i]n both situations he took advantage of the situation, in part based on that position of power."  Notice at 8.  Further, the United States notes that it is common to both of these prior acts as well as to the Superseding Indictment's allegations that "despite efforts by the victims to conceal themselves," for example, "for Jane Doe in a closet or beneath the bedcovers, and for the woman naked in the shower, she was behind a closed door and behind a shower curtain."  Notice at 8.  As discussed throughout this Opinion, the first step for the Court in assessing the admissibility of evidence under rule 404(b) is to identify a proper purpose.  See United States v. Zamora, 222 F.3d at 762.  Here, the United States, as the evidence' proponent, see United States v. Birch, 39 F.3d at 1093, has attempted to fulfill its obligation to identify a proper purpose by stating that these past acts show "an absence of mistake and a common scheme," Notice at 8.

As for "absence of mistake," the Court concludes that the proffered evidence here does not fall into this proper purpose.  In United States v. Russell, 109 F.3d 1503 (10th Cir. 1997), the Tenth Circuit affirmed a trial court's decision to admit evidence for the proper purpose of "absence of mistake" in the following scenario: Leslie Russell and Michon Starnes -- co-defendants -- were prosecuted for conspiracy to possess with intent to distribute illegal narcotics, and direct evidence showed that "police found 18 grams of cocaine along with drug paraphernalia and $400 in cash in Starnes's bedroom."  109 F.3d at 1505.  A witness sought to testify about a prior bad act, in which Russell had showed the witness a "rock of cocaine," and then Russell and the witness traveled to Starnes' home, where "Russell then entered Starnes's residence with the rock of cocaine, and

emerged later no longer carrying it." 109 F.3d at 1506.  The Honorable Byron R. White, retired Associate Justice for the Supreme Court and sitting by designation for the Tenth Circuit, wrote that it was not an abuse of discretion for the trial court to admit this testimony under rule 404(b)'s "absence of mistake or accident."  109 F.3d at 1506.  Because the witness' testimony indicates that Russell had kept narcotics in Starnes' home related to drug sales, the United States could -- consistent with rule 404(b) -- bring in this testimony to demonstrate the absence of a mistake or accident that would have led drugs related to Russell to be found in Starnes' home.  See 109 F.3d at 1506.  In this sense, as commentators have noted, "absence of mistake" or "lack of accident" are "a more specialized application of the broader category of 'intent.'"  22B Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 5255 (2d ed. 2023)("Wright & Miller")(source of quoted material not cited).  For example, in United States v. Harris, 661 F.2d 138 (10th Cir. 1981), a defendant was charged with the murder of his eight-month-old son, and the defendant's defense was that the defendant had accidentally fallen while holding the baby, which led to the infant's fatal injuries.  See 661 F.2d at 139-41.  Under these facts, the Tenth Circuit affirmed the introduction of other evidence of prior acts in which the defendant had battered his son, in an attempt to rebut the defendant's claim that the death was accidental -- i.e., it bore on the defendant's intent to commit the crimes charged.  661 F.2d at 142-43.

    The Court concludes that the United States has not demonstrated adequately that "absence of mistake" is a proper purpose for which the proposed evidence may be offered.  See United States v. Zamora, 222 F.3d at 762.  Aguilar's alleged prior act involving boorish behavior -- in which he "barged into the bathroom and opened the shower curtain" while a woman was showering and threw clothing and a towel at her, Notice at 7 -- does not function to prove an "absence of mistake" in the present case, Notice at 8.  The Court is not certain, because the United States does not

explain, what "mistake" the United States alleges is absent.  Unlike the defendant in <u>United States v. Harris</u>, 661 F.2d at 139-43, Aguilar does not argue that his actions during the charged crime were accidental, and unlike the factual scenario in <u>United States v. Russell</u>, 109 F.3d at 1505, there is no plausible argument that Aguilar's alleged behavior during the shower incident would refute even a potential argument that Aguilar's alleged sexual contact of Jane Doe is the result of a mistake or accident.  Accordingly, the Court concludes that "absence of mistake" is not a proper purpose under which the Court will admit evidence of Aguilar's prior act under rule 404(b)(2).

