IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. CR 21-0670 JB

KYLE AGUILAR,

      Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>[1]

**THIS MATTER** comes before the Court on: (i) Defendant Kyle Aguilar's Motion to Merge Counts 2 and 3 into a Single Count of Conviction, filed February 16, 2024 (Doc. 211)("Merger Motion"); (ii) the United States' Objection to the Presentence Report and Motion for Enhancement of Defendant's Sentence for Obstructing or Impeding the Administration of Justice Pursuant to USSG § 3C1.1, filed April 12, 2024 (Doc. 225)("Obstruction Motion"); and (iii) the United States' Second Sentencing Memorandum, filed May 8, 2024 (Doc. 235)("United States Sentencing Memo."). The Court held a hearing on the Merger Motion on March 20, 2024, <u>see</u> Clerk's Minutes, filed March 20, 2024 (Doc. 222), and a sentencing hearing on May 9, 2024, <u>see</u> Sentencing Minute Sheet, filed May 9, 2024 (Doc. 240). The primary issues are: (i) whether the Court should grant the United States' Obstruction Motion and apply the 2-level offense level

---

[1]On May 9, 2024, the Court entered an Order denying Defendant Kyle Aguilar's Motion to Merge Counts 2 and 3 into a Single Count of Conviction, filed February 16, 2024 (Doc. 211), and sustaining the objections in and granting the motion in the United States' Objection to the Presentence Report and Motion for Enhancement of Defendant's Sentence for Obstructing or Impeding the Administration of Justice Pursuant to USSG § 3C1.1, filed April 12, 2024 (Doc. 225). <u>See</u> Order at 1-32, filed May 9, 2024 (Doc. 237). In the Order, the Court states that it will "issue, at a later date, . . . a Memorandum Opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion and Order is the promised opinion.

enhancement under § 3C1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), because Aguilar obstructed justice by perjuring himself during his testimony at trial, which contradicted earlier sworn statements he made at his guilty plea hearing; (ii) whether the Court should grant Defendant Kyle Aguilar's Merger Motion and merge the Superseding Indictment's Counts 2 and 3 into a single count of conviction, because to sentence Aguilar separately under each count would violate of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States of America; and (iii) whether the Court should sentence Aguilar to the 48-month sentence that the Guidelines suggest and the United States argues, or to a time-served sentence, as Aguilar proposes. The Court concludes that: (i) it will grant the Obstruction Motion and apply the § 3C1.1 enhancement, because the Court concludes that Aguilar obstructed justice, because the Court determines by a preponderance of the evidence that Aguilar perjured himself during his trial testimony; (ii) it will deny the Merger Motion, because Aguilar's two counts of conviction do not make for multiplicitous punishment; and (iii) after considering carefully the 18 U.S.C. § 3553(a) factors, as well as the relevant Guidelines sections, the Court sentences Aguilar to the Federal Bureau of Prisons' custody for a term of 48 months, followed by five years of supervised release, because the Court concludes that a Guidelines sentence is reasonable in this case, and is sufficient, without being greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987-2001 (1984), codified as amended at 18 U.S.C. §§ 3551-3586.

## **FINDINGS OF FACT**

The Court finds the following facts for the purposes of the advisory sentencing factors and for the purpose of applying the § 3C1.1 enhancement for obstruction of justice. See United States

v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Court finds

these facts by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d 672,

685 (10th Cir. 2005)(McConnell, J.)("[W]hen a district court makes a determination of sentencing

facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury

determinations reached through application of the more onerous reasonable doubt standard.").

1.      Aguilar engaged in sexual contact with his niece, Jane Doe, on at least[2] two separate

occasions: once during the Dallas Cowboys game, during which Aguilar touched Doe's breasts

and genitalia over her clothing, see Draft Transcript of Jury Trial, Day 2, January 22, 2024 at

51:13-54:16 (held January 22, 2024)( Doe, Marshall)("Jan. 22 Tr."),[3] and once on a separate day

when her friends were over, see Jan. 22 Tr. at 54:21-70:11 (Court, Doe, Harrison, Law Clerk,

Marshall).

2.      As a result of the sexual abuse by Aguilar, Doe has experienced significant trauma

and psychological hardship.  See Jan. 22 Tr. at 77:12-20 (Doe); id. at 82:1-83:9 (Doe); Fourth

Presentence Investigation Report ¶¶ 18-22, at 6-7, filed May 6, 2024 (Doc. 233)("PSR").

3.      Aguilar was untruthful at trial with respect to material matters in this case,

falsehoods which were designed to affect the outcome of the case substantially.

---

[2]As the Court discusses in greater detail below, one of these occasions gives rise to two
separate counts under 18 U.S.C. §§ 2244(a)(3) and 2246(3).  By finding that Aguilar engaged in
sexual contact with his niece on at least two occasions, the Court does not offer any conclusion
regarding the unit of prosecution under 18 U.S.C. §§ 2244(a)(3) and 2246(3).  Rather, the Court
finds this fact for the purposes of determining a "pattern of activity" for U.S.S.G. § 4B1.5(b)'s
purposes.

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

4.     Aguilar willfully gave false testimony about his contacts with Doe; namely, that he had never touched her sexually, and, specifically, had not touched her over or under her clothes on her breasts or her genitalia.  <u>See</u> Draft Transcript of Jury Trial, Day 3, January 23, 2024, at 106:19-21 (held January 23, 2024)(Aguilar, Harrison)("Jan. 23 Tr."), <u>id.</u> at 109:22-24 (Harrison, Aguilar); <u>id.</u> at 115:11-20 (Harrison, Aguilar).

5.     These falsehoods were designed to affect the outcome of the case substantially, <u>i.e.</u>, designed to mislead the jury to return a not guilty verdict.

6.     Aguilar's false statement at trial was willful and deliberate, and not a result of accident, confusion, mistake, or poor recall.

## **FACTUAL BACKGROUND**

As originally indicted, a Grand Jury charged Aguilar with two counts of child sex offenses. <u>See</u> Indictment, filed May 12, 2021 (Doc. 2)("Indictment").  The Indictment charges Aguilar:

<u>Count 1</u>

From on or about October 2, 2016, and continuing to on or about February 13, 2017, in Indian Country, in Sandoval County, in the District of New Mexico, the defendant, KYLE AGUILAR, an Indian, unlawfully and knowingly engaged in and caused sexual contact with Jane Doe, a child who had attained the age of twelve (12) years but had not attained the age of sixteen (16) years, and the sexual contact consisted of the defendant intentionally touching Jane Doe's genitalia directly and through clothing, with the intent to abuse, humiliate, harass, degrade, arouse and gratify the sexual desire of any person.

In violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3).

<u>Count 2</u>

From on or about October 2, 2016, and continuing to on or about February 13, 2017, in Indian Country, in Sandoval County, in the District of New Mexico, the defendant, KYLE AGUILAR, an Indian, in an act distinct and separate from the act in count one, unlawfully and knowingly engaged in and caused sexual contact with Jane Doe, a child who had attained the age of twelve (12) years but had not attained the age of sixteen (16) years, and the sexual contact consisted of

the defendant intentionally touching Jane Doe's genitalia directly and through clothing, with the intent to abuse, humiliate, harass, degrade, arouse and gratify the sexual desire of any person.

In violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3).

Indictment at 1-2.  Aguilar initially pleaded guilty to the Indictment's charges on November 16, 2022, in a hearing before the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico.  See Plea Minute Sheet, filed November 16, 2022 (Doc. 64); Plea Hearing Before the Honorable Laura Fashing, United States Magistrate Judge, filed April 12, 2024 (Doc. 225-1)("Plea Tr.").  At the hearing, Magistrate Judge Fashing, Aguilar, and Assistant United States Attorney Nicholas Marshall, engaged in the following colloquy, during which Aguilar pled guilty to Count 2 of the Indictment, admitting to touching inappropriately a minor's genitals over the minor's clothing:

> Fashing, M.J.: I do need to ask you, Mr. Aguilar, if you could tell me in your own words just briefly what it is that you did that makes you guilty of this offense.
>
> Aguilar: I was intoxicated and I made a bad judgment.
>
> Fashing, M.J: Okay. Why don't you tell me -- let's start by saying when this was and where you were.
>
> Aguilar: This was somewhere around October 12 2016 to February 2017, San Felipe Pueblo.
>
> Fashing, M.J: Okay.  And you said you are intoxicated.  And what did you do while you were intoxicated?
>
> Aguilar: I may -- yes, I may have -- I touched a minor inappropriately.
>
> Fashing, M.J: Where specifically did you touch this minor?
>
> Aguilar: Over her clothes over her genitals.

Fashing, M.J:  Okay. How old was the victim at that time?

Aguilar:       She was age of 12.

Fashing, M.J:  Okay. Was she between certain ages?

Aguilar:       Between the ages of 12 and 16.

Fashing, M.J:  Okay. And -- but she had not yet reached the age of 16; is that correct?

Aguilar:       Yes.

Fashing, M.J:  Okay. And are you a member of San Felipe Pueblo?

Aguilar:       I am, yes.

Fashing, M.J:  Okay. Are you satisfied with that factual basis, Mr. Marshall?

Marshall:      Yes, Your Honor.

Fashing, M.J:  Okay. Mr. Aguilar, are you pleading guilty here today because you are, in fact, guilty of the charge against you?

Aguilar:       Yes.

. . . .

Fashing, M.J:  All right. Mr. Aguilar, how do you plead to the felony charge of abusive sexual contact as alleged in Count Two of the indictment, guilty or not guilty?

Aguilar:       Guilty.

Fashing, M.J:  All right. Sir, I find that you are competent and capable of entering an informed plea, that you are aware of the nature of the charge against you and the consequences of your plea and that your plea is knowing and voluntary and supported by sufficient facts.  I, therefore, accept your guilty plea and I now adjudge you guilty.  I will defer acceptance of the plea agreement to Judge Browning.

- 6 -

Plea Tr. at 16:3-18:15 (Fashing, M.J., Aguilar, Marshall).  The Court later rejected Aguilar's plea agreement with the United States, because Aguilar did not admit to having used force in making sexual contact with the minor victim, an element that the Abusive Sexual Contact of a Minor charge in the Indictment requires under 18 U.S.C. § 2244(a)(5).  See Minute Order, filed March 27, 2023 (Doc. 96)(text-only entry); Sentencing Minute Sheet, filed May 19, 2023 (Doc. 111).  Cf. Memorandum Opinion and Order at 37-47, filed March 29, 2023 (Doc. 99)("Objections MOO")(concluding that, for Guidelines purposes, there is insufficient evidence that Aguilar used force, threats, fear, or intimidation in committing his crime).  The United States then superseded its initial Indictment, and the Grand Jury charged Aguilar with three counts: one count under 18 U.S.C. §§ 1153, 2244(a)(5), 2246(3), and two counts under 18 U.S.C. §§ 1153, 2244(a)(3), 2246(3).  See Superseding Indictment at 1-2, filed October 4, 2023 (Doc. 126)("Superseding Indictment").  At a pretrial hearing, when Aguilar indicated his intention to testify in his own defense, the Court warned him that his plea colloquy testimony -- although inadmissible as substantive evidence at trial -- could be used against him in a perjury prosecution, a position with which Aguilar agreed.  See Draft Transcript of Hearing at 57:23-58:25, taken January 11, 2024 (Court, Hart).

Aguilar's case proceeded to trial.  See Clerk's Minutes for Jury Trial Held January 19, 2024, to January 23, 2024 (dated January 19, 2024), filed January 19, 2024 (Doc. 206)("Clerk's Minutes").[4]  Doe testified during the United States' case-in-chief, where she recounted incidents in which Aguilar touched her sexually.  See Jan. 22 Tr. at 39:2-112:19 (Court, Clerk, Law Clerk,

---

[4]Although the Clerk's Minutes are dated on the first day of trial, these minutes contain information from throughout the entire trial.  See Clerk's Minutes at 1-15.

Doe, Harrison, Marshall).  She testified that, during a day on which the Dallas Cowboys game was on the television, Aguilar had unlocked a door to a room in which Doe was lying down, and proceeded to touch Doe on "[her] butt, and then [her] breasts over my bra, and then [her] private part over my clothes."  Jan. 22 Tr. at 52:7-8 (Doe).  Doe later clarified that "private part" refers to her genitalia.  Jan. 22 Tr. at 52:12-14 (Doe, Marshall).  Doe also testified that, on another day approximately "a few weeks" later, Jan. 22 Tr. at 70:17 (Doe), Doe had friends over and an intoxicated Aguilar had "come looking for [her]," Jan. 22 Tr. at 65:14-17 (Doe, Marshall).  Doe testified that she and her friends had attempted to hide Doe by covering her with blankets, but that Aguilar had "tried to pull" the covers off, and eventually "got his hand underneath the blanket" and touched "in-between [her] thigh, and touched [her] private part."  Jan. 22 Tr. at 67:13-68:6 (Doe, Marshall).  See id. at 54:21-58:5 (Doe, Marshall).

After the close of the United States' case-in-chief, Aguilar took the stand and made the following statements about his contact with Doe:

| Harrison: | Now, I'm going to ask you directly, did you ever have sexual contact with [Doe] . . . [?] |
| Aguilar: | No. |
| . . . . | |
| Harrison: | So during the Dallas Cowboys incident did you ever touch [Doe]? |
| Aguilar: | No. |
| . . . . | |
| Harrison: | So I want to be clear.  Some of this is my fault for trying to go into incidents.  Have you ever . . . sexually touched [Doe]? |
| Aguilar: | No. |

| Harrison: | Have you ever touched [Doe's] vagina . . . directly or through clothes? |
|---|---|
| Aguilar: | No. |
| Harrison: | Have you ever touched [Doe's] breasts either directly or through clothes? |
| Aguilar: | No. |

Jan. 23 Tr. at 106:19-21 (Harrison, Aguilar); id. at 109:22-24 (Harrison, Aguilar); id. at 115:11-20 (Harrison, Aguilar).

The jury convicted Aguilar of two counts of Abusive Sexual Contact under 18 U.S.C. § 2244(a)(3) -- Counts 2 and 3 of the Superseding Indictment -- but acquitted Aguilar of the use-of-force sexual offense, Abusive Sexual Contact under 18 U.S.C. § 2244(a)(5).  See Verdict at 1-2, filed January 23, 2024 (Doc. 204).  The Superseding Indictment's Counts 2 and 3 referred to Aguilar's conduct during incident that occurred on the day of the Dallas Cowboys game.  See Jury Instruction No. 14, at 20, included in Court's Final Jury Instructions, filed January 24, 2024 (Doc. 205)("Instr.")("Count 2 refers to one of the alleged incidents on the day of the Dallas Cowboys game."); Instr. No. 15, at 21 ("Count 3 refers to the other alleged incident on the day of the Dallas Cowboys game.").  An important difference between Count 2 and Count 3 is how those Counts define "sexual contact" for purposes of the charged violations of 18 U.S.C. §§ 2244(a)(3), 2246(3).  Compare Instr. No. 14, at 20 ("To find Mr. Aguilar guilty[,] . . . you must be convinced that . . . Mr. Aguilar knowingly engaged in and caused sexual contact with [Jane Doe]. . . . For purposes of count 2 of the indictment, 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia of any person . . . ."), with Instr. No. 15, at 20 ("To find Mr. Aguilar guilty . . . , you must be convinced that . . . Mr. Aguilar knowingly engaged in

and caused sexual contact with [Jane Doe] . . . . For purposes of count 3 of the indictment, 'sexual contact' means the intentional touching, either directly or through the clothing, of the breast(s) of any person . . . .").