As for "common scheme" -- the United States' other proposed purpose for the evidence, Notice at 7 -- the Court likewise concludes that this evidence is not admissible for this purpose. Common scheme is not one of the listed purposes in rule 404(b)(2), but the Tenth Circuit has approved the use of prior crimes or other acts evidence which demonstrate a common factual scheme with the charged crime.  <u>See</u> <u>United States v. McGuire</u>, 27 F.3d 457, 461 (10th Cir. 1994)(affirming a district court's admission of prior bank robberies in a bank robbery prosecution when the prior robberies show a common scheme with the charged crime: "in every instance McGuire looked to medium-sized Midwestern cities in order to find a small branch bank with few employees," and looked for banks "that had easy access to an interstate in order to facilitate a get-away," and "McGuire further desired that the small bank with easy access to an interstate be located near the parking area of a shopping center in order to carry out the 'vehicle switching' once the robbery was over" (source of quoted material not cited)).  Pertinent to Aguilar's case, the Tenth Circuit has previously used the "common scheme" purpose in cases involving allegations of sexual abuse.  In <u>United States v. Roberts</u>, 185 F.3d 1125, 1128 (10th Cir. 1999), the defendant -- who at the time of the alleged offenses was Principal Chief of the Choctaw Nation of Oklahoma -- was tried in the district court for two counts of aggravated sexual abuse, one count of sexual abuse, and

five counts of abusive sexual contact, stemming from incidences involving three different women.
See 185 F.3d at 1128.

On appeal, the Tenth Circuit assessed whether the district court had erred by allowing the testimony of other women -- not the alleged victims in the case -- to testify to their experiences of abuse by the defendant while he was in his position of power within the Choctaw Nation. See 185 F.3d at 1140-43. The Tenth Circuit found no error, because the district court properly admitted the testimony of the uncharged incidents as "common scheme" evidence under rule 404(b): "[T]he government's rationale was to show a common scheme of sexually abusive behavior committed against female employees of the Choctaw Nation, and the defendant's knowledge he could, by virtue of his position, abuse young female employees without fear of reprisal." 185 F.3d at 1142. The Tenth Circuit also quoted the district court's findings on this question and noted that the district court had emphasized the similar factual scenarios that led to the abuse:

> The court makes this finding as to witnesses Maddux, Ward, Byrd, McWilliams, Cole and Knight [the uncharged acts witnesses]. Each witness was employed by the Choctaw Nation when the sexually abusive behavior by Roberts was directed toward them. Roberts was in a position of authority over each of them. He was the Chief of the Choctaw Nation and he represented the ultimate hiring and firing authority for the Choctaw Nation. According to the testimony, he utilized his influence and control over these women in such fashion that they were constantly subjected to his advances as part of their employment. Most, if not all of these incidents, took place with no witnesses and in areas not visible to other individuals. Each encounter was apparently prompted by a request by Roberts for a one-on-one meeting. *The testimony of these seven women regarding Roberts' conduct is strikingly similar to the testimony of the three individuals named in the indictment -- Russ, Gilbert, and Grammar.*

United States v. Roberts, 185 F.3d at 1142 (source of quoted material not specifically cited, but presumably from the district court record)(emphasis added by Tenth Circuit in United States v. Roberts).

Although the "common scheme" in United States v. Roberts shares some general similarities with the United States' proposed use of the shower evidence in Aguilar's case, the Court concludes that Aguilar's conduct during the alleged shower incident is too factually distinct from his alleged conduct during the charged crime to qualify as part of a "common scheme." 185 F.3d at 1142. Although Aguilar, like the defendant in United States v. Roberts, allegedly "t[oo]k advantage" of a "position of power," Notice at 8, the Court nevertheless concludes that the rest of the factual scenarios are too distinct to shed light on any common scheme. During the alleged shower incident, the individuals involved were all adults, and, moreover, there is no allegation that Aguilar attempted any sexual touching. See Notice at 7. Instead, the Notice alleges that Aguilar "pounded on the bathroom door and yelled commands," before he "barged into the bathroom and opened the shower curtain while [a female] still was naked in the shower," and "threw clothes and a towel at her." Notice at 7. This behavior is discourteous and unpleasant, but factually is it not similar to the allegations that Aguilar drunkenly abused his young niece. As the Tenth Circuit makes clear in United States v. Roberts, 185 F.3d at 1142, and United States v. McGuire, 27 F.3d at 461, to qualify as evidence admissible as a common scheme under rule 404(b)(2), the prior evidence must show some methodological similarity in conduct. Here, the Court concludes that the evidence does not satisfy this parameter.