**PROCEDURAL BACKGROUND**

First, the Court reviews the arguments that the United States makes in favor of its Obstruction Motion, and also Defendant Kyle Aguilar's Response in Opposition to United States Objection to the Presentence Report and Motion for Enhancement of Defendant's Sentence for Obstructing or Impeding the Administration of Justice Pursuant to USSG § 3C1.1 at 5, filed April 30, 2024 (Doc. 231)("Obstruction Response").   Next, the Court reviews and describes the arguments that Aguilar makes in support of the Merger Motion, and the United States' Response to Defendants' Motion to Merge Counts 2 and 3 Into a Single Count of Conviction, filed March 8, 2024 (Doc. 216)("Merger Motion Response").   The Court also describes the parties' arguments at the hearing on March 20, 2024.  See Clerk's Minutes, filed March 20, 2024 (Doc. 222).  Last, the Court reviews the United States' arguments in the United States' Sentencing Memo. and also describes the sentencing requests made by Aguilar at the sentencing hearing.  See Draft Transcript of Sentencing Hearing, May 9, 20204, at 6:24-10:13 (held May 9, 2024)(Court, Hart)("Sentencing Tr.").

1.    **The Obstruction Motion**.

In the Obstruction Motion, the United States objects to the United States Probation Office's calculation of Aguilar's Guidelines offense level in the Third Presentence investigation Report, filed March 22, 2024 (Doc. 220), because the United States asserts that Aguilar should be subject to a 2-level enhancement under U.S.S.G. § 3C1.1 given that he "'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation,

prosecution, or sentencing of'" his offense, and "the obstructive conduct related to . . . the defendant's offense of conviction . . . .'"  Obstruction Motion at 4 (quoting U.S.S.G. § 3C1.1). The United States notes that the Guidelines' commentary for § 3C1.1 indicates that examples of conduct which will trigger the enhancement include "'committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction,'" and "'providing materially false information to a judge or magistrate judge.'"  Obstruction Motion at 4 (quoting U.S.S.G. § 3C1.1 cmt. n.4(B), (F)).   The United States contends that "[c]ommitting perjury or providing materially false information to a judge constitutes a violation and warrants Defendant receiving this enhancement." Obstruction Motion at 4 (citing United States v. Soto, 660 F.3d 1264, 1268 (10th Cir. 2011)(Gorsuch, J.); United States v. Head, 927 F.2d 1361, 1372 (6th Cir. 1991)(Ballantine, C.J., sitting by designation); United States v. Jim, 877 F. Supp. 2d 1018, 1043 (D.N.M. 2012)(Browning, J.), aff'd and remanded for resentencing, 786 F.3d 802 (10th Cir. 2015)).  The United States asserts that, given Aguilar's prior statements in front of Magistrate Judge Fashing, Aguilar's trial testimony is an "incident of perjury."  Obstruction Motion at 5.

Aguilar responds that U.S.S.G. § 3C1.1's enhancement is not appropriate in this case, because "all the records related to that previous plea do not identify a victim and do not state the reason for any touching," and therefore "there is not sufficient evidence that Mr. Aguilar lied during any portion of this case."  Obstruction Response at 1.  More specifically, Aguilar asserts that his prior statements as part of his plea colloquy said only that

> he touched the minor "over her clothes" and "over her genitals." But these statements do not state Mr. Aguilar's intent in doing so.  It is thus just as likely from the statements that the touching was accidental than it was purposeful.  And even

if it were purposeful, there is no statement that it was done in a sexual manner.  Just
like before, this ambiguity dooms any allegation of perjury.

Obstruction Response at 5 (source of quoted material not cited).  Aguilar thus argues that the Court

should overrule the United States' objection and decline to apply the 2-level enhancement under

U.S.S.G. § 3C1.1.

**2.**   **The Merger Motion.**

Aguilar's argument in the Merger Motion is based on the idea that his convictions on

Counts 2 and 3 cannot stand, because "the evidence presented to the jury was of a single occurrence

of sexual conduct."  Merger Motion at 1.  He states that these convictions violate the Double

Jeopardy Clause, because they are multiplicitous in that the two counts "'cover the same criminal

behavior.'"  Merger Motion at 2 (quoting United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir.

1997)).  Aguilar's argument, then, raises questions about the proper unit of prosecution for abusive

sexual contact under 18 U.S.C. §§ 2244(a)(3), 2246(3).[5]  Aguilar notes that determining the unit

of prosecution is "generally a matter of statutory interpretation."  Merger Motion at 2 (citing United

States v. Elliott, 937 F.3d 1310, 1313 (10th Cir. 2019)).   Aguilar contends that 18 U.S.C.

§ 2246(3)'s "unit of prosecution" for sexual contact is "one count for all sexual contacts occurring

in a single occurrence of sexual abuse."  Merger Motion at 2.  He argues that the statute, which

defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the

genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse,

---

[5]The United States Court of Appeals for the Tenth Circuit explains that unit of prosecution
analysis is "an inquiry into the 'minimum amount of activity for which criminal liability attaches'
for each charge under a single criminal statute."  United States v. Rentz, 777 F.3d 1105, 1108 (10th
Cir. 2015)(Gorsuch, J.)(quoting United States v. Cureton, 739 F.3d 1032, 1041 (7th Cir. 2014)).
See Callanan v. United States, 364 U.S. 587, 597 (1961)(noting that unit-of-prosecution analysis
concerns "whether conduct constitutes one or several violations of a single statutory provision").

humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," 18 U.S.C. § 2246(3), does not authorize the United States to bring two counts under this case's facts, see Merger Motion at 2-6.  Aguilar cites to various State cases -- and one federal case interpreting State law -- which he states support his unit-of-prosecution assertions, see Merger Motion at 3-5 (citing Rhoden v. Rowland, 10 F.3d 1457, 1462 (9th Cir. 1993); Quintano v. People, 105 P.3d 585, 592 (Colo. 2005); Herron v. State, 1991-NMSC-012, ¶¶ 14-21, 111 N.M. 357, 361-62, 805 P.2d 624, 628-29 (Ransom, J.); Vaughan v. State, 614 S.W.2d 718, 722 (Mo. Ct. App. 1981); Sanchez-Rengifo v. United States, 815 A.2d 351, 358-59 (D.C. 2002)), and also one United States District Court from the United States Court of Appeals for the Tenth Circuit, see Merger Motion at 4 (citing Souser v. Little, No. CIV 22-1718, 2023 WL 5625292, at *6 (D. Colo. August 31, 2023)(Moore, J.); and one case from the United States District Court for the District of South Dakota, see Merger Motion at 4 (citing United States v. Ziegler, Case No. CR 07-30024, Doc. 81, at 17 (D.S.D. January 23, 2008)(Schreier, C.J.)).

The United States agrees with Aguilar that "unit of prosecution" is a matter of statutory interpretation, Merger Motion Response at 3, and asserts that the relevant test is whether "'each provision require[s] proof of a fact which the other does not,'" Merger Motion Response at 3 (quoting United States v. Patterson, 760 F. Supp. 2d 1116, 1125 (D.N.M. 2009)(Browning, J.)). The United States asserts that, when assessed under this test, "[t]he touching of separate body parts creates a separate and distinct crime," because such touchings "require proof of different facts." Merger Motion Response at 4.  The United States asserts that "[s]eparate sexual acts can take place in one sexual encounter," and "[i]t does not matter that they are close in time."  Merger Motion

Response at 3-4 (citing <u>United States v. Yazzie</u>, 743 F.3d 1278, 1294 (9th Cir. 2014), <u>and</u> <u>United States v. Neha</u>, 376 F. Supp. 2d 1227, 1230 (D.N.M. 2005)(Browning, J.)).

In support of its statutory theory, the United States analogizes to two related statutes: (i) 18 U.S.C. § 2246(2)(D)'s definition of "sexual act," Merger Motion Response at 4; and (ii) "the line of cases related to child pornography," Merger Motion Response at 5.  As to the first statute, the United States cites to and discusses a case from the United States Court of Appeals for the Eighth Circuit, <u>United States v. Two Elk</u>, 536 F.3d 890, 899 (8th Cir. 2008)(Ebel, J., sitting by designation)("<u>Two Elk</u>"), in which the Eighth Circuit concludes that 18 U.S.C. § 2246(2)(A)'s definition of "sexual act" -- which states that "sexual act" means "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight," 18 U.S.C. § 2246(2)(A) -- indicates a Congressional intent to allow multiple prosecutions for sexual acts committed during the same encounter, so long as those sexual acts pertain to a separate body part listed in the statute, <u>see</u> Merger Motion Response at 4; <u>Two Elk</u>, 536 F.3d at 898-99.  The United States notes that the Eighth Circuit's conclusion rests in part on the statute's use of the disjunctive:

> "Each of the permutations enumerated in § 2246(2) constitutes a sexual act and they are linked in the disjunctive. It follows, then, that engaging in multiple sexual acts (as listed in § 2246(2)) would amount to multiple violations of § 2241(c) and would leave the perpetrator susceptible to multiple punishments thereunder."

Merger Motion Response at 4 (quoting <u>Two Elk</u>, 536 F.3d at 899).  The United States argues that this analytical approach is also appropriate in an analysis of 18 U.S.C. § 2246(3), because that statute "also includes the conduct in the disjunctive, indicating the Congressional intent to have the charges as separate crimes, making them separate act offenses."  Merger Motion Response at 4.

As for the analogizing to child pornography offenses, the United States contends that, in those cases, individual prosecutions do not arise from "the continuous 'use' of the child, but rather each distinct image or video depicting a child."  Merger Motion Response at 5 (quoting United States v. Smith, 919 F.3d 1, 16 (1st Cir. 2019)).  The United States contends that the "justification" for this approach is policy based, namely, the "'unequivocal intent to protect children from the abuse inherent in the production of sexually explicit materials.'"  Merger Motion Response at 5 (quoting United States v. Esch, 832 F.2d 531, 542 (10th Cir. 1987)(Baldock, J.)).[6]  The United States argues that, similarly, "there is a strong justification in protecting minors from hands on sexual abuse," and, thus, "[e]ach touching occurred on its own and can serve as a separate criminal conviction."  Merger Motion Response at 5.  The United States also criticizes Aguilar's reading of the State court cases, which the United States characterizes as "out of context," Merger Motion Response at 5, id. at 8, and also states that United States v. Ziegler, Case No. CR 07-30024, Doc. 81, at 17 (D.S.D. January 23, 2008)(Schreier, C.J.), relies on  Eight Circuit precedent that changed with Two Elk, see Merger Motion Response at 5.

---

[6]The United States' explanation that this policy choice is the "justification" of the Tenth Circuit's statutory analysis is potentially misleading.  For clarity, the Court notes that the quoted material in its entirety indicates that the Tenth Circuit does not use policy considerations to reach its conclusion on statutory meaning, but rather that the Tenth Circuit's study of the legislative history reveals that Congressional policy choices informed the statute's wording:

> The criminal acts in the instant case were not simultaneous.  Again, our conclusion that the correct unit of prosecution is each use of the children to create a visual depiction is supported by the legislative history, which indicates an unequivocal intent to protect children from the abuse inherent in the production of sexually explicit materials.

United States v. Esch, 832 F.2d at 542.

On March 20, 2024, the Court heard the parties' arguments on the Merger Motion. See Clerk's Minutes (dated March 20, 2024), filed March 20, 2024 (Doc. 222); Draft Transcript of Motion Hearing, March 20, 2024 at 10:14-51:17 (taken March 20, 2024)(Court, Harrison, Marshall)("March 20 Tr."). At the hearing, the parties elaborated on their arguments, with special emphasis on a case from the United States Court of Appeals for the Ninth Circuit, United States v. Yazzie, 743 F.3d 1278 (9th Cir. 2014)("Yazzie"). The United States argues that Yazzie stands for the proposition that many discrete sexual acts can take place in the same sexual encounter. See March 20 Tr. at 27:2-29:5 (Court, Marshall). Aguilar argues that Yazzie is disanalogous to his case, because the definition of "sexual act" under 18 U.S.C. § 2246(2) -- the definition at issue in Yazzie -- contains four discrete subdivisions, see 18 U.S.C. § 2246(2)(A)-(D), whereas "sexual contact . . . gets a single numbered subdivision," March 20 Tr. at 36:24-37:1 (Harrison). Aguilar states that he is "okay with the way the Yazzie court separated out the unit of prosecution for sexual act because of the way that statute read[s]." March 20 Tr. at 38:21-24 (Harrison). See id. at 49:3-50:7 (Harrison). Aguilar also discusses United States v. Rentz, 777 F.3d 1105 (10th Cir. 2015)(en banc)(Gorsuch, J.), which deals with the unit of prosecution for 18 U.S.C. § 924(c) -- which proscribes the use or carrying of a firearm during a violent crime or drug trafficking offense -- and states that that case instructs that, "the fact that there is no Blockburger [v. United States, 284 U.S. 299, 301 (1932)[7]] concerns, doesn't ameliorate what we have to do here which is

---

[7]The Blockburger v. United States rule is often known as the "same elements test." United States v. Pearson, 203 F.3d 1243, 1268 (10th Cir. 2000). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. at 304. "'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the

ultimately a statutory interpretation issue." March 20 Tr. at 35:11-15 (Harrison). Aguilar also again points out the "the U.S. Supreme Court has said that lenity is part of this analysis." March 20 Tr. at 43:16-17 (Harrison). The Court expressed that it has "been a little bit concerned that the analysis by both the Government and the defendant are sort of unmoored from the language of the statute," March 20 Tr. at 45:19-22 (Court), and stated that it wanted to "give this some thought," March 20 Tr. at 50:12-51:11 (Court).

###    3.    The United States Sentencing Memo.

In its Sentencing Memo., the United States argues that the Court should sentence Aguilar to "48 months of incarceration, followed by 10 years of supervised release." United States Sentencing Memo. at 1. The United States explains that, because each conviction under 18 U.S.C. § 2244(a)(3) carries a two-year sentence of imprisonment, 48 months is the maximum statutory sentence that Aguilar can receive. See United States Sentencing Memo. at 3. The United States argues that a sentence at the statutory maximum is warranted, because: (i) the nature, circumstances and seriousness of the offense, see United States Sentencing Memo. at 4-5; and (ii) Aguilar's "conduct and history," United States Sentencing Memo. at 5-7. As for the first argument, the United States contends that Aguilar took advantage of his minor niece -- who had a difficult upbringing -- and put Doe in danger of lasting psychological harm. See United States Sentencing Memo. at 4. The United States also contends that Aguilar "already will be receiving a variance down due to the statutory maximum coming in lower than the guidelines," because the "sentencing guidelines return a range of 51-63 months." United States Sentencing Memo. at 4.

---

defendant from prosecution and punishment under the other.'" Blockburger v. United States, 284 U.S. at 304 (quoting Morey v. Com., 108 Mass. 433, 434 (1871)).

As for Aguilar's "character and nature," the United States contends that Aguilar "repeatedly violated the law and his conditions of release," and "regularly pushed the limits of his pre-trial supervision."  United States Sentencing Memo. at 5.  The United States also points to prior incidents when Aguilar "abuse[d] his power" as a Tribal official, and concludes that Aguilar "repeatedly has shown he is not an individual to be placed in a position of authority over others, because he abuses it for his own pursuits of pleasure and power."  United States Sentencing Memo. at 6.  Moreover, the United States contends that Aguilar "chose to perjure himself in an attempt to avoid prosecution," and quotes the Supreme Court of the United States for the proposition that: "[s]omeone who 'perjures [themself] in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process.'"  United States Sentencing Memo. at 6 (quoting United States v. Dunnigan, 507 U.S. 87, 97 (1993)).  The United States concludes:

> Defendant sexually abused a minor and chose to lie about it on the stand. He abused the victim more than once. This caused lasting psychological harm to Jane Doe. Based on Defendant's criminal history and the nature of the offense the United States recommends a sentence of 48 months of incarceration to be followed by ten years of supervised release.