Moreover, even if the United States could provide a proper non-propensity purpose for the introducing the alleged shower incident, the Court nevertheless would exclude this evidence under rule 403. The Court concludes that this evidence's only probative value of is to support inferences regarding Aguilar's bad character and general boorish behavior. While the evidence may be probative in a general sense, the Court concludes that the evidence's probative value -- which is based on an inference that rule 404(b) prohibits -- is substantially outweighed by the danger of

unfair prejudice.  See Fed. R. Evid. 403; Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(noting that rule 404 "is necessary because of the high degree of prejudice that inheres in character evidence").

In sum, the Court concludes that the evidence is not admissible for a proper purpose under rule 404(b)(2).  The Court concludes that evidence regarding the shower incident serves only to show that Aguilar has a bad character and is inclined towards coarse behavior.  Consistent with rule 404(b)(1), the Court will not allow this character inference to affect the jury's determinations of Aguilar's conduct in this case, see United States v. Myers, 550 F.2d at 1044, as evidence is admissible under a proper purpose "only if it is relevant for [that] permissible purpose and that relevance does not depend on a defendant likely acting in conformity with an alleged character trait," United States v. Commanche, 577 F.3d 1261, 1267 (10th Cir. 2009).  Accordingly, the Court denies the United States' attempt to introduce evidence regarding prior acts in which Aguilar allegedly "abused his power and committed sexual misconduct" under rule 404(b)(2).  Notice at 7.

### III.   JANE DOE'S TESTIMONY REGARDING AN UNCHARGED INCIDENT WHERE AGUILAR ATTEMPTED TO ABUSE JANE DOE SEXUALLY IS ADMISSIBLE PURSUANT TO RULE 413 AND RULE 414.

Last, the United States seeks to introduce, under rule 413 and 414,[6] evidence from another alleged -- but uncharged -- incident involving Jane Doe:

> Jane Doe discusses an uncharged incident where Defendant attempted to touch her by trying to pull off her shirt and going under the covers to try and touch her.  She prevented him from doing so. . . .  Jane Doe should be allowed to discuss this incident when describing the times Defendant sexually assaulted her or attempted to sexually assault her.

---

[6]As discussed infra, the United States is imprecise about which rule is the basis of its argument because it contends that, in this context, the rules are used "interchangeably."  Notice at 8 n.2.

Notice at 11.  As the Tenth Circuit has noted, "Federal Rules of Evidence 413 and 414 address propensity evidence in the context of sexual assault and child molestation," and "[t]hese rules provide an exception to the general rule codified in Rule 404(a), which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts."  United States v. Benally, 500 F.3d 1085, 1089 (10th Cir. 2007).  Rule 413 intends to "provide for more liberal admissibility in cases involving a charge of sexual assault where the defendant has committed a prior act or acts of sexual assault," Saltzburg, supra, at § 413.02[1], while rule 414 "is intended to provide for more liberal admissibility in criminal cases of child molestation where the defendant has committed a prior act or acts of child molestation," Saltzburg, supra, at § 414.02[1].  Relevant to Aguilar's case, "[s]exual assault" under rule 413 is defined as including "any conduct prohibited by 18 U.S.C. chapter 109A," Fed. R. Evid. 413(d)(1), which includes 18 U.S.C. § 2244 -- the statute under which the Grand Jury charged Aguilar in this case, see Superseding Indictment at 1. Under rule 414, "child molestation" includes "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child."  Fed. R. Evid. 414(d)(2)(A).  Accordingly, because some cases -- like Aguilar's -- involve alleged acts that feasibly could fall under both rules, as the United States correctly contends, these rules "have been used interchangeably, particularly for abuse of children."  Notice at 8 n.2 (citing United States v. Benally, 500 F.3d at 1090 n.1).