United States Sentencing Memo. at 7.  At the sentencing hearing, Aguilar called into question the United States' contentions about Doe's lasting psychological impacts, particularly involving the PSR's statements that the abuse caused her trauma which affected her schooling: "I was very surprised to see that being that she testified under oath that she was valedictorian or salutatorian of her class, so she clearly succeeded greatly in school."  Sentencing Tr. at 7:2-8 (Hart)(referencing PSR ¶ 19, at 6-7).  Aguilar also disagreed with the United States' contentions about the seriousness of the offense of conviction, stating:

> [T]here's also really a lack of evidence whatsoever . . . we're dealing with a single -- a conviction based on a single sentence of testimony that goes no further than, you know, he had -- that he had -- that -- with her stating that Mr. Aguilar had touched her.  No description of any touching, no description of what happened, what -- how these things occurred, other than: He touched me; I got up, and I left.  So we think that with the -- such the limited amount -- such a limited amount of evidence, that also would counsel in favor of Mr. Aguilar not receiving a guideline sentence in this case, which would be the statutory maximum.

Sentencing Tr. at 7:20-8:6 (Hart).  Aguilar also asserts that he "has deep ties to the community in that he has his own children," and also that, although his Guidelines criminal history range is II, his "criminal history is very low . . . .  [W]e're talking about a DWI and a possession of drug paraphernalia.  We're not talking about violent crimes."  Sentencing Tr. at 8:17-24 (Hart).  Aguilar concludes that a four-year sentence -- the statutory maximum -- would be "unusually harsh in this case" and argues that the Court should instead sentence him to time served, which would be "a little more than six months."  Sentencing Tr. at 9:2-4 (Hart).  The Court sentenced Aguilar to the Federal Bureau of Prisons' custody for a term of 48 months, followed by five years of supervised release.  See Sentencing Tr. at 23:9-24:18 (Court).

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.  Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice

in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530, 541-42 (2013).

The Guidelines should provide a starting point for the court's determination of a proper sentence.

See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis

with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v.

United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve

uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they

remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater

than necessary, to comply with" the four statutorily defined purposes enumerated in

18 U.S.C. § 3553(a)(2):

> **(A)**    to reflect the seriousness of the offense, to promote respect for the
> law, and to provide just punishment for the offense;
>
> **(B)**    to afford adequate deterrence to criminal conduct;
>
> **(C)**    to protect the public from further crimes of the defendant; and
>
> **(D)**    to provide the defendant with needed educational or vocational
> training, medical care, or other correctional treatment in the most effective
> manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal
> statute . . . shall be sentenced in accordance with the provisions of this chapter so
> as to achieve the purposes set forth in subparagraphs (A) through (D) of section
> 3553(a)(2) to the extent that they are applicable in light of all the circumstances of
> the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further

consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and

characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing

Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption

in favor of the advisory[8] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[8]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory.  See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated to apply, however, a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In

- 22 -

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62. See United States v. Sandoval, No. CR 22-1010 JB, 2024 WL 2882117, at *28-31 (D.N.M. June 7, 2024)(imposing sentence and discussing 18 U.S.C. § 3553(a) factors).

---

> practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

- 23 -

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the United States Probation Office ("USPO") "must conduct a presentence investigation and submit a report to the court . . . ."  Fed. R. Crim. P. 32(c)(1).  A presentence report ("PSR") must apply the advisory sentencing Guideline, meaning that it must:

(A)   identify all applicable guidelines and policy statements of the Sentencing Commission;

(B)   calculate the defendant's offense level and criminal history category;

(C)   state the resulting sentencing range and kinds of sentences available;

(D)   identify any factor relevant to:

(i)    the appropriate kind of sentence, or

(ii)   the appropriate sentence within the applicable sentencing range; and

(E)   identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1).  A presentence report also must provide additional information, including:

(A)   the defendant's history and characteristics, including:

(i)    any prior criminal record;

(ii)   the defendant's financial condition; and

(iii)  any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

(B)   information that assesses any financial, social, psychological, and medical impact on any victim;

(C)   when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

(D)     when the law provides for restitution, information sufficient for a restitution order;

(E)     if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

(F)     a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

(G)     any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report.  See Fed. R. Crim. P. 32(f).  Parties must make their objections in writing within fourteen days of receiving the PSR.  See Fed. R. Crim. P. 32(f)(1).  Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report."  Fed. R. Crim. P. 32(f)(1).  For example, a party can object to a PSR's statement of facts.  See, e.g., United States v. Garcia, No. CR 20-1370, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a presentence report misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries).  If a party raises a factual objection, it must present "information to cast doubt on" the presentence report's recitation of the facts.  United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994).  To make a factual objection, however, the party must make "specific allegations" of factual inaccuracy: "[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make 'specific allegations' of factual inaccuracy."  United States v. Chee, 514 F.3d 1106, 1115 (10th Cir. 2008)(quoting United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006)).  See United States v. McDonald, 43

F.4th 1090, 1095-96 (10th Cir. 2022)(concluding that a defendant who "contend[s] only that the source of the information was not credible or reliable, but . . . do[es] not claim that the facts contained in the report are untrue" does not properly invoke the district court's fact-finding obligation; and explicitly holding that a challenge to the reliability of the government's evidence in a PSR is not sufficient to trigger the district court's fact finding obligation).  If, however, no party raises any objection to a PSR's facts, the district court properly may rely on the PSR's facts. See United States v. Harrison, 743 F.3d 760, 763 (10th Cir. 2014).

A party can also object that the USPO miscalculated a defendant's criminal history category.  See, e.g., United States v. Chavez, No. CR 18-0836, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history category by several points).  Similarly, a party can object that a PSR impermissibly applies a base offense level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base offense level); that a PSR should have applied an additional base offense level enhancement, see, e.g., United States v. Talk, No. CR 19-1994, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the presentence report should have applied a 4-level enhancement to the defendant's base offense level); or that a PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609, CR 19-3611, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the presentence report should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance.  Rule 32(f)(3) establishes that, "[a]fter receiving objections, the probation officer may meet with the parties to discuss the objections.  The probation officer may then investigate further and revise the presentence report as appropriate."  Fed. R. Civ. P. 32(f)(3).  In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently.  If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court.  If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them."  Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  When resolving factual objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence.  See United States v. Tindall, 519 F.3d 1057, 1063 (10th Cir. 2008).  Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the Court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.  See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Court may base its conclusion "on

evidence presented at trial, undisputed statements in the PSR, and evidence presented at the

sentenc[ing] hearing." United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States

v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

## LAW REGARDING U.S.S.G. § 3C1.1'S PERJURY ENHANCEMENT

U.S.S.G. § 3C1.1 provides an adjustment to a defendant's base offense level:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct
> or impede, the administration of justice with respect to the investigation,
> prosecution, or sentencing of the instant offense of conviction, and (2) the
> obstructive conduct related to (A) the defendant's offense of conviction and any
> relevant conduct; or (B) a closely related offense, increase the offense level by 2
> levels.

U.S.S.G. § 3C1.1.  As it pertains to perjury as a form of obstruction, the provision's commentary

states, in relevant part:

> The following is a non-exhaustive list of examples of the types of conduct
> to which this adjustment applies:
>
> . . . .
>
> > (B)    committing, suborning, or attempting to suborn
> > perjury, including during the course of a civil proceeding if such
> > perjury pertains to conduct that forms the basis of the offense of
> > conviction;
>
> > . . . .
>
> > (F)    providing materially false information to a judge or
> > magistrate judge[.]

U.S.S.G. § 3C1.1 cmt. n.4(B), (F).  As the Supreme Court has observed, the commission of perjury

is relevant to a court's sentencing determinations, because "it reflects on a defendant's criminal

history, on her willingness to accept the commands of the law and the authority of the court, and

on her character in general." United States v. Dunnigan, 507 U.S. 87, 94 (1993)("Dunnigan").

Moreover, "[i]t is rational for a sentencing authority to conclude that a defendant who commits a

- 28 -

crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening

to society and less deserving of leniency than a defendant who does not so defy the trial process."

Dunnigan, 507 U.S. at 97.  The Supreme Court further has stated that, when assessing an allegation

of perjury for the purposes of U.S.S.G. § 3C1.1, courts "rely upon the definition that has gained

general acceptance and common understanding under the federal criminal perjury statute, 18

U.S.C. § 1621,[9]" under which "[a] witness testifying under oath or affirmation violates this statute

if she gives false testimony concerning a material matter with the willful intent to provide false

---

[9]The perjury statute reads:

Whoever --

> **(1)** having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

> **(2)** in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.  This section is applicable whether the statement or subscription is made within or without the United States.

18 U.S.C. § 1621.  In Dunnigan, the Supreme Court observes that this provision has a strong historical pedigree: the "federal definition of perjury by a witness has remained unchanged in its material respects for over a century" and has roots in English legal regimes dating to the Elizabethan era.  507 U.S. at 94.

testimony, rather than as a result of confusion, mistake, or faulty memory," Dunnigan, 507 U.S. at 94.

In Dunnigan, the Honorable Anthony Kennedy, Associate Justice of the Supreme Court, writing for a unanimous Supreme Court, limits the enhancement's application to circumstances in which the district court makes specific findings related to the defendant's perjurious conduct.  See 507 U.S. at 95-96.  The Supreme Court writes: "Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury."  507 U.S. at 95.  Rather, "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out."  Dunnigan, 507 U.S. at 95.  Taking into account that statutory definition, the Tenth Circuit has distilled the basic necessary independent factual findings that a court must find in order to apply U.S.S.G. § 3C1.1's perjury enhancement: "a district court must conclude the defendant '(1) gave false testimony under oath, (2) about a material matter, and (3) the false testimony was willful and not the result of confusion, mistake or faulty memory.'"  United States v. Rodebaugh, 798 F.3d 1281, 1300 (10th Cir. 2015)(quoting United States v. Poe, 556 F.3d 1113, 1130 (10th Cir. 2009)).  See Dunnigan, 507 U.S. at 95 (noting that, while "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," it "is sufficient . . . if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury").  Last, the Court notes that "[t]he Tenth Circuit's standards are stricter than those expressed in *Dunnigan*" in one respect: "We require that a district court be explicit about which representations by the defendant constitute

perjury."  United States v. Hawthorne, 316 F.3d 1140, 1146 (10th Cir. 2003).  See United States v. Massey, 48 F.3d 1560, 1573 (10th Cir. 1995)(Ebel, J.)("[A]lthough *Dunnigan* did not require sentencing judges specifically to identify the perjurious statement, it has long been a requirement in the Tenth Circuit that the perjurious statement be identified, at least in substance.").  The Court has applied this enhancement previously.  See United States v. Chapman, No. CR 11-0904, 2012 WL 2574814, at *11 n.4 (D.N.M. June 22, 2012)(Browning, J.), aff'd, 521 F. App'x 710 (10th Cir. 2013).

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment *within the range* prescribed by statute."  530 U.S. at 481 (emphasis in original).  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(citing Ring v. Arizona, 536 U.S. 584, 602 (2002); Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570

U.S. 99 (2012)).  In <u>United States v. Booker</u>, however, the Supreme Court held that, because the sentencing guideline ranges are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime."  <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing <u>United States v. Booker</u>, 543 U.S. at 259).  <u>See</u> <u>United States v. Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of *Apprendi*'s requirement."  (quoting <u>United States v. Booker</u>, 543 U.S. at 221)(second alteration added by <u>United States v. Booker</u>)).  More recently, the Supreme Court held that the requirements in <u>Apprendi v. New Jersey</u> apply to facts that increase a defendant's mandatory minimum sentence.  <u>See</u> <u>Alleyne v. United States</u>, 570 U.S. at 103.

In <u>United States v. Magallanez</u>, 408 F.3d 672 (10th Cir. 2005)(McConnell, J.), the Tenth Circuit held that <u>Blakely v. Washington</u> and <u>United States v. Booker</u> did not change the district court's enhancement findings analysis.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 684-85. <u>United States v. Magallanez</u> involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses' testimony of the various amounts that they had sold to the defendant -- attributed 1,200 grams of methamphetamine to the defendant and used that amount to calculate his sentence under the Guidelines.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 682.  The district court's findings

increased the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's

50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United

States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before

and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the

power to consider the broad context of a defendant's conduct, even when a court's view of the

conduct conflicted with the jury's verdict."   United States v. Magallanez, 408 F.3d at 684.

Although United States v. Booker made the Guidelines ranges "effectively advisory," United

States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirmed that "district courts are still required

to consider Guideline ranges, which are determined through application of the preponderance

standard, just as they were before."  United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a

dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held

that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United

States v. Olsen, 519 F.3d 1096, 1105(10th Cir. 2008)(quoting United States v. Washington, 11

F.3d 1510, 1516 (10th Cir. 1993)).[10]  "[T]he application of an enhancement . . . does not implicate

---

[10]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation,

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No.

CR 11-2563, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit

applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the

fact would increase a defendant's sentence "above the statutory maximum permitted by the statute

of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States

v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only

where the fact at issue increases his or her sentence beyond the statutory maximum. See United

States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not

assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory

maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir.

2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that

_____

because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms). Subsequent to United States v. Washington, the Tenth Circuit reiterated the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

sentencing factors need not be charged in an indictment and need only be proved to the sentencing

judge by a preponderance of the evidence").[11]  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in
> Alleyne v. United States . . . expands the rule from Apprendi v. New
> Jersey, . . . (holding that facts that increase the maximum sentence a defendant
> faces must be proven to a jury beyond a reasonable doubt), to cover facts that
> increase the mandatory minimum sentence, as well as the maximum sentence, it
> does not prohibit district judges from continuing to find advisory sentencing factors
> by a preponderance of the evidence.  See [United States v. Sangiovanni, No. CR
> 10-3239,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning,
> J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315.  The Supreme Court has clarified that

"[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . .

And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as

to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable

doubt."  United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting Alleyne v. United States,

570 U.S. at 112-14).  Further, the Tenth Circuit has determined that a district court could use its

own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne

---

[11]United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014) is an unpublished
opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is
persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not
precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished).  The Court concludes
that United States v. Hendrickson has persuasive value with respect to a material issue, and will
assist the Court in its disposition of this Memorandum Opinion and Order.

v. United States, "so long as the court does not use its own drug quantity finding to alter the defendant's *statutory* sentencing range." United States v. Cassius, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

### LAW REGARDING DOUBLE JEOPARDY AND MULTIPLICITOUS COUNTS

The guarantees in the Fifth Amendment to the Constitution of the United States provide that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.   The Fifth Amendment protects individuals not only from "successive prosecutions, but also [from] successive punishments for the same offense." United States v. Morris, 247 F.3d 1080, 1083 (10th Cir. 2001)(citing United States v. Dixon, 509 U.S. 688, 696 (1993)). "Included in double jeopardy protections are multiple punishments for the same offense based on the total punishment authorized by the legislature." United States v. Jackson, 736 F.3d 953, 955 (10th Cir. 2013).   Accordingly, the Tenth Circuit's "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause." United States v. Morris, 247 F.3d at 1083 n.2. "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." United States v. McCullough, 457 F.3d 1150, 1162 (10th Cir. 2006)(quoting United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997)).  "Although 'multiplicity is not fatal to an indictment,' . . . multiplicitous counts which may result in multiplicitous convictions are considered 'improper because they allow multiple punishments for a single criminal offense.'" United States v. McCullough, 457 F.3d at 1162 (first quoting United States v. Johnson, 130 F.3d at 1424, and then quoting United States v. Jenkins, 313 F.3d 549, 557 (10th Cir. 2002)).  The issue of multiplicity may arise when a defendant is faced with an indictment charging multiple violations of the same statute from relatively contemporaneous conduct, such as multiple assault charges stemming from two episodes occurring close in time, see United States v. Segien, 114 F.3d 1014,

1022 (10th Cir. 1997)(discussing multiple 18 U.S.C. § 111 charges), abrogated on other grounds by Jones v. United States, 526 U.S. 227 (1999), or simultaneously mailing to the IRS several different false documents in support of a single tax return, see United States v. Bettenhausen, 499 F.2d 1223, 1234 (10th Cir. 1974).