In United States v. Guardia, 135 F.3d 1326 (10th Cir. 1998), the Tenth Circuit established the procedures by which a district court determines the admissibility of evidence offered under rule 413.  See 135 F.3d at 1328.  First, the district court must meet three threshold requirements that relate to the plain language of the rule:

A district court must first determine that "the defendant is accused of an offense of sexual assault." [Fed. R. Evid. 413(a)]; cf. Fed. R. Evid. 413(d) (defining an "offense of sexual assault"); Frank v. County of Hudson, 924 F. Supp. 620, 625 (D.

N.J. 1996)(noting similar requirement for Rule 413's companion Rule 415).
Second, the court must find that the evidence proffered is "evidence of the
defendant's commission of another offense of . . . sexual assault." Fed. R. Evid.
413(a); *see also Frank,* 924 F. Supp. at 625.

. . . .

    The third requirement, applicable to all evidence, is that the evidence be
relevant. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not
admissible.").

United States v. Guardia, 135 F.3d at 1328. After meeting these three threshold requirements, the

evidence is subject to rule 403 balancing. See United States v. Guardia, 135 F.3d at 1329 ("The

district court also properly concluded that the Rule 403 balancing test applies to evidence

submitted under Rule 413.").[7]

---

[7]As the Tenth Circuit notes in United States v. Guardia, the proposition that rule 403's
balancing applies to evidence admitted under rule 413 is not an obvious one: "The wording of Rule
413 has led some commentators to infer that it creates an exception for itself to the Rule 403
balancing test." United States v. Guardia, 135 F.3d at 1329 (citing United States v. Guardia, 955
F. Supp. 115, 117 (D.N.M. 1997)(Black, J.)). The wording of the original rule 413, as enacted in
1994, stated, in pertinent part, that "[i]n a criminal case, in which the defendant is accuses of an
offense of sexual assault, evidence of the defendant's commission of another offense or offenses
of sexual assault is admissible . . . ." Fed. R. Evid. 413(a) (1994)(amended 2011). The idea that
the evidence "is admissible" led some commentators to believe that this rule -- like rule 609 --
displaces rule 403 balancing. As the Tenth Circuit explained:

    Rule 413 states that evidence meeting its criteria "is admissible." Fed. R. Evid. 413.
    Rule 412, on the other hand, which also allows evidence of prior sexual behavior,
    states that certain evidence "is admissible, *if otherwise admissible under these
    rules.*" Fed. R. Evid. 412(b) (emphasis added). One could assume from this fact
    that because the emphasized clause does not appear in Rule 413, Congress intended
    to make the introduction of Rule 413 evidence mandatory rather than subject to the
    discretion of the trial judge under Rule 403.

United States v. Guardia, 135 F.3d at 1329. The rule, in its post-2011 amended form, is arguably
clearer on this point. The rule now reads: "In a criminal case in which a defendant is accused of a
sexual assault, the court may admit evidence that the defendant committed any other sexual
assault." Fed. R. Evid. 413(a). As Saltzburg notes, unlike rule 609, which states that crimen falsi
convictions "must be admitted," Fed. R. Evid. 609(a)(2), "Rule 413 contains neither mandatory
language nor a special balancing test," and thus "clearly the better reading of the rule is that the
trial judge retains discretionary power under Rule 403 to exclude some instances of sexual

One year later, owing to the similarities between rule 413 and rule 414 -- "Rule 413(a) is identical to Rule 414(a) except that the former applies to the 'offense of sexual assault,' while the later applies to the 'offense of child molestation,'" United States v. McHorse, 179 F.3d 889, 897 (10th Cir. 1999)(Baldock, J.)(quoting Fed. R. Evid. 413(a) and Fed. R. Evid. 414(a)) -- the Tenth Circuit extended United States v. Guardia's test to rule 414: "[W]e reason from Guardia, and conclude that like Rule 413(a), evidence offered under Rule 414(a) must meet three requirements before the district court may exercise its discretion to admit it." United States v. McHorse, 179 F.3d at 897-98. The Tenth Circuit already had held, in a previous case, that rule 403 balancing

---

misconduct," Saltzburg, supra, at § 413.02[3]. The Court agrees with this logic, which also comports with the Tenth Circuit's conclusion that rule 403 balancing remains applicable in the context of rule 413.