In such scenarios, the relevant inquiry focuses on the statute's "unit of prosecution": "If 'the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate units of prosecution.'" United States v. Elliott, 937 F.3d 1310, 1313 (10th Cir. 2019)(quoting United States v. Polouizzi, 564 F.3d 142, 154 (2d Cir. 2009)). A statute's "unit of prosecution" means "the 'minimum amount of activity for which criminal liability attaches' for any charge under an applicable criminal statute." United States v. Maldonado-Passage, 56 F.4th 830, 839 (10th Cir. 2022)(quoting United States v. Rentz, 777 F.3d 1105, 1108 (10th Cir. 2015)). Courts have long viewed this question as primarily a question of legislative intent: in 1777, Lord Mansfield decided that a man who had sold four loaves of bread on a Sunday had committed only one offense -- and not four -- of a statute that proscribed the "exercise [of] any worldly Labour, Busines or Worke of their ordinary Callings upon the Lords day or any part thereof (Workes of Necessity and Charity onely excepted)." Sunday Observance Act, 29 Car. 2, ch. 7 (1677) (Eng.). See Crepps v. Durden, 2 Cowp. 640, 98 Eng. Rep. 1283, 1283 (K.B. 1777). Lord Mansfield's reasoning is that "repeated offences are not the object which the Legislature had in view in making the statute: but singly, to punish a man for exercising his ordinary trade and calling on a Sunday," and, accordingly, "[t]here can be but one entire offence on one and the same day." Crepps v. Durden, 98 Eng. Rep. at 1287. As the Tenth Circuit puts it,

- 37 -

"[d]etermining the unit of prosecution is generally a matter of statutory interpretation." United

States v. Maldonado-Passage, 56 F.4th at 839.

The inquiry then becomes how courts are to discern -- in Lord Mansfield's formulation --

"the object which the Legislature had in view in making the statute." Crepps v. Durden, 98 Eng.

Rep. at 1287.  The Tenth Circuit has instructed that a "verb test" is a central interpretive tool:

> When seeking a statute's unit of prosecution -- when asking what the minimum amount of activity a defendant must undertake, what he must do, to commit each new and independent violation of a criminal statute -- the feature that naturally draws our immediate attention is the statute's verb.  This comes as no surprise, of course, as the verb supplies the action or doing part of most any sentence, statutory or otherwise.  *See United States v. Rodriguez-Moreno*, 526 U.S. 275 . . . (1999)(in deciding what the statute defines as an offense, the "'verb test' certainly has value as an interpretive tool"); *The Chicago Manual of Style* § 5.97 (15th ed. 2003).  True, in the business of statutory interpretation we do not always bow to linguistic rules.  A court's job, after all, is to discern the statute's meaning not grade its grammar, and sometimes a law's meaning can be clear even when the grammar's downright awful.  But until a clue emerges suggesting otherwise, it's not unreasonable to think that Congress used the English language according to its conventions.

United States v. Rentz, 777 F.3d 1105, 1109 (10th Cir. 2015)(on reh'g en banc, Gorsuch, J., writing

for the majority).  The "verb test" comports with the axiomatic notion that statutory construction

begins "by examining the statute's plain language." United States v. Manning, 526 F.3d 611, 614

(10th Cir. 2008).  If, however, the statute's plain text is ambiguous as to Congress' intent, "we

look to the legislative history and the underlying public policy of the statute." United States v.

LaHue, 170 F.3d 1026, 1028 (10th Cir. 1999).  Importantly, in the context of statutory construction

in the unit-of-prosecution realm, "[i]f, after employing the usual tools of statutory interpretation,

we are left with a 'grievous ambiguity or uncertainty' concerning the statute, we employ the rule

of lenity." United States v. Elliott, 937 F.3d 1310, 1313 (10th Cir. 2019)(quoting Muscarello v.

United States, 524 U.S. 125, 139 (1998)).[12]

_____

[12]While the Blockburger test looms large over Double Jeopardy jurisprudence -- to the point that lawyers sometimes assume that satisfying Blockburger eliminates any possible issues under the Double Jeopardy Clause -- in unit of prosecution cases, "even if two underlying crimes of violence are separate under the *Blockburger* test, two . . . charges may nonetheless violate double jeopardy if they are based on the same unit of prosecution under the statute." United States v. Rentz, 777 F.3d at 1120 (Matheson, J., concurring). See id. at 1108 (majority opinion)("[A]s other circuits have recognized, '[t]he absence of a [*Blockburger*] Double Jeopardy problem does not end [this] inquiry.'" (quoting United States v. Cureton, 739 F.3d 1032, 1040 (7th Cir. 2014))(first brackets added, second and third in United States v. Rentz).

This fact -- that the absence of a Blockburger issue does not preclude unit-of-prosecution issues -- is evocative of unit-of-prosecution analysis' odd status as a doctrine within Double Jeopardy Clause jurisprudence. The Tenth Circuit has noted that "[i]ncluded in double jeopardy protections are multiple punishments for the same offense based on the total punishment authorized by the legislature." United States v. Jackson, 736 F.3d at 955. This proposition is undoubtedly correct. A more difficult question is whether the Double Jeopardy Clause informs -- in any manner -- a court's real-time analysis of a statute's unit of prosecution. Commentators generally argue that it does not: if one did not know that the Double Jeopardy demands unit of prosecution analysis, one might think one was engaged in an ordinary statutory interpretation exercise. For example, as Professor Akhil Reed Amar notes, unit of prosecution questions "are both fascinating and interesting, but they are ultimately questions of substantive law, questions on which the Double Jeopardy Clause is wholly agnostic." Akhil Reed Amar, Double Jeopardy Law Made Simple, 106 Yale L.J. 1807, 1817 (1997). Rather, Professor Amar states:

> The Clause takes substantive criminal law as it finds it; it is outlandish (and judicially unworkable) to suppose that hidden deep in the word "offense" lies some magic metatheory of substantive criminal law, telling legislators in all times and places what can and cannot be made criminal. And so it is up to the legislature to decide whether planting and exploding a bomb should be one crime or two (because the bomb was first planted, then exploded) or fifty (because fifty people died) or 500 (because 450 more were at risk) or 1,000,500 (because the bomb also destroyed one million dollars of property and each dollar of bomb damage is defined as a separate offense). The Eighth Amendment's Cruel and Unusual Punishment Clause might impose limits on the total amount of punishment that can be heaped upon a person for a single "act" or series of acts, but the Double Jeopardy Clause imposes no limits on how the legislature may carve up conduct into discrete legal offense units.

Amar, supra, at 1817-18. On the other hand, however, the imposition of the rule of lenity in this area, see United States v. Elliott, 937 F.3d at 1313, arguably flows from the Double Jeopardy

## LAW REGARDING DOWNWARD DEPARTURES

The Guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Koon v. United States, 518 U.S. 81, 106 (1996). See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline." Koon v. United States, 518 U.S. at 92. Accord United States v. Lewellen, No. CR 11-1524, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the

---

Clause, and thus two prominent commentators have noted that "the Double Jeopardy Clause acts as an indirect restraint on the legislature, because it demands a certain standard of clarity from the legislature before multiple punishment will be allowed." Peter Westen & Richard Drubel, Towards a General Theory of Double Jeopardy, 1978 Sup. Ct. Rev. 81, 118. But that the Double Jeopardy clause acts not as a check on the legislature but on other governmental actors -- prosecutors who charge crimes, and courts who sentence convicted defendants -- does not make the Double Jeopardy clause an entirely sui generis Constitutional protection. Other provisions too check non-legislative actors, e.g., the Fourth Amendment, which acts primarily to check executive power. Due process too can act on judicial actors, demanding that they too respect persons' rights, e.g., to be sentenced based on accurate information. In any event, it seems clear to the Court that unit of prosecution analysis is a question of ordinary statutory interpretation principles, but performed on account of the Double Jeopardy Clause. See United States v. Rentz, 777 F.3d at 1108. This interpretation takes place in the shadow of -- and is mandated by -- the Double Jeopardy Clause, but the Clause's text does not illuminate or inform the Court's unit of prosecution analysis.

congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

For example, in United States v. Jim, 877 F. Supp. 2d 1018 (D.N.M. 2012)(Browning, J.), the Court did not grant a defendant's request for a downward departure under U.S.S.G. § 4A1.3(b), where the defendant argued that his criminal history category over-represented the seriousness of his criminal history and the likelihood that he would commit other crimes. See 877 F. Supp. 2d at 1044-45. The Court noted that Jim's criminal history included: (i) two DWI convictions; (ii) a conviction for Roadway Laned Traffic; and (iii) Abandonment or Abuse of a Child. See 877 F. Supp. 2d at 1044-45. The Court concluded that a criminal history category of II did not over-represent Jim's criminal history, explaining that Jim's previous convictions involved alcohol and driving, demonstrating a pattern of aberrant use of alcohol also seen in the offense for which he was sentenced -- sexual assault -- as Jim asserted that both he and the victim were intoxicated at the time he assaulted the victim. See 877 F. Supp. 2d at 1022-23, 1044-45. The Court noted that it "does not take much for a defendant to qualify for a criminal history category of II" and that the Court could not distinguish Jim's criminal history from that of other defendants that the Court regularly sees who also have a criminal history category of II, and thus denied Jim's request for a downward departure under U.S.S.G. § 4A1.3. 877 F. Supp. 2d at 1044-45.

In United States v. Jager, No. CR 10-1531, 2011 WL 831279 (D.N.M. February 17, 2011)(Browning, J.), the Court denied a defendant's request for a downward departure, under U.S.S.G. § 5H1.11, based upon the defendant's eleven years of military service. See 2011 WL 831279, at *3. Even though Jager had received exemplary reviews in his performance reports, earning either the highest or second highest ratings possible, during his military career, the Court

concluded that his service was not present in an unusual degree or distinguishable from other cases which the Guidelines cover. See 2011 WL 831279, at *10-11. The Court noted that, in many child pornography cases, such as Jager's, the defendant leads an exemplary life publicly, while engaging in a sordid secret life privately.  See 2011 WL 831279, at *10-11.  Jager's case was thus not distinguishable from other defendants sentenced under the Guidelines.  See 2011 WL 831279, at *10-11.  Additionally, Jager was not in intense combat during his military career, most of his time was spent in the support role of a mechanic.  See 2011 WL 831279, at *10-11.  The Court concluded, thus, that Jager's military service did not distinguish his case from those of many other defendants who commit child pornography, and the Court denied Jager's request for a downward departure. See 2011 WL 831279, at *10-11.

## LAW REGARDING VARIANCES FROM THE SENTENCING GUIDELINES

After United States v. Booker, 543 U.S. 220 (2005), the sentencing guideline ranges are now advisory and are one of several factors set out in 18 U.S.C. § 3553(a).  Although appellate courts are allowed to assume that within-guidelines sentences are reasonable, subject to rebuttal, see Gall v. United States, 552 U.S. 38, 50-51 (2007), the Supreme Court has made it clear that no presumption of reasonableness attaches at the district court level to the sentence the Guidelines suggest, see Gall v. United States, 552 U.S. at 50 (explaining that a sentencing judge "may not presume that the Guidelines range is reasonable"); Rita v. United States, 551 U.S. 338, 351 (2007)("In determining the merits of [the parties'] arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  Section 3553(a) also directs sentencing courts to consider: (i) the nature of the offense and the defendant's character; (ii) the available sentences; (iii) the Sentencing Guidelines and policy statements that the Sentencing Commission has promulgated; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).  The Tenth Circuit reviews a district court's variance for "substantive reasonableness."  United States v. Kaspereit, 994 F.3d 1202, 1214 (10th Cir. 2021)(citing United States v. Sayad, 589 F.3d 1110, 1116 (10th Cir. 2009)).

## ANALYSIS

First, the Court grants the Obstruction Motion, because the Court concludes -- by a preponderance of the evidence -- that Aguilar committed perjury during his trial testimony, as his sworn trial testimony contradicts his sworn plea colloquy testimony.  Accordingly, the 2-level U.S.S.G. § 3C1.1 enhancement is appropriate.  Second, the Court denies the Merger Motion, because the Court's statutory interpretation of 18 U.S.C. § 2246(3)'s definition of "sexual contact" indicates that two counts of abusive sexual contact under 18 U.S.C. § 2244(a)(3) are appropriate

- 43 -

under this case's facts.  Last, the Court sentences Aguilar to the Bureau of Prisons' custody for a term of 48 months, followed by five years of supervised release.

I.   **THE U.S.S.G. § 3C1.1 OBSTRUCTION OF JUSTICE ENHANCEMENT IS PROPER, BECAUSE AGUILAR PERJURED HIMSELF DURING HIS TRIAL <u>TESTIMONY</u>.**

As the Court discussed previously, <u>see</u> Procedural Background Section 1, <u>supra</u> at 10-12, the United States asserts that Aguilar should be subject to U.S.S.G. § 3C1.1's 2-level enhancement, because, given his prior sworn statements in front of Magistrate Judge Fashing, Aguilar's trial testimony is an "incident of perjury."  Obstruction Motion at 5.  Aguilar responds that the enhancement does not apply in this case, because "all the records related to that previous plea do not identify a victim and do not state the reason for any touching," and, therefore, "there is not sufficient evidence that Mr. Aguilar lied during any portion of this case."  Obstruction Response at 1.  For the reasons described below, the Court concludes that the 2-level § 3C1.1 enhancement is proper, because the Court determines -- by a preponderance of the evidence -- that Aguilar perjured himself.

In <u>Dunnigan</u>, the Supreme Court states that an incident of perjury sufficient for the imposition of U.S.S.G. § 3C1.1's 2-level enhancement occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." <u>Dunnigan</u>, 507 U.S. at 94.  This understanding tracks the federal perjury statute's elements.  <u>See</u> 18 U.S.C. § 1621; <u>Dunnigan</u>, 507 U.S. at 94.  More specifically, the Tenth Circuit has stated that, to apply U.S.S.G. § 3C1.1's perjury enhancement, the sentencing court "must conclude the defendant '(1) gave false testimony under oath, (2) about a material matter, and (3) the false testimony was willful and not the result of confusion, mistake or faulty memory.'"  <u>United States</u>

v. Rodebaugh, 798 F.3d at 1300 (quoting United States v. Poe, 556 F.3d at 1130).   Moreover, in

the Tenth Circuit, a sentencing court must "be explicit about which representations by the

defendant constitute perjury."   United States v. Hawthorne, 316 F.3d at 1146.   See United States

v. Massey, 48 F.3d at 1573.

       The Court concludes that Aguilar's trial testimony, that he did not touch Jane Doe's

genitals, involves a willful giving of false testimony about a material trial issue, so the obstruction

enhancement applies.   See U.S.S.G. § 3C1.1.   More specifically, the Court concludes that

Aguilar's testimony at trial -- that he had never "touched [Jane Doe]'s vagina . . .  through clothes,"

Jan. 23 Tr. at 115:15-17 (Harrison, Aguilar) -- is false testimony that he gave under oath, see Jan.

23 Tr. at 98:11-15 (Court, Clerk, Aguilar, Harrison)(oath).   This statement is Aguilar's

representation that constitutes perjury.   See United States v. Hawthorne, 316 F.3d at 1146.   The

record in this case supports the Court's conclusion that this representation is "false testimony under

oath."   United States v. Rodebaugh, 798 F.3d at 1300.   First, the Court concludes that Aguilar's

previous sworn statement to Magistrate Judge Fashing during his plea colloquy -- wherein Aguilar

stated that he drunkenly touched a twelve-year old "[o]ver her clothes over her genitals," Plea Tr.

at 16:19 (Aguilar) -- contradicts his trial statement.[13]   Second, the evidence adduced at trial -- in

particular Doe's testimony, see Draft Transcript of Jury Trial, Day 2, January 22, 2024 at 51:24-

54:13 (held January 22, 2024)( Doe, Marshall)("Jan. 22 Tr.") --  leads the Court to believe, by a

preponderance of the evidence, that Aguilar touched Doe's genitalia over her clothing, see FOF

---

[13]The Court addresses below, infra, Aguilar's contention that he did not commit perjury
because, at the plea colloquy, he never specified the identity of the minor which he admitted to
touching.