The Tenth Circuit has gone so far as to suggest that rule 413 -- without the "safeguards" of rule 403 -- would be unconstitutional. United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998), opinion clarified, No. 96-2285, 1998 WL 133994 (10th Cir. March 25, 1998). Writing for the panel in United States v. Enjady, the Honorable James Kenneth Logan, United States Circuit Judge for the Tenth Circuit, acknowledged the potential due process issues with rule 413:

> The due process arguments against the constitutionality of Rule 413 are that it prevents a fair trial, because of "settled usage" -- that the ban against propensity evidence has been honored by the courts for such a long time that it "must be taken to be due process of law," Hurtado v. California, 110 U.S. 516, 528 . . . (1884); because it creates a presumption of guilt that undermines the requirement that the prosecution must prove guilt beyond a reasonable doubt, see Estelle [v. McGuire], 502 U.S. [62,] 78 [(1991)] . . . (O'Connor, J., concurring); and because if tendered to demonstrate the defendant's criminal disposition it licenses the jury to punish the defendant for past acts, eroding the presumption of innocence that is fundamental in criminal trials. See [Mark A. Sheft, Federal Rule of Evidence 413: A Dangerous New Frontier, 33 Am. Crim. L. Rev. 57,] 77-82 [(1995)].

United States v. Enjady, 134 F.3d at 1432 (brackets added). The Tenth Circuit takes this argument seriously, but ultimately rules that rule 403 functions as a savings clause for the constitutionality of rule 413: "without the safeguards embodied in Rule 403 we would hold the rule unconstitutional." 134 F.3d at 1433.

applies to rule 414, see United States v. Meacham, 115 F.3d 1488, 1495 (10th Cir. 1997), and

United States v. McHorse reiterated that conclusion, see 179 F.3d at 898.

Various specific considerations inform Rule 403 balancing in this context.  As the Tenth

Circuit has noted, "Rule 403 balancing in the sexual assault context requires the court to consider:"

> 1) how clearly the prior act has been proved; 2) how probative the evidence is of
> the material fact it is admitted to prove; 3) how seriously disputed the material fact
> is; and 4) whether the government can avail itself of any less prejudicial evidence.
> When analyzing the probative dangers, a court considers: 1) how likely is it such
> evidence will contribute to an improperly-based jury verdict; 2) the extent to which
> such evidence will distract the jury from the central issues of the trial; and 3) how
> time consuming it will be to prove the prior conduct.

United States v. Enjady, 134 F.3d at 1433 (citing Mark A. Sheft, Federal Rule of Evidence 413: A

Dangerous New Frontier, 33 Am. Crim. L. Rev. 57, 59 n.16 (1995)), opinion clarified, No. 96-

2285, 1998 WL 133994 (10th Cir. March 25, 1998).  These rule 403 considerations accord with

Saltzburg's observation that, in the context of rules 413 and 414, "the propensity factor shifts from

the prejudice to the probative side of the Rule 403 balancing process."  Saltzburg, supra, at

§ 413.02[3].  As Saltzburg explains:

> Even though Rule 403 remains applicable to prior acts of sexual assault,
> Rule 413 mandates a change in the way courts have traditionally balanced the
> probative value and prejudicial effect of such acts.  Under Rule 404(b) and Rule
> 403, the trial court must balance the probative value of the uncharged misconduct
> for the not-for-character purpose; it cannot consider, and weigh in favor of
> admissibility, the probative value for the forbidden propensity inference.  In
> contrast, Rule 413 provides that the trial court *must* consider the probative value of
> the prior act of sexual assault on the defendant's propensity to commit the crime
> charged.  Thus the propensity inference is part of the probative value that the judge
> must balance under the Rule 403 test.  Moreover, under Rules 404(b) and 403, the
> trial court, in weighing the risk of prejudice, must consider the possibility that the
> jury will convict the defendant because of his propensity to commit the crime
> charged -- this is "prejudice" because those rules do not permit the jury to draw the
> propensity inference.  In contrast, under Rules 413-415, the jury is allowed to draw
> the inference that because the defendant has committed sex crimes before, he has a
> propensity to commit them and therefore is more likely to have committed a sex
> crime on the occasion in question.  Thus, the risk of drawing the propensity

> inference cannot be considered "prejudicial" when the trial judge conducts the Rule
> 403 balance in sexual misconduct cases under Rule 413.