¶ 1, <u>supra</u>, at 3.  Indeed, the jury found Aguilar guilty beyond a reasonable doubt of touching Doe's genitalia over her clothing.  <u>See</u> Verdict ¶ 2, at 1, filed January 23, 2024 (Doc. 204).  Owing to the Court's conclusion that Aguilar touched Doe's genitalia over her clothing, the Court concludes that Aguilar's statements to the contrary are false.  <u>See</u> <u>Dunnigan</u>, 507 U.S. at 91 (upholding the application of a U.S.S.G. § 3C1.1's perjury enhancement where a defendant denied involvement in a conspiracy, and the district court concluded that "it is clear from the evidence in the case as the jury found beyond a reasonable doubt that she was involved in the conspiracy alleged in the indictment").[14]

Next, the Court concludes that this false testimony is about a "material matter" in this case.  <u>United States v. Rodebaugh</u>, 798 F.3d at 1300.  The Tenth Circuit has stated that the relevant "standard for materiality," in this context, "is whether the false testimony bears 'a natural tendency to influence or was capable of influencing the decision required to be made.'"  <u>United States v. Fernandez-Barron</u>, 950 F.3d 655, 658 (10th Cir. 2019)(quoting <u>United States v. Allen</u>,

---

[14]The Supreme Court emphasized in <u>Dunnigan</u> that

> not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury.  As we have just observed, an accused may give inaccurate testimony due to confusion, mistake, or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense.  Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.  For these reasons, if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out.

<u>Dunnigan</u>, 507 U.S. at 95.

892 F.2d 66, 67 (10th Cir. 1989)). Here, Aguilar's false statements fulfill this standard.  The testimony regarding whether Aguilar touched Doe's genitalia is an element of the crime charged in Count 2 of the Superseding Indictment, and, accordingly, it has "'a natural tendency to influence or was capable of influencing the decision required to be made.'"  United States v. Fernandez-Barron, 950 F.3d at 658 (quoting United States v. Allen, 892 F.2d at 67).  See Instr. No. 14, at 20 (instructing the jury that, to find Aguilar guilty, it has to find, among other things, that, "from on or about August 13, 2016, and continuing to on or about February 13, 2017, Mr. Aguilar knowingly engaged in and caused sexual contact with Princella Chavez," and "[f]or purposes of count 2 of the indictment, 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia of any person, with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person"); Superseding Indictment at 1-2.

Last, the Court concludes that Aguilar's "false testimony was willful and not the result of confusion, mistake or faulty memory." United States v. Rodebaugh, 798 F.3d at 1300.  For reasons similar to those that the Court provides above for its preponderance conclusion regarding falsity, supra, at 45, the Court also concludes that Aguilar's false statement is purposeful, and he did not make that statement carelessly or mistakenly, see FOF ¶ 6, at 4.  Aguilar did not equivocate in providing a firm negative response when asked by his counsel whether he had ever "touched [Jane Doe]'s vagina . . .  through clothes." Jan. 23 Tr. at 115:15-17 (Harrison, Aguilar).  As a result, the Court concludes that Aguilar: "'(1) gave false testimony under oath, (2) about a material matter, and (3) the false testimony was willful and not the result of confusion, mistake or faulty memory.'" United States v. Rodebaugh, 798 F.3d at 1300 (quoting United States v. Poe, 556 F.3d at 1130).

Aguilar offers three ultimately unpersuasive arguments against this conclusion.  First, Aguilar argues that his plea colloquy and trial statements are not inconsistent, and thus there is "not enough to show that Mr. Aguilar committed perjury."  Obstruction Response at 5.  Second, he contends that his statements at the plea colloquy "do not state Mr. Aguilar's intent" in touching a minor, and "[i]t is thus just as likely from the statements that the touching was accidental than it was purposeful."  Obstruction Response at 5.  Last, Aguilar argues that, although statements that he made to Frank Chavez, a Special Agent with the Bureau of Indian Affairs ("BIA"), may conflict with his trial testimony, those points of conflict are "not material."  Obstruction Response at 5.

As to the first of these arguments, Aguilar's key contention is that his plea colloquy does not contradict his trial testimony -- the former states that he touched "a minor," Plea Tr. at 16:16 (Aguilar), whereas the latter states that he did not touch Doe, see Jan. 23 Tr. at 115:15-17 (Harrison, Aguilar) -- and, as a consequence, "[t]his ambiguity is not enough to show that Mr. Aguilar committed perjury."  Obstruction Response at 5.  The Court interprets this argument as a challenge to the Court's ability to conclude that Aguilar's trial testimony is "false testimony under oath," as U.S.S.G. § 3C1.1's 2-level perjury enhancement requires.  United States v. Rodebaugh, 798 F.3d at 1300.  Basically, Aguilar argues that, because his trial testimony does not literally contradict his plea colloquy testimony, there is "not enough" evidence on which the Court can base a determination of the statement's falsity.  Obstruction Response at 5.  The first issue with this argument is that it implies that -- aside from Aguilar's plea colloquy testimony -- there is no other evidence on which the Court can conclude that Aguilar's trial testimony is perjurious.  To the contrary, as the Court explains above, the trial evidence as a whole -- in particular Doe's testimony, see Jan. 22 Tr. at 51:24-54:13 (Doe, Marshall) -- also contributes to the Court's

- 48 -

conclusion that Aguilar's trial testimony is false.  See Analysis I, supra, at 45.  In addition, Dunnigan indicates that the enhancement may be applied on the basis of a district court's conclusions regarding trial evidence alone, and no inconsistent previous statement is necessary: as noted above, in Dunnigan, the Supreme Court affirmed the district court's application of a U.S.S.G. § 3C1.1's perjury enhancement where a defendant -- in her trial testimony -- denied involvement in a conspiracy, and the district court concluded that "it is clear from the evidence in the case . . . that she was involved in the conspiracy alleged in the indictment."  Dunnigan, 507 U.S. at 91.

The second issue with this argument is that, although the Court acknowledges that in some situations a literalist reading of a person's testimony raises a shield to perjury liability, that doctrine is narrow and does not apply to this case's facts.  The "literal truth defense" to perjury originates in the Supreme Court's Bronston v. United States, 409 U.S. 352 (1973), and "stands for the principle that a perjury conviction cannot rest on an answer that was literally true, but non-responsive and potentially misleading," United States v. Strohm, 671 F.3d 1173, 1184-85 (10th Cir. 2011)(citing Bronston v. United States, 409 U.S. at 358-59).  See United States v. Sarwari, 669 F.3d 401, 405-07 (4th Cir. 2012)("[A]n individual cannot be convicted of perjury when the allegedly false statement was 'literally true but not responsive to the question asked and arguably misleading by negative implication.'" (quoting Bronston v. United States, 409 U.S. at 357-58)).  An ambiguous question, moreover, cannot form the basis of perjury, because there is no way to know if a defendant intended willfully to give false testimony.  See United States v. Strohm, 671 F.3d at 1179 ("'A question that is truly ambiguous or which affirmatively misleads the testifier can never provide a basis for a finding of perjury, as it could never be said that one intended to

answer such a question untruthfully.'" (quoting United States v. Richardson, 421 F.3d 17, 33 (1st Cir. 2005))). That doctrine, however, is narrow. See United States v. Strohm, 671 F.3d at 1179 ("By its terms, the literal truth defense is inapplicable to answers that are responsive or not undisputably true."); United States v. Sarwari, 669 F.3d at 406 ("[T]he Bronston literal truth defense is a narrow one. It applies only where a defendant's allegedly false statements 'were undisputedly literally true.'" (quoting United States v. Thomas, 612 F.3d 1107, 1115 (9th Cir. 2010))(emphasis in United States v. Thomas, but not in United States v. Sarwari)). Here, Aguilar's answer to the question whether he had ever "touched [Jane Doe]'s vagina . . . through clothes," Jan. 23 Tr. at 115:15-16 (Harrison), is "[n]o," Jan. 23 Tr. at 115:17 (Aguilar). Moreover, as explained above, his answer to this question is not undisputably true -- other trial evidence, as well as his statements to magistrate Judge Fashing at the plea colloquy, discredit his trial testimony. See Analysis I, supra, at 45. Accordingly, the literal truth defense is inapplicable in this instance. See United States v. Strohm, 671 F.3d at 1179 ("By its terms, the literal truth defense is inapplicable to answers that are responsive or not undisputably true.").

On a more general level, the Court concludes that Aguilar's proffered account of how the plea colloquy and the trial testimony are consistent is highly implausible. Although a literal reading of Aguilar's plea colloquy statements permits an interpretation consistent with his trial testimony -- namely, that Aguilar admitted at the plea colloquy to touching sexually some other minor, but not Doe -- context makes clear that the two sets of testimony are inconsistent. The United States' prosecution of Aguilar, throughout its lifespan, focuses on Aguilar's actions against Doe; there is no indication that Aguilar thought at the plea colloquy that he was admitting to touching sexually a different minor. Thus, at Aguilar's plea, he asserted under oath that he touched

Doe's genitals over her clothes, see Plea Tr. at 16:3-18:15 (Fashing, M.J., Aguilar, Marshall), while at trial, Aguilar asserts the opposite -- that he never had "touched [Jane Doe]'s vagina . . . through clothes," Jan. 23 Tr. at 115:15-17 (Harrison, Aguilar).  Again, in Aguilar's trial testimony, there is no hint of confusion, poor memory or mistake: Aguilar asserts confidently a proposition contrary to earlier sworn assertions.  Cf. Dunnigan, 507 U.S. at 95.  The Court concludes that the latter factual proposition, inconsistent with Aguilar's earlier sworn statement, is false by a preponderance of evidence.

Aguilar's second argument is that his statements at the plea colloquy "do not state Mr. Aguilar's intent" in touching a minor, and "[i]t is thus just as likely from the statements that the touching was accidental than it was purposeful."  Obstruction Response at 5.  Aguilar does not explain how this argument bears on the Court's application of U.S.S.G. § 3C1.1's perjury enhancement, aside from saying that "[j]ust like before, this ambiguity dooms any allegation of perjury."  Obstruction Response at 5.  Accordingly, to the extent that this argument again contends that Aguilar's trial testimony is not false because it is consistent with the plea colloquy testimony, the Court again disagrees.  For the reasons explained above, the Court concludes that Aguilar's testimony at trial -- that he had never "touched [Jane Doe]'s vagina . . . through clothes," Jan. 23 Tr. at 115:15-17 (Harrison, Aguilar) -- is false, material, and willful, see Analysis I, supra at 44-47.  See United States v. Rodebaugh, 798 F.3d at 1300.

Last, the Court disagrees with Aguilar's argument that, although statements that he made to Chavez may conflict with his trial testimony, those points of conflict are "not material."  Obstruction Response at 5.  This argument is based on an alleged inconsistency in which "Aguilar once told Agent Chavez that he watched a Cowboys game at home but stated in his trial testimony

that he watched the Cowboys games at a bar."   Obstruction Response at 5.  Because the Court

bases its imposition of U.S.S.G. § 3C1.1's perjury enhancement on Aguilar's trial testimony that

he had never "touched [Jane Doe]'s vagina . . .  through clothes," Jan. 23 Tr. at 115:15-17

(Harrison, Aguilar), information about the Cowboys game is not relevant to whether U.S.S.G.

§ 3C1.1's perjury enhancement can be imposed on Aguilar.  In sum, the Court concludes that,

when Aguilar stated at trial he had never "touched [Jane Doe]'s vagina . . .  through clothes," Jan.

23 Tr. at 115:15-17 (Harrison, Aguilar), he "'(1) gave false testimony under oath, (2) about a

material matter, and (3) the false testimony was willful and not the result of confusion, mistake or

faulty memory.'"   United States v. Rodebaugh, 798 F.3d at 1300 (quoting United States v. Poe,

556 F.3d at 1130).   As a consequence, the Court grants the United States' Obstruction Motion.

## II.   THE TWO COUNTS OF CONVICTION ARE SEPARATE-ACT-OFFENSES CONVICTIONS THAT RAISE NO MULTIPLICITY PROBLEMS IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE.

The Court concludes that sentencing Aguilar for both his Count 2 conviction and his Count

3 conviction -- both violations of 18 U.S.C. §§ 2244(a)(3), 2246(3) -- does not inflict multiplicitous

punishment in violation of the double jeopardy clause, because the statutes punish as separate acts

offenses each of the abusive "touching" actions that § 2246(3) enumerates.  18 U.S.C. § 2246(3).

Accordingly, because the convictions are for separate acts, no multiplicity problem arises.  As the

Court notes above, see Law Regarding Double Jeopardy and Multiplicitous Counts, supra, at 36-

39, the Court's analysis regarding unit of prosecution functions as statutory interpretation.  In this

case, the main object of the Court's statutory interpretation is 18 U.S.C. § 2246(3), which defines

the term "sexual contact," 18 U.S.C. § 2246(3), although the Court also analyzes 18 U.S.C.

§ 2244(a)(3).[15]  In effect, the Court must determine "the 'minimum amount of activity for which

criminal liability attaches'" for a count of Abusive Sexual Contact under 18 U.S.C. § 2244(a)(3).

United States v. Maldonado-Passage, 56 F.4th 830, 839 (10th Cir. 2022)(quoting United States v.

Rentz, 777 F.3d 1105, 1108 (10th Cir. 2015)).  More specifically, Aguilar's Merger Motion asks

the Court to determine whether 18 U.S.C. § 2244(a)(3)'s definition -- which informs 18 U.S.C.

---

[15]The latter of these statutes creates the criminal liability, and the former provides a definition of a key term found in the former.  As noted above, see Factual Background, supra at 7, 18 U.S.C. § 2244(a)(3), states:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in or causes sexual contact with or by another person, if so to do would violate --
>
> . . . .
>
> subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both[.]

18 U.S.C. § 2244(a)(3).  The cross-referenced statute in this provision, 18 U.S.C. § 2243(a), reads:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in a sexual act with another person who --
>
> **(1)**   has attained the age of 12 years but has not attained the age of 16 years; and
>
> **(2)**   is at least four years younger than the person so engaging;
>
> or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2243(a).  Section § 2246(3) of Title 18 defines the term "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . ."  18 U.S.C. 2246(3).  Because the definition provision -- 18 U.S.C. 2246(3) -- defines the proscribed actus reus, that definition is the main focus of the Court's unit of prosecution analysis.

§ 2244(a)(3)'s unit of prosecution -- allows the United States to bring separate counts for two instances of touching that have, as their object, two different body parts.

To determine the proper unit of prosecution, the Court begins, as it must, with the statute's text. See United States v. Maldonado-Passage, 56 F.4th at 839. Section 2244(a)(3) of Section 18 criminalizes, in relevant part, "knowingly engag[ing] in or caus[ing] sexual contact with or by another person," when that activity takes place in "territorial jurisdiction of the United States" and involves a minor, 18 U.S.C. § 2244(a)(3); 18 U.S.C. § 2243(a). Section § 2246(3) of Title 18 defines the key term in 18 U.S.C. § 2244(a)(3): "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

At the outset, the Court notes that 18 U.S.C. § 2244(a)(3)'s plain text does not shed much light on its proper unit of prosecution. As the Court notes above, the statute prohibits any person who "knowingly engages in or causes sexual contact with or by another person," when that activity takes place in "territorial jurisdiction of the United States" and involves a minor. 18 U.S.C. § 2244(a)(3). See 18 U.S.C. § 2243(a). This statute, on its face, provides no information regarding its unit of prosecution, because it does not define what "sexual contact" means. 18 U.S.C. § 2244(a)(3). The statute does not say "a sexual contact," as nearby statutes do with respect to the term "sexual act," and which provides an early clue that the statute criminalizes a "separate-act offense." Two Elk, 536 F.3d at 899. See Two Elk, 536 F.3d at 899 ("The plain language of § 2241(c) states that a person commits aggravated sexual abuse by 'engag[ing] in *a sexual act* with another person[]' . . . . The statute does not say 'sexual act or acts,' or 'sexual course of conduct.'"