Saltzburg, supra, at § 413.02[3] (emphasis in original).

One final point on the process of admitting other acts evidence under rule 413 and 414 is the question how the Court should assess the preliminary admissibility of the "other" sexual assault or child molestation.  Fed. R. Evid. 413(a); Fed. R. Evid. 414(a).  In United States v. Enjady, the Tenth Circuit instructs that, before admitting evidence under rule 413, "[t]he district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred."  United States v. Enjady, 134 F.3d at 1433 (quoting David J. Karp, Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi.-Kent L. Rev. 15, 19 (1994)).  See United States v. Woody, 336 F.R.D. 293, 345 (D.N.M. 2020)(Browning, J.)(noting that, for evidence to be admissible under rule 413, the district court "must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred" (quoting United States v. Wilson, No. CR 09-1465, 2010 WL 2954562, at *4 (D.N.M. June 18, 2010)(Browning, J.))).  Accordingly, admissibility in this context is judged according to the same standard that governs rule 104(b) assessments.  See Huddleston v. United States, 485 U.S. at 690.

In short, the Court's analysis for admissibility under rules 413 and 414 is identical: first, the Court assesses the three-part threshold requirements based on the rule's language, and then applies rule 403 with the specific considerations discussed above.  In this case, application of this rule leads the Court to admit the evidence of the alleged prior incident in which Aguilar attempted to sexually assault Jane Doe "by trying to pull off her shirt and going under the covers to try and touch her."  Notice at 11.  The Court considers, first, the three-part threshold admissibility test, before applying rule 403's balancing test.  Because the admissibility tests for rule 413 and 414 are

identical under Tenth Circuit law, the Court conducts these analyses side by side, but carefully considers whether the evidence at issue here fits under both rules.

First, the Court must determine whether Aguilar is accused of "sexual assault" under rule 413 and "child molestation" under rule 414.  See United States v. Guardia, 135 F.3d at 1328.  The Court concludes that Aguilar is accused of crimes that fall under both categories: as noted above, rule 413 defines "sexual assault" as including "any conduct prohibited 18 U.S.C. chapter 109A," Fed. R. Evid. 413(d)(1), which includes 18 U.S.C. § 2244 -- the statute under which the Grand Jury charged Aguilar in this case, see Superseding Indictment at 1 -- and, rule 414 defines "child molestation" to include "any conduct prohibited 18 U.S.C. chapter 109A and committed with a child," Fed. R. Evid. 414(d)(2)(A).  Accordingly, the Grand Jury charges Aguilar with a crime that falls under the definition of "sexual assault" under rule 413 or "child molestation" under rule 414.

Second, the Court concludes that the proffered other act evidence in this case is also conduct that falls under the definition of "sexual assault" under rule 413 or "child molestation" under rule 414.  Fed. R. Evid. 413(a); Fed. R. Evid. 414(a).  The incident here describes an alleged incident in which Aguilar attempted to carry out the same or substantially similar behavior as allegedly occurred during the conduct that gives rise to his charged crimes.  Although Aguilar argues that "attempted sexual contact is not actually a crime under the statute," Jan. 11 Tr. at 44:16-17 (Hart), this fact is of no consequence here, because rules 413 and 414 include attempts in their relevant definitions, see Fed. R. Evid. 413(d)(5) (defining "sexual assault" to mean, among other things, "an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4)"); Fed. R. Evid. 414(d)(2)(F) (defining "child molestation" to mean, among other things, "an attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E)").  Accordingly, the Court concludes that that Jane Doe's account of the alleged prior incident fulfills the definition of "sexual

assault" under rule 413 and "child molestation" under rule 414, and the Court also makes a preliminary finding that this other act occurred.  See United States v. Enjady, 134 F.3d at 1433.

As to the three-step threshold inquiry's third step, the Court concludes that Jane Doe's account of the alleged incident is relevant -- indeed, highly so.  If believed, Jane Doe's testimony demonstrates Aguilar's propensity to touch Jane Doe in a sexual manner despite her efforts to prevent him from doing so.  Because all three threshold elements are met under the test for admissibility for rule 413 and 414 evidence, the Court now turns to rule 403 balancing to determine whether the Court will admit the evidence.