- 54 -

(first quoting 18 U.S.C. § 2241(c), source of second and third quotes not cited))(emphasis in <u>Two Elk</u>, not in 18 U.S.C. § 2241(c)).  But nor does 18 U.S.C. § 2244(a)(3) say "a course of sexual contact," or language that would indicate that the statute creates a continuing-conduct offense.  <u>See</u> <u>Ebeling v. Morgan</u>, 237 U.S. 625, 629 (1915)(contrasting "continuous offenses" -- such as continuous cohabitation with more than one woman -- with separate act offenses, which criminalize each individual act).  The key to 18 U.S.C. § 2244(a)(3)'s proper unit of prosecution, then, lies in the definition of "sexual contact" which is provided in 18 U.S.C. § 2246(3).

In Section 2246(3), "sexual contact" is defined using language phrased in the singular: "'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3).  The statute does not define "sexual contact" as "intentional touchings" or "a course of intentional touching" of the relevant body parts, but rather "the intentional touching" of the relevant body parts.  18 U.S.C. 2246(3).  Both the article -- "the" -- and the noun -- "touching" -- are singular.  <u>See</u> <u>St. Francis Hosp., Inc. v. Becerra</u>, 28 F.4th 119, 123 (10th Cir. 2022)("Congress's use of a singular noun often sheds insight into the meaning."); <u>id</u> at 123 n.4 (noting that the article "the" "can introduce either a singular or plural noun," so the court's focus shifts to "the noun rather than the accompanying article" (citing Bryan A. Garner, <u>The Chicago Guide to Grammar, Usage, and Punctuation</u> 410 (2016))).  This use of the singular indicates that the statute's definition seeks to proscribe one individual instance of "touching" and not a continuing course of conduct comprised of many "touchings."  18 U.S.C. § 2246(3).

The question remains, of course, what one individual instance of "touching" means.  18 U.S.C. § 2246(3).  To determine what this individual instance of "touching" refers to, the Court employs the "verb test."  See United States v. Rentz, 777 F.3d at 1109.  As noted above, see Law Regarding Double Jeopardy and Multiplicitous Counts, supra, at 36-39, "[w]hen seeking a statute's unit of prosecution -- when asking what the minimum amount of activity a defendant must undertake, what he must do, to commit each new and independent violation of a criminal statute -- the feature that naturally draws our immediate attention is the statute's verb," United States v. Rentz, 777 F.3d at 1109.  The verb test here would identify "touching" as the principal action described in § 2246(3).  The verb "to touch," however, is transitive: it requires a direct object -- namely, a thing-being-touched.  See Touch, Merriam-Webster, https://www.merriamwebster.com/ dictionary /touch (last visited July 22, 2024)(defining "touch" as a *transitive verb* . . . [meaning] to bring a bodily part into contact with especially so as to perceive through the tactile sense . . . [and] to put hands upon in any way or degree")(emphasis in Merriam-Webster); Transitive, Merriam-Webster, https://www.merriam-webster.com/dictionary/transitive (last visited July 22, 2024)(explaining that "[a] *transitive verb* is a verb that requires a *direct object*, which is a noun, pronoun, or noun phrase that follows the verb and completes the sentence's meaning by indicating the person or thing that receives the action of the verb")(emphasis in Merriam-Webster).  Accordingly, a § 2246(3) defendant cannot touch without touching something.  The statute's action term, therefore, must comprehend the combination of: (i) the touching act, and (ii) the object touched.  This linguistic formulation creates a touch-and-body-part complex that forms the basic unit of prosecution contemplated by the statute's definition: i.e., touching-breast, touching-genitalia, touching-anus, etc.  See 18 U.S.C. § 2246(3).  Each of these touch-and-body-part actions

- 56 -

is a separate act that the statute proscribes.  See Gerard E. Lynch, RICO: The Crime of Being a Criminal Parts II and IV, 87 Colum. L. Rev. 920, 933 (1987)("The verbs that form the heart of the definitions of particular offenses . . . typically refer to single rather than repeated actions, completed in a brief span of time.").  Cf. Ebeling v. Morgan, 237 U.S. at 629.

Moreover, § 2246(3) uses the disjunctive "or" in its enumeration of body parts -- "the genitalia, anus, groin, breast, inner thigh, or buttocks of any person" -- which indicates that each touching-object complex represents a separate act the statute proscribes. 18 U.S.C. § 2246(3).  Cf. United States v. Loniello, 610 F.3d 488, 492-93 (7th Cir. 2010)(Easterbrook, C.J.)("To counteract this history, defendants stress the word 'or' between the first two paragraphs of [18 U.S.C.] § 2113(a). This means, they contend, that the two paragraphs state alternative means to commit a single crime.  Yet drafters commonly use 'or' to distinguish different offenses in a sequence."). Finally, although unit of prosecution analysis does not rely on the Blockburger test, see Law Regarding Double Jeopardy and Multiplicitous Counts, supra, at 39 n.14, the Court notes that different proofs sustain different theories under § 2246(3), and this fact goes some way to suggest independent units of prosecution for each body part touched, cf. United States v. Shrader, 675 F.3d 300, 314 (4th Cir. 2012)(Wilkinson, J.)("While [the Blockburger] test is traditionally used to determine whether a single course of conduct violates different statutory provisions, . . .  courts have noted its utility in assessing whether multiple counts of the same statutory offense are multiplicitous.").

For these reasons, the Court concludes that 18 U.S.C. § 2246(3)'s definition of "sexual contact" demonstrates that Congress intends individual instances of "touching" to arise when a defendant touches the different body parts enumerated in the statute.  As a result, there is no Double

Jeopardy issue when -- as in this case -- the United States brings individual charges against a defendant that stem from the touching of two distinct body parts.  Compare Instr. No. 14, at 20 ("To find Mr. Aguilar guilty[,] . . . you must be convinced that . . . Mr. Aguilar knowingly engaged in and caused sexual contact with [Jane Doe]. . . . For purposes of count 2 of the indictment, 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia of any person . . . ."), with Instr. No. 15, at 20 ("To find Mr. Aguilar guilty . . . , you must be convinced that . . . Mr. Aguilar knowingly engaged in and caused sexual contact with [Jane Doe] . . . . For purposes of count 3 of the indictment, 'sexual contact' means the intentional touching, either directly or through the clothing, of the breast(s) of any person . . . .").  That these two distinct touching-body part complexes occur in quick succession is of no consequence, because 18 U.S.C. § 2246(3) provides that the proper unit of prosecution -- for crimes that rely on this definition -- is the "touching" of one of the six body parts listed.[16]  See Ebeling v. Morgan,

---

[16]The Court finds support for its conclusion in long-standing doctrines which demonstrate a willingness to slice finely a defendant's actions that occur in close temporal proximity to one another.  For example, the Tenth Circuit has held that the United States could bring separate prosecutions for using a minor in the production of pornography, even if the images were all produced in the same session:

> The final issue to be addressed is defendant Linda Esch's contention that the indictment was multiplicitous.  She argues that the photographs depicted the same two children and were produced in the same photographing session and therefore constitute only one crime. . . .
>
> Here, we conclude that the key element of the offense is the use a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct.[]  That conclusion is supported by the legislative history of the statute, which indicates that Congress intended to protect children from the abuse inherent in the production of pornographic materials. S.Rep. No. 95–438, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 53.[]  The fact that multiple photographs may have been sequentially produced during a single photographing session is irrelevant.  Each photograph depended upon a separate and distinct use

237 U.S. at 629 (affirming six convictions of unauthorized opening of mailbags, reasoning that,

"[a]lthough the transaction of cutting the mail bags was in a sense continuous, the complete

---

of the children. *See Blockburger v. United States,* 284 U.S. at 302-03, . . . ; *United States v. Williams,* 685 F.2d 319, 321 (9th Cir.1982).

United States v. Esch, 832 F.2d 531, 542 (10th Cir. 1987).  The United States Court of Appeals for the First Circuit reached a similar result recently:

> [The defendant] reasons that the videos depicted one continuous "use" of the victim, such that all six convictions should have merged for sentencing purposes. . . . The district court rejected this argument at sentencing, noting that multiple federal appellate courts have held that the proper unit of prosecution of Section 2251 was each image or video depicting the child, not each "use" of the child. The district court also found that there were at least two discrete acts depicted in the videos. The court further noted that while the videos, each of which was approximately one minute long, were produced in a single session, their production took place over one hour and were interspersed. Therefore, the court concluded that a sentence of fifty years was constitutionally permissible.[]

> We agree with the reasoning of the district court.  Here, Smith produced six separate videos over the course of an hour, each made at a different time and depicting a discrete sexual act.  Section 2251 criminalizes the use of a "minor to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  18 U.S.C. § 2251(a) (emphasis added).  "The fact that multiple [videos] may have been sequentially produced during a single . . . session is irrelevant.  Each [video] depended upon a separate and distinct use of the children."  United States v. Esch, 832 F.2d 531, 542 (10th Cir. 1987) . . . .  Thus, on the facts presented here, the six separate counts were not multiplicitous.

United States v. Smith, 919 F.3d 1, 15-16 (1st Cir. 2019).  Accordingly, close temporal proximity is not an insurmountable bar to delineating a defendant's separate actions, lending themselves to distinct units of prosecution.  Transposed to the present situation, that doctrine would provide that merely because Aguilar touched Doe's breast, and then, shortly after that, touched her genitalia, does not mean that each act is not separately punishable as a separate unit of prosecution.  Indeed, were the unit of prosecution based solely on the amount of time elapsed, it would be difficult to know where to draw that line: a slippery slope develops if the unit of prosecution turns exclusively on five seconds, minutes, or hours having passed between the assaultive touches.

statutory offense was committed every time a mail bag was cut in the manner described, with the

intent charged").[17]

---

[17]This case does not present the question whether the United States could proceed on two counts under 18 U.S.C. § 2244(a)(3) based on two distinct physical touchings of the same listed body part.  For example, the Court does not face the question whether two counts under 18 U.S.C. § 2244(a)(3) could lie if a defendant touches a victim's genitalia twice in quick succession.  The Merger Motion relates only to the question whether 18 U.S.C. § 2246(3)'s definition allows the United States to bring, under 18 U.S.C. § 2244(a)(3), separate counts for the touching of the individual body parts that 18 U.S.C. § 2246(3) enumerates.

Relatedly, the unit of prosecution conclusion that the Court reaches does not produce the reductio ad absurdum that Aguilar argues would result from such a statutory construction.  At the hearing, Aguilar hypothesized that the United States could charge defendants under multiple counts based solely on differences in the mens rea term.  See March 20 Tr. at 42:5-25 (Harrison).  Aguilar hypothesized that the United States could charge conduct thus: Count 1 as touching with intent-to-abuse the victim; Count 2 as touching with intent-to-degrade; Count 3 as touching with intent-to-arouse, etc.  Cf. 18 U.S.C. 2246(3) ("[T]he term 'sexual contact' means . . . intentional touching . . . with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.").  The Court's approach, however, does not lend itself to this outcome.  As noted, in identifying the unit of prosecution, the primary focus is on the action term, see United States v. Rentz, 777 F.3d at 1108-09 ("When seeking a statute's unit of prosecution . . . the feature that naturally draws our immediate attention is the statute's verb[,] . . . as the verb supplies the action . . . of most any sentence, statutory or otherwise."), here that term is touching.  As the Tenth Circuit explains, adverbial prepositional phrases cannot alone form a basis to level different charges.  Counts of conviction that turn only on differences in adverbial prepositional phrases, therefore, do not produce independent units of prosecution:

[E]ach § 924(c)(1)(A) charge must involve *both* an act of using, carrying, or possessing *and* that such an act must come during and in relation to (or in furtherance of) a qualifying crime. . . .   Consider another example.  Imagine Congress passed a statute that in terms of its syntax is nearly identical to § 924(c)(1)(A), a statute imposing special penalties for "any person who, during a holiday, murders another."  In a year when Hanukkah and Christmas happen to fall on the same day, a man is arrested for shooting a single victim.  Does the statute allow the government to bring *two* charges because of the calendar's curiosities?  Without some further direction from the legislature, we wouldn't think so.  We wouldn't because *murders* is the statute's operative verb and it focuses our attention on how many times the defendant performed that act -- not on how many holidays that act happened to fall. The adverbial prepositional phrase acts only to impose additional limits on the availability of a charge, beyond what the verb already does, suggesting that for each charge there must be *both* a murder (use) *and* one that

- 60 -

Aguilar's arguments to the contrary do not persuade the Court that it must merge the Superseding Indictment's Counts 2 and 3. Aguilar's best argument relies on another district court case, United States v. Ziegler, Case No. CR 07-30024, Doc. 81, at 17 (D.S.D. January 23, 2008)("Ziegler")(Schreier, C.J.),[18] out of the United States District Court for the District of South Dakota. In an opinion that the Honorable Karen E. Schreier, then-Chief United States District Judge for United States District Court for the District of South Dakota, authors, Chief Judge Schreier analyzes a set of circumstances in which a defendant allegedly took a minor into a

---

occurs during a holiday (during and in relation to any crime of violence or drug trafficking crime).

United States v. Rentz, 777 F.3d at 1110. Here Aguilar's hypothetical falls under that rule, because it metastasizes from a single action verb different units of prosecution based solely on the attendant prepositional phrase, i.e., "with an intent to abuse," "with an intent to . . . humiliate," "with an intent to . . . harass," etc.

The counts of conviction here, however, turn not on differences in adverbial phrases, but on differences in the object that the operative action term takes. That is, the separate acts that the counts of conviction here referred to turn on differences in the object of touch. As noted, the operative action verb here -- touch -- is a transitive verb, meaning that it necessarily takes an object. A defendant, for example, cannot violate the statute simply by touching. Instead, there must be some enumerated object -- the victim's enumerated private parts -- to violate the statute by touching. Accordingly, differentiating among the defendants' counts of conviction, based on object of touch, does not raise the same multiplicity problems as in United States v. Rentz, where the Tenth Circuit rejected the leveling of counts of conviction based on the same use of a firearm, but predicated on different theories of the relevant underlying crime of violence. See United States v. Rentz, 777 F.3d at 1107 ("The parties before us agree that Philbert Rentz 'used' a gun only once but did so 'during and in relation to' two separate 'crimes of violence' -- by firing a single shot that hit and injured one victim but then managed to strike and kill another. In circumstances like these, . . . the statute [does not] permit the government to charge [two] violation[s] . . . ."). Here, the pertinent action -- that is, touching one private part, or touching another private part -- are not one and the same, because the object, in this unique circumstance, informs in an essential way the operative action term.

[18]At the time of writing, Ziegler is not available on either Westlaw or LexisNexis. Accordingly, the Court's page numbers refer to the CM/ECF pages numbers at the top of the filed opinion.

bathroom, wherein the defendant lowered his pants and forced the minor to touch his genitalia, before then touching the victim's breasts -- all in quick temporal succession.  See Ziegler at 18-19.  The Grand Jury indicted the defendant on two counts under 18 U.S.C. §§ 2244(a)(3) and 2246(3) -- the same statutory provisions at issue in Aguilar's case -- and the defendant moved to dismiss on multiplicity grounds.  See Ziegler at 13-14.