As noted, rule 403 balancing, in the context of rule 413 and rule 414, is performed with an eye to specific considerations.  See United States v. Enjady, 134 F.3d at 1433.  After considering carefully these analytical parameters, the Court concludes that rule 403 balancing does not weigh in favor of excluding the evidence, and therefore the Court will allow Jane Doe to testify to her experience of the previous uncharged incident in which Aguilar "attempted to touch her by trying to pull off her shirt and going under the covers to try and touch her."  Notice at 11.  The probative value of the evidence is very high: if believed, this testimony indicates Aguilar's propensity to touch his niece in a sexual manner and to touch her even when she attempts to resist.  See Saltzburg, supra, at § 413.02[3] ("Rule 413 provides that the trial court *must* consider the probative value of the prior act of sexual assault on the defendant's propensity to commit the crime charged.  Thus the propensity inference is part of the probative value that the judge must balance under the Rule 403 test." (emphasis in original)).  The similarity between the charged acts and this alleged prior uncharged act further contributes to the evidence's probative value.  See United States v. Guardia, 135 F.3d at 1331 (noting that, in rule 413 cases, "the similarity of the prior acts to the acts charged" contributes to probative value).  The danger of unfair prejudice, on the other hand, is mostly related

to this propensity inference, which rules 413 and 414 allow.  See United States v. Rogers, 587 F.3d 816, 822 (7th Cir. 2009)("Because Rule 413 identifies this propensity inference as proper, the chance that the jury will rely on that inference can no longer be labeled as 'unfair' for purposes of the Rule 403 analysis." (quoting Fed. R. Evid. 403)).  The Court concludes that this other act evidence is not particularly prone to distract the jury from the trial's central issues, nor will the testimony be overly time-consuming.  See United States v. Enjady, 134 F.3d at 1433.  On balance, the Court concludes that the rule 403 balancing does not weigh in favor of excluding the evidence, and thus the Court will allow Jane Doe to testify about the alleged prior incident in which Aguilar "attempted to touch her by trying to pull off her shirt and going under the covers to try and touch her."  Notice at 11.

In conclusion, the Court grants in part and denies in part the United States' evidentiary requests in the Notice.  Related to Aguilar's alcohol use, the Court concludes that: (a) evidence of Aguilar's intoxication during the charged crimes is admissible, because it is "intrinsic" or res gestae evidence, and (b) Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on Pre-Trial Services can be introduced only if Aguilar denies using alcohol.  Next, the Court concludes that the United States cannot introduce Aguilar's alleged prior abuse of power and sexual misconduct while serving as a Tribal official, because, consistent with rule 404(b) of the Federal Rules of Evidence, this evidence is propensity evidence and is not offered pursuant to any proper purpose under rule 404(b)(2).  Last, the Court concludes that Jane Doe's testimony regarding an uncharged incident where Aguilar attempted to abuse Jane Doe sexually can be admitted into evidence, because it fulfills all the requirements for admissibility under rule 413 and rule 414.

**IT IS ORDERED** that: (i) the evidentiary requests in the United States' Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 404(b) and 414, filed December 18, 2023 (Doc. 146), are granted in part and denied in part; (ii) Plaintiff United States of America may introduce evidence of Defendant Kyle Aguilar's intoxication during the time of the charged conduct; (iii) the United States may not, during its case-in-chief, introduce evidence of Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on Pre-Trial Services; (iv) if Aguilar chooses to testify and denies that he uses alcohol, the United States may impeach Aguilar with evidence of Aguilar's alcohol-related convictions, alcohol-related arrests, and evidence of Aguilar's alcohol addiction issues while on Pre-Trial Services; and (v) the United States may introduce evidence related to the uncharged prior incident in which Aguilar is alleged to have attempted to touch Jane Doe in a sexual manner and she prevented him from doing so.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Nicholas James Marshall
Mia Ulibarri-Rubin
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Nicholas Thomas Hart
Carter B. Harrison, IV
Harrison & Hart LLC

Albuquerque, New Mexico

*Attorneys for the Defendant*