Chief Judge Schreier agrees with the defendant's argument, concluding that "Congress has not clearly specified the unit of prosecution for 'sexual contact,' and therefore the court must apply the rule of lenity and resolve the question in favor of defendant."  Ziegler at 18 (quoting 18 U.S.C. § 2246(3), citing United States v. Chipps, 410 F.3d at 449).  To reach this conclusion, Chief Judge Schreier reviews 18 U.S.C. §§ 2244(a)(3) and 2246(3)'s language, and states: "There is nothing in either statute to indicate that each type of sexual contact, when part of a series of contacts, can be charged individually."  Ziegler at 17.  Moreover, Chief Judge Schreier conducts an in pari materia analysis of 18 U.S.C. § 2246(3) alongside the analogous definitions for "sexual act" in 18 U.S.C. § 2246(2), and concludes that, "[a]lthough Congress defines 'sexual act' in four different ways, it chose to define 'sexual contact' in a single definition."  Ziegler at 18.  Finally, Chief Judge Schreier states that, "[f]urther, a review of the legislative history of the statute does not provide any indication that Congress sought to create liability for each individual act of sexual contact as defined in 18 U.S.C. § 2246(3)."  Ziegler at 18.  On these grounds, Chief Judge Schreier concludes that the definition of sexual contact is ambiguous, and therefore applies the rule of lenity in the defendant's favor and states that, although "the government is entitled to present evidence that defendant committed those acts," if the "defendant is found guilty of both counts, the court will then merge counts III and IV prior to sentencing and treat them as a single offense."  Ziegler at 20.

The Court respectfully disagrees with the Chief Judge Schreier's analysis and therefore reaches the opposite conclusion. As the Court describes above, under the Court's statutory interpretation, the Court does not agree that "[t]here is nothing in either statute to indicate that each type of sexual contact, when part of a series of contacts, can be charged individually." Ziegler at 17. Instead, employing the "verb test," United States v. Rentz, 777 F.3d at 1109, the Court concludes that a single transitive verb "touching" requires a direct object -- a body part -- and as a result this touch-body part complex -- i.e., touching-breast, touching-genitalia, touching-anus, etc. -- forms the basic unit of prosecution contemplated by the statute's definition. See 18 U.S.C. § 2246(3). This linguistic statutory construction is also supported by the use of the disjunctive "or" in § 2246(3)'s listed body parts, see United States v. Loniello, 610 F.3d at 492-93, and also by the fact that each touch-body part complex necessarily requires proof of a fact that the other does not, see United States v. Shrader, 675 F.3d at 314. In short, the Court's analysis of statutory text cuts against Chief Judge Schreier's initial conclusion of statutory ambiguity.

In addition, the Court also does not agree with the conclusions of Chief Judge Schreier's in pari materia analysis of 18 U.S.C. § 2246. See Ziegler at 18. While the Court agrees that 18 U.S.C. § 2246 indicates Congress' intent to define "sexual act" using four subsections, 18 U.S.C. § 2246(2)(A)-(D), and "sexual contact" using only one, 18 U.S.C. § 2246(3), the Court does not agree that it necessarily follows that each subsection corresponds to a unit of prosecution for the term defined. Indeed, the Eighth Circuit approves multiple counts arising from discrete "sexual act[s]" that are defined under the same 18 U.S.C. § 2246(2) subsection. See Two Elk, 536 F.3d at 893, 898-99 (concluding that there is no multiplicity problem when the United States brings two counts of aggravated sexual abuse under 18 U.S.C. § 2241(c) even when "sexual act[s]" are both

- 63 -

defined under 18 U.S.C. § 2246(2)(A), and occurred in quick succession). The key question in determining a statute's unit of prosecution is Congressional intent regarding the "'minimum amount of activity for which criminal liability attaches'" under a particular statute. United States v. Rentz, 777 F.3d at 1108 (quoting United States v. Cureton, 739 F.3d 1032, 1041 (7th Cir. 2014)). This inquiry's central focus is the statute's text. See United States v. Rentz, 777 F.3d at 1108; United States v. Handley, 678 F.3d 1185, 1189 (10th Cir. 2012). While Congress' use of subsections might inform statutory meaning, see United States v. Sturm, 673 F.3d 1274, 1279 (10th Cir. 2012), any analysis of a criminal statute's unit of prosecution must begin with text. Accordingly, the mere fact that 18 U.S.C. § 2246(2)(A)-(D) contains four discrete subsections defining "sexual act," while 18 U.S.C. § 2246(3) contains only one section defining "sexual contact," does not shed light on the proper unit of prosecution that 18 U.S.C. § 2246(3)'s definition suggests.[19] Last, while the Court agrees with Chief Judge Schreier's conclusion that the legislative

---

[19]The Court acknowledges that a case from the United States Court of Appeals for the Ninth Circuit, United States v. Yazzie, 743 F.3d 1278 (9th Cir. 2014)("Yazzie"), contains a sentence which suggests that 18 U.S.C. § 2246(2)'s four "sexual act" subsections each correspond to one discrete unit of prosecution: "Because § 2241(c) makes it unlawful to engage in a 'sexual act,' and § 2246(2) defines 'sexual act' as any one of four specific actions, we conclude that the 'allowable unit of prosecution' intended by Congress is each individual sexual act listed in § 2246(2)." Yazzie, 743 F.3d at 1294 (source of quoted material not cited). This language, however, is not conclusive on the question whether a single 18 U.S.C. § 2246(2) subsection might have more than one unit of prosecution, because Yazzie does not involve a circumstance in which the United States charges a defendant with two charges under the same 18 U.S.C. § 2246(2) subsection. Instead, in Yazzie, the United States charged the defendant with two counts stemming from different 18 U.S.C. § 2246(2) subsections, namely, § 2246(2)(A) and § 2246(2)(D). See Yazzie, 743 F.3d at 1285, 1293. Accordingly, the Ninth Circuit does not address the question whether a single 18 U.S.C. § 2246(2)'s subsection might accommodate more than one unit of prosecution. Moreover, the Ninth Circuit in Yazzie states that, "in reaching this conclusion, we join the only other circuit to have considered this issue," and cites Two Elk. Yazzie, 743 F.3d at 1294 (citing Two Elk, 536 F.3d at 898-99). As the Court has discussed, however, Two Elk reaches a conclusion that is contrary to Yazzie's above-quoted statement. Again, Two Elk holds that there is no multiplicity problem when the United States brings two counts of aggravated sexual abuse

history is unhelpful with respect to the proper unit of prosecution under 18 U.S.C. §§ 2244(a)(3) and 2246(3), the Court looks to legislative history only when a statute's text is ambiguous on its face.  See United States v. Manning, 526 F.3d 611, 614 (10th Cir. 2008).  Here, the Court concludes that unit-of-prosecution inquiry posed by Aguilar's Merger Motion is answerable by 18 U.S.C. § 2246(3)'s plain text, and thus the Court need not rely on legislative history to determine statutory meaning.

Similarly, to the extent that Chief Judge Schreier's conclusions -- or Aguilar's arguments, see Merger Motion at 3 -- rest on the rule of lenity, the Court disagrees that application of the rule of lenity is appropriate in this instance, see Ziegler at 18 ("Congress has not clearly specified the unit of prosecution for 'sexual contact,' and therefore the court must apply the rule of lenity and resolve the question in favor of defendant." (source of quoted material not cited)).  As the Supreme Court has stated, courts use "the lenity principle to resolve ambiguity in favor of the defendant only 'at the end of the process of construing what Congress has expressed' when the ordinary canons of statutory construction have revealed no satisfactory construction."  Lockhart v. United States, 577 U.S. 347, 361 (2016)(quoting Callanan v. United States, 364 U.S. 587, 596 (1961)).  As the Supreme Court explains in its most recent term, the mere fact that there are "two grammatically permissible readings of the statute when viewed in the abstract" does not trigger automatically the rule of lenity's application.  Pulsifer v. United States, 601 U.S. 124, 152 (2024).  Indeed, in Pulsifer v. United States, the Supreme Court spends twenty-five pages explaining why its interpretation of 18 U.S.C. § 3553(f) is correct -- an interpretation which fails to garner the

---

under the same 18 U.S.C. § 2246(2) subsection -- subsection (2)(A) -- and those acts occur in quick succession.  Two Elk, 536 F.3d at 898-99.

support of three Justices, see Pulsifer v. United States, 601 U.S. at 155-86 (Gorsuch, J., dissenting) -- before stating that the rule of lenity does not apply, because "we do not view Paragraph (f)(1) as genuinely ambiguous," Pulsifer v. United States, 601 U.S. at 152.   Accordingly, if a court concludes that a statutory offers a "satisfactory construction" after application of all the ordinary tools of statutory interpretation, the court will not apply the rule of lenity to construe the statute in the defendant's favor.   Lockhart v. United States, 577 U.S. at 361.   Regardless of whether this approach to the rule of lenity is the best one, the Court -- as a district court -- must apply faithfully Supreme Court precedent.   Accordingly, as the Court concludes above, the ordinary tools of statutory interpretation permit a satisfactory construction of 18 U.S.C. § 2246(3)'s "sexual contact" definition, and thus the Court does not apply the rule of lenity in Aguilar's favor.

Beyond his arguments relying on Zeigler, Aguilar points to several appellate opinions interpreting State law, which he argues demonstrate that "[m]ost states agree that . . . convictions for multiple counts of sexual abuse during a single occurrence of sexual conduct is improper double punishment."   Merger Motion at 4.   Specifically, he cites a New Mexico Supreme Court case, Herron v. State, 1991-NMSC-012, ¶¶ 14-16, 111 N.M. 357, 361-62, 805 P.2d 624, 628-29 (Ransom, J.), a case from the Missouri Court of Appeals, Vaughan v. State, 614 S.W.2d 718, 722 (Mo. Ct. App. 1981), a case from the District of Columbia Court of Appeals, Sanchez-Rengifo v. United States, 815 A.2d 351, 358-59 (D.C. 2002), and a Ninth Circuit habeas corpus case interpreting the Penal Code of California, Rhoden v. Rowland, 10 F.3d 1457, 1462 (9th Cir. 1993). The Court first notes that none of these nonbinding cases interpret either 18 U.S.C. §§ 2244(a)(3) or 2246(3).   Because the multiplicity inquiry is primarily a question of Congressional intent, see United States v. Maldonado-Passage, 56 F.4th at 839, nonbinding legal authority is of limited value

unless the statute at issue in that nonbinding authority is identical or very close to the statute before the Court.

Although these cases cannot illuminate the meaning of 18 U.S.C. §§ 2244(a)(3) or 2246(3), they might, however, provide interpretive principles to aid the Court. The Court concludes, however, that they do not, largely because these cases apply analytical frameworks that Tenth Circuit law do not support. For example, Sanchez-Rengifo v. United States, from the District of Columbia Court of Appeals, applies a "fact-based analysis" to determine whether a defendant can be twice convicted under the same statute. 815 A.2d at 354. Under this analytical approach, "criminal acts are considered separate when there is an appreciable length of time 'between the acts that constitute the two offenses, or when a subsequent criminal act was not the result of the original impulse, but a fresh one.'" Sanchez-Rengifo v. United States, 815 A.2d at 355 (quoting Hanna v. United States, 666 A.2d 845, 853 (D.C. 1995)). This approach is not the one that the Court must use to determine a statute's unit of prosecution. As noted, in the Tenth Circuit, "[d]etermining the unit of prosecution is generally a matter of statutory interpretation." United States v. Maldonado-Passage, 56 F.4th at 839. The Court's task is, at the outset, a question of law and not a "fact-based analysis." Sanchez-Rengifo v. United States, 815 A.2d at 354. See Vaughan v. State, 614 S.W.2d at 722 ("Whether multiple assaults resulting in rape constitute multiple crimes or a single crime are determined by the facts of each case, including the factors of time, place of commission and, preeminently, defendant's intent, as evidenced by his conduct and utterances."). Finally, although Aguilar suggests that we apply the muti-factor test which New Mexico courts use in their unit of prosecution analysis, see Merger Motion 5-6 (quoting Herron v. State, 1991-NMSC-012, ¶ 15, 111 N.M. at 361, 805 P.2d at 628), that analysis is used only if the reviewing

court concludes that the statute is ambiguous as to its proper unit of prosecution, see State v. Benally, 2021-NMSC-027, ¶¶ 12-19, 493 P.3d 366, 372-74.  Here, as the Court notes above, 18 U.S.C. § 2246(3)'s "sexual contact" definition is not ambiguous.  Accordingly, even under the New Mexico approach, the Court's inquiry is complete.  See State v. Benally, 2021-NMSC-027, ¶ 14, 493 P.3d at 373 ("After consideration of these markers of legislative intent, if we are able to decipher the Legislature's intended unit of prosecution, then our inquiry is complete.").

Having carefully considered the statute's plain text, the parties' arguments, and the relevant law, the Court concludes that 18 U.S.C. § 2244(a)(3)'s definition -- which informs 18 U.S.C. § 2244(a)(3)'s unit of prosecution -- allows the United States to bring separate counts for two instances of touching that have, as their object, two different body parts.  Because Aguilar's convictions under Count 2 involves his touching Doe's genitalia, and Count 3 involves his touching Doe's breast, each charge corresponds to a proper unit of prosecution.  The Court therefore denies the Merger Motion, because no double jeopardy multiplicity problem lies.

## III.   THE COURT SENTENCES AGUILAR TO THE FEDERAL BUREAU OF PRISONS' CUSTODY FOR A TERM OF 48 MONTHS, FOLLOWED BY FIVE YEARS' SUPERVISED RELEASE.

Next, the Court considers whether it should sentence Aguilar to the 48-month sentence that the Guidelines suggest and the United States argues, or to a time-served sentence, as Aguilar proposes.  The Court undertakes this analysis in two sections.  First, the Court explains Aguilar's Guidelines calculation.  See Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  In this discussion, the Court explains that, even if the Court had granted Aguilar's Merger Motion, Aguilar's Guidelines range would remain the same.  Second, the Court assesses the 18 U.S.C.

- 68 -

§ 3553(a) factors -- including the Guidelines range -- and sentences Aguilar to the Federal Bureau of Prisons' custody for a term of 48 months, followed by five years of supervised release, because the Court concludes that a Guidelines sentence is reasonable in this case, and is sufficient, without being greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987-2001 (1984), codified as amended at 18 U.S.C. §§ 3551-3586.

### A. WHETHER AGUILAR'S TWO CONVICTIONS STAND IMPACTS HIS SENTENCING, BECAUSE IT INCREASES THE AVAILABLE STATUTORY MAXIMUM, BUT IT DOES NOT AFFECT HIS GUIDELINES CALCULATION.

The Court concludes that the multiplicity issue does not affect Aguilar's Guidelines calculation, but would have, if the Court granted his motion, lowered his statutory maximum. The two 18 U.S.C. § 2244(a)(3) convictions carry only a maximum possible sentence and do not carry a mandatory minimum sentence. See 18 U.S.C. § 2244(a)(3) ("Whoever . . . knowingly . . . causes sexual contact with . . . another person, if so to do would violate . . . subsection (a) of section 2243 . . . had the sexual contact been a sexual act, shall be . . . imprisoned not more than two years . . . ."). Accordingly, the multiplicity issue does not affect the mandatory minimum threshold Aguilar faces, but it does affect his mandatory statutory maximum.

The issue also does not affect the Guidelines calculation. Typically, in federal practice, grouping under the Guidelines will take care of sentencing problems from charge-stacking. The Tenth Circuit explains the Guidelines' grouping scheme:

> U.S.S.G. § 3D1.1 requires the district court, "[w]hen a defendant has been convicted of more than one count . . . [to][g]roup the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") . . . [and] determine the offense level applicable to each Group . . . ." U.S.S.G. § 3D1.1(a)(1), (2). U.S.S.G. § 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve the same harm within the

> meaning of this rule . . . [w]hen counts involve the same victim and the same act or transaction." Here, however, because there were two victims, the PSR determined there were two separate groups. *See* U.S.S.G. § 3D1.2, application note 3; *see also* [United States v. Jose-Gonzalez, 291 F.3d 697, 707 (10th Cir. 2002)].  U.S.S.G. § 3D1.4 then provides that "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the . . . table" provided. In this case, because the two Groups, based on the same crime but involving two different victims, are "equally serious," § 3D1.4's table required the district court to add two levels to the base offense level for the deaths of both victims.

United States v. Wolfe, 435 F.3d 1289, 1302 (10th Cir. 2006).  The United States Probation Office does not apply grouping to Aguilar's sentence, because his convictions come under U.S.S.G. § 2A3.4, the Guideline for Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact, which does not permit listed sexual offenses to be grouped under the similar charges grouping provision.  See PSR ¶¶ 33-36, at 7; U.S.S.G. § 3D1.2 ("All counts involving substantially the same harm shall be grouped together into a single Group[, such as w]hen counts involve the same victim and the same act or transaction. . . .  Specifically excluded from the operation of this subsection are . . . all offenses in Chapter Two, Part A (except § 2A3.5).").

Even if the Court decided the multiplicity issue in Aguilar's favor, it would not affect the Guidelines calculation, because a pattern-of-activity enhancement under U.S.S.G. § 4B1.5(b)(1) would raise the total offense level to 22 regardless whether one count falls.  Each of Aguilar's two counts of conviction receives a subtotal 14 adjusted offense level.  See PSR ¶¶ 26, 32, at 7.  Because Aguilar's two counts of conviction form two separate groups, each group receives one unit, which makes for a 2-level increase according to § 3D1.4's table:

> **33.   Multiple Count Adjustment:** Units are assigned pursuant to USSG §3D1.4(a), (b) and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. One-half unit is assigned to any group that is 5 to 8 levels

less serious than the highest offense level. Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded.

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 2 | 14 | 1.0 |
| Count 3 | 14 | 1.0 |
| **Total Number of Units:** | | 2.0 |

34. **Greater of the Adjusted Offense Levels Above:** 14

35. **Increase in Offense Level:** The offense level is increased <u>+2</u> pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4.

36. **Combined Adjusted Offense Level:** The Combined <u>16</u> Adjusted Offense Level is determined by taking the offense level applicable to the Group with the highest offense level and increasing the offense level by the amount indicated in the table at USSG §3D1.4.

PSR ¶¶ 33-34, at 7.  Accordingly, whether as a matter of double jeopardy analysis, both counts of conviction can stand, makes, in the first instance, for only a 2-level increase in Aguilar's Guidelines calculation: if one count falls, then there is no 2-level increase as a matter of adjusting for multiple counts under U.S.S.G. § 3D1.4.  <u>See</u> PSR ¶ 33-36, at 7.

Indeed, however, the existence of the two counts makes no difference for Guidelines purposes, because the PSR calculates Aguilar should receive a 22 total offense level, regardless whether there are one or two counts:

37. **Chapter Four Enhancement:** The offense of conviction <u>22</u> is a covered sex crime, neither § 4B1.1 (Career Offender) nor subsection (a) of § 4B1.5 applies and the defendant engaged in a pattern of activity involving prohibited sexual conduct. Therefore, the defendant is a repeat and dangerous sex offender against minors. The offense level shall be 5 plus the offense levels determined under Chapters Two and Three. However, if the resulting offense level is less than 22, the Offense level shall be 22. In this case the applicable offense level

- 71 -

is 22. USSG § 4B1.5(b)(1).

PSR ¶ 37, at 8.  Even if only one count stands, and the other falls based on multiplicity, the Court

still could determine that Aguilar engaged in a "pattern of activity."  U.S.S.G. § 4B1.5(b)(1).  That

means, regardless whether he receives a 14 or a 16 offense level, see PSR ¶¶ 33-36, at 7, the

Guidelines would push up to a 22 his total offense level.[20]  Accordingly, in the Court's view, the

---

[20]Although the parties do not address the pattern-of-activity enhancement, that issue raises
some questions.  The Court finds by a preponderance of the evidence that Aguilar engaged in a
pattern of abusive activity for the enhancement.  See FOF ¶ 1, at 3; U.S.S.G. § 4B1.5(b)(1) ("In
any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the
defendant engaged in a pattern of activity involving prohibited sexual conduct . . . the offense level
shall be [at least] level 22.").  The Guidelines do not require that the pattern of activity be based
solely on charged and convicted conduct.  See U.S.S.G. § 4B1.5 cmt. n.4(B)(i) ("For purposes of
subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct
if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a
minor.; id. cmt. n.4(B)(ii) ("An occasion of prohibited sexual conduct may be considered for
purposes of subsection (b) without regard to whether the occasion (I) occurred during the course
of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that
occasion.").  Instead, the Court, in identifying a pattern of conduct can rely, as it often does, on
uncharged and even acquitted conduct to assess the whole of a defendant's character for purposes
of sentencing.  See United States v. Demeulenaere, 205 F. App'x 685, 686 (10th Cir.
2006)("[S]entencing courts may consider conduct for which a defendant has been acquitted.").

   Here, the PSR does not identify what the predicate pattern of activity is in which Aguilar
engaged.  It is possible that the pertinent pattern of activity is the conduct underlying each of the
counts of conviction; that is, the pattern is comprised of the breast touching and the genital
touching of which Aguilar was convicted.  Although the Court concludes that, for double jeopardy
purposes, these two actions properly are punishable as distinct units of prosecution, whether they
also together constitute a pattern of activity for purposes of the Guidelines enhancement is a
different question.  Again, although Aguilar has not challenged explicitly the application of the
pattern enhancement, this issue raises questions.  Although the two actions -- touching Doe's breast
and touching the Doe's genitals -- are sufficiently distinct to each represent a proper unit of
prosecution, the court is not confident saying that two actions, which occurred within minutes of
one another, represent, without more, a pattern of activity.

   The Court, therefore, must look beyond simply the conduct underlying one conviction and
joining it with the conduct underlying the other conviction to comprise the requisite pattern of
activity.  Aguilar's trial, however, featured testimony concerning two incidents in which Aguilar
allegedly assaulted the victim.  See FOF ¶ 1, at 3.  Although the jury convicted Aguilar only on
the incident that occurred on the day of the Dallas Cowboys game, see FOF ¶ 1, at 3, for purposes
of sentencing, the Court can determine on a preponderance of the evidence standard that the

disposition of the multiplicity issue does not impact Aguilar's Guidelines calculation. The question, however, is only hypothetical, because the Court concludes that Aguilar's counts should not be merged.

### B.    A 48-MONTH SENTENCE IS APPROPRIATE IN AGUILAR'S CASE.

Aguilar's PSR states: "Based upon a total offense level of 23 and a criminal history category of II, the guideline imprisonment range is 51 months to 63 months. However, the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 48 months." PSR ¶ 88, at 19 (citing U.S.S.G. § 5G1.2(b)). The Court confirmed the Guidelines range of 48 months with the parties at the sentencing hearing. See Sentencing Tr. at 6:13-16 (Court, Hart).  At the sentencing hearing, the Court evaluated factors that put downward and upward pressure on Aguilar's sentencing considerations, acknowledging that a "couple [of the factors] are on both sides of the ledger and . . . some of them overlap." Sentencing Tr. at 20:12-14 (Court).  In this Memorandum Opinion and Order, the Court considers again the sentencing factors, ultimately concluding that the Court's sentencing factors -- in the aggregate -- tip the scales in favor of a Guidelines Sentence.

The Court begins with the factors that apply downward pressure on Aguilar's sentence to take it out of the Guidelines range.  The Court identifies eleven factors.  See Sentencing Tr. at 20:5-21:5 (Court).  Again, some factors overlap, and some considerations cut in both directions. See Sentencing Tr. at 20:12-14 (Court).  First, the Court concludes that the 18 U.S.C. § 3553(a) factor of promoting respect for the law "put[s] downward pressure on the sentence."  Sentencing

---

incidents underlying the second incident, where Doe testified that Aguilar tried to assault her while friends were at her house, did occur, see FOF ¶ 1, at 3.  Together, these two sets of actions, represent a pattern of activity that triggers the Guidelines enhancement.

Tr. at 20:15-17 (Court).  Next, and relatedly, the Court concludes that the 18 U.S.C. § 3553(a) factor of providing just punishment likewise puts some downward pressure on the sentence.  See Sentencing Tr. at 20:15-17 (Court).  Next, the Court concludes that "there's some things in Mr. Aguilar's profile that supervised release can assist him with," and the Court identifies the opportunity to receive education, training, and care -- while on supervised release -- as three factors that also put downward pressure on his Guidelines sentence.  Sentencing Tr. at 20:17-19 (Court). Next, the Court concludes that Aguilar's performance on supervised release has been "adequate," and the Court also notes Aguilar's low criminal history and concludes that both factors put downward pressure on Aguilar' sentence.  Sentencing Tr. at 20:19-23 (Court).  The Court also concludes that Aguilar's "strong ties to the community" puts downward pressure on the sentence. Sentencing Tr. at 20:24 (Court).  Finally, the Court also notes that its task as a district court is not to just come up with what it thinks is a reasonable sentence; rather, its task is to craft a sentence that is sufficient, but not greater than necessary to reflect the 18 U.S.C. § 3553(a) factors -- i.e., the sentence should embody the considerations reflected in the parsimony clause.  Sentencing Tr. at 21:7-9 (Court).  See United States v. Martinez-Barragan, 545 F.3d 894, 904 (10th Cir. 2008).

The Court also identifies, however, "about 30" factors "that put upward pressure to keep [Aguilar's sentence] up in the guideline range."  Sentencing Tr. at 21:7-9 (Court).  The Court first concludes that the offense's seriousness is a major factor applying upward pressure on the sentence.  See Sentencing Tr. at 21:1-14 (Court); 18 U.S.C. § 3553(a)(2)(A).  The Court observes, as it did at the sentencing hearing, that "we know from this case and we know from cases in general and Congress is concerned that these sex crimes can create long-term impacts on the victims." Sentencing Tr. at 21:12-14 (Court).  These crimes, in short, are very serious.  The Court also

concludes that a need to protect the public also puts upward pressure on the sentence to keep it in the Guidelines range.  See 18 U.S.C. § 3553(a)(2)(C).  Relatedly, the Court next concludes that the 18 U.S.C. § 3553(a) factor of promoting respect for the law also puts upward pressure on the sentence, as does the need to provide just punishment.  See 18 U.S.C. § 3553(a)(2)(A).  Next, the Court concludes that the need for "adequate deterrence to criminal conduct," both at a specific and general level, puts upward pressure on the sentence to keep it in the Guidelines range.  18 U.S.C. § 3553(a)(2)(B).

The Court concludes that "[a] guideline sentence also would avoid unwarranted sentencing disparity among defendants with similar records, who have been found guilty of similar conduct." Sentencing Tr. at 21:18-21 (Court).  See 18 U.S.C. § 3553(a)(6).  The Court also concludes that, the need to impose a reasonable sentence -- which at the trial court level means a sentence that is sufficient to comply with the statutory purposes of punishment in 18 U.S.C. § 3553(a)(2) -- also applies upward pressure on the sentence.  See Sentencing Tr. at 21:21-23 (Court).  The Court also concludes that a Guidelines sentence in this case is sufficient, but not greater than necessary, to reflect the 18 U.S.C. § 3553(a) factors.  See United States v. Martinez-Barragan, 545 F.3d at 904. The Court also concludes that various factors related to Doe's physical and psychological hardship put upward pressure on the sentence to keep it in the Guidelines range:

> I do think that -- I'm pleased to hear that the victim is doing well in certain areas, but I think we also have to recognize that the victim has had troubles as a result of the incident.  Some of that was testified to at trial and then some stuff that was excluded or not introduced indicates that as well.  I think she's also still having impacts from it and this has been very disruptive of the family.  It's -- quite a few people have suffered here, but she has suffered psychological damage. There's been psychological effect of bad memories and stress, and I think some continue and some were more acute at the time of the incident.

Sentencing Tr. at 21:24-22:9 (Court).  The Court also concludes, in line with its analysis in Section I of this Memorandum Opinion and Order, <u>supra</u>, at 43-52, that Aguilar committed perjury in his trial, and his obstruction of justice likewise puts upward pressure on the sentence to keep it in the Guidelines range.  <u>See</u> Sentencing Tr. at 22:13-18 (Court)("I think he does have a pattern of lying, and I agree with the government that if I vary, the enhancement for obstruction begins to lose its effect, and that has a real impact on the criminal justice system.").  The Court also concludes that Aguilar refuses to take responsibility for his actions, as reflected in the fact that he has not received a decrease in his offense level pursuant to U.S.S.G. § 3E1.1.  <u>See</u> Sentencing Tr. at 22:21-22 (Court); PSR ¶ 42, at 9.  Next, the Court concludes that, although Aguilar performed adequately while on supervised release, "he certainly didn't perform perfectly, which is a disappointment when people are on pretrial release," and this factor also applies upward pressure on the sentence to keep it in the Guidelines range.  Sentencing Tr. at 22:23-25 (Court).  Last, the Court notes that Aguilar "abuses his power over girls and women," and that factor also puts upward pressure to keep it in the Guidelines range.  Sentencing Tr. at 22:25-23:2 (Court).

In sum, the Court concludes that "the factors that put pressure to . . . keep this sentence in the guidelines outweigh quantitatively and qualitatively those that put downward pressure to take it out the guideline sentence."  Sentencing Tr. at 23:1-4 (Court).  As the Court's statements at the sentencing hearing reflect -- in addition to its analysis in this Memorandum Opinion and Order -- the Court has considered the Guidelines, but in arriving at a sentence, the Court has taken into account not only the Guidelines but other sentencing goals, including the 18 U.S.C. § 3553(a) factors.  <u>See</u> <u>United States v. Martinez-Barragan</u>, 545 F.3d at 903; <u>United States v. Nunez-Carranza</u>, 83 F.4th 1213, 1222 (10th Cir. 2023).  The Court has considered carefully Aguilar's

request for a time-served sentence, but ultimately concludes that the 18 U.S.C. § 3553(a) factors in this case weigh in favor of a Guidelines sentence. Accordingly, the Court concludes that a sentence of 48 months, followed by five years of supervised release, is sufficient, without being greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987-2001 (1984), codified as amended at 18 U.S.C. §§ 3551-3586.

Accordingly, the Court will: (i) grant the United States' Obstruction Motion and apply the § 3C1.1 enhancement, because the Court concludes that Aguilar obstructed justice, because the Court determines by a preponderance of the evidence that Aguilar perjured himself during his trial testimony; (ii) deny Aguilar's Merger Motion, because Aguilar's two counts of conviction do not make for multiplicitous punishment; and (iii) after considering carefully the factors in 18 U.S.C. § 3553(a), as well as the relevant Guidelines sections, sentence Aguilar to the custody of the Federal Bureau of Prisons for a term of 48 months, followed by five years of supervised release, because the Court concludes that a Guidelines sentence is reasonable in this case, and is sufficient, without being greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987-2001 (1984), codified as amended at 18 U.S.C. §§ 3551-3586.

**IT IS ORDERED** that: (i) the United States' Objection to the Presentence Report and Motion for Enhancement of Defendant's Sentence for Obstructing or Impeding the Administration of Justice Pursuant to USSG § 3C1.1, filed April 12, 2024 (Doc. 225), is granted; (ii) Defendant Kyle Aguilar's Motion to Merge Counts 2 and 3 into a Single Count of Conviction, filed February

16, 2024 (Doc. 211), is denied; and (iii) Aguilar is sentenced to a term of imprisonment of 48 months, followed by five years of supervised release.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Nicholas James Marshall
Mia Ulibarri-Rubin
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Nicholas Thomas Hart
Carter B. Harrison, IV
Harrison & Hart, LLC
Albuquerque, New Mexico

      *Attorneys for the Defendant